**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CR No.** 1:23-cr-00123-SAG |
| | : | |
| **v.** | : | |
| | : | **HEARING REQUESTED** |
| **ROBERT KROP,** | : | |
| **Defendant.** | : | |
| | : | |

: : : : : : : : : : : : :

## <u>RULE 12(b)(3), RULE 7(f) OMNIBUS MOTION<br>AND MEMORANDUM OF LAW</u>

COMES NOW the defendant, ROBERT KROP, by and through his attorneys, The Cox Law Center, LLC, and hereby moves this honorable Court for the following immediate relief:

    I.   Motion to Dismiss the Indictment and All Counts, One Through Six, Because the Instituting of The Prosecution Was Defective and Unconstitutional

    II.   Motion to Dismiss the Indictment and All Counts, One Through Six, Because the Indictment Is Facially Invalid.

    III.   Motion to Dismiss for Legal Insufficiency of Evidence Presented to the Grand Jury, Or Alternatively, for Immediate Disclosure of the Grand Jury Minutes.

    IV.   Motion to Dismiss Because the Indictment Is Multiplicitous, and Motion for Disclosure of The Grand Jury Minutes.

    V.   Motion to Dismiss Because the Indictment Is Duplicitous, and Motion for Disclosure of the Grand Jury Minutes.

    VI.   Motion for A Bill of Particulars (Rule 7(F) FRCRP).

    VII.   Motion for Discovery Pursuant to Rule 16; Notice of Intent Pursuant to Rule 12(b)(4).

    VIII.   Motion for the Pre-Trial Disclosure of All *Brady* Material.

    IX.   Motion for Revelation of Identity of All Informants.

    X.   Motion for The Pre-Trial Disclosure of Evidence Proffered Under Rule 404(B) and The Exclusion of Any Such Evidence Found to Be Inadmissible.

    XI.   Motion for Search of Personnel Files of Government Agent Witnesses and/or Witness Informant(s).

    XII.   Motion to Preserve Evidence.

    XIII.   Motion for Government Disclosure of Rule 807 "Residual Exception" Statements.

    XIV.   Motion to Suppress All Evidence Seized.

    XV.   Motion to Suppress Statements.

    XVI.   Motion for Deposition Duces Tecum of SPECIAL AGENT ANDRIY VAVILIN formerly of UKRAINE.

    XVII.   Motion to Sever Trial and for Speedy Trial.

    XVIII.   Motion to Transfer Venue.

    XIX.   Motion for Leave to File Further Motions.

**DATED:  May 31, 2023**                    Respectfully Submitted,

                                        **THE COX LAW CENTER, LLC**

                                 By:  _____
                                        Daniel L. Cox
                                        Attorney for Plaintiff, MDD #28245

The Cox Law Center, LLC.
P.O. Box 545
Emmitsburg, MD 21727
P: 410-254-7000; Fax: (410) 254-7220
dcox@coxlawcenter.com


**CERTIFICATE OF SERVICE**

**I hereby certify that this RULE 12(b)(3), RULE 7(f) OMNIBUS MOTION AND MEMORANDUM OF LAW was served upon:**

**TO:**    CHRISTINE GOO, ESQ.
           CHARLES AUSTIN, ESQ.
           ASSIST. UNITED STATES ATTORNEYS
**ATTN:**      MR. LEO WISE, ESQ., ASSIST. UNITED STATES ATTORNEY
               EREK L. BARRON, ESQ., UNITED STATES ATTORNEY
***SERVICE BY VIA ECF***

_____/s/_____
***Daniel L. Cox***

2

## <u>TABLE OF CONTENTS (LR 105(4))</u>

1. BACKGROUND………………………………………………………...pages 1-9

2. MR. KROP IS AN INNOCENT MAN………………………………………pages 9-11

3. ARGUMENT…………………………………………………………….pages 11-41

4. MOTIONS and argument………………………...…………………………...pages 41-107

   I. Motion to Dismiss the Indictment and All Counts, One Through Six, Because the Instituting of The Prosecution Was Defective and Unconstitutional………………...41

   II. Motion to Dismiss the Indictment and All Counts, One Through Six, Because the Indictment Is Facially Invalid……………………………………………………..44

   III. Motion to Dismiss for Legal Insufficiency of Evidence Presented to the Grand Jury, Or Alternatively, for Immediate Disclosure of the Grand Jury Minutes……………47

   IV. Motion to Dismiss Because the Indictment Is Multiplicitous, and Motion for Disclosure of The Grand Jury Minutes…………………………………………50

   V. Motion to Dismiss Because the Indictment Is Duplicitous, and Motion for Disclosure of the Grand Jury Minutes…………………………………………52

   VI. Motion for A Bill of Particulars (Rule 7(F) FRCRP)……………………………53

   VII. Motion for Discovery Pursuant to Rule 16; Notice of Intent under Rule 12(b)(4)….60

   VIII. Motion for the Pre-Trial Disclosure of All *Brady* Material…………………………65

   IX. Motion for Revelation of Identity of All Informants………………………………71

   X. Motion for The Pre-Trial Disclosure of Evidence Proffered Under Rule 404(B) and The Exclusion of Any Such Evidence Found to Be Inadmissible……………...73

   XI. Motion for Search of Personnel Files of Government Agent Witnesses and/or Witness Informant(s)……………………………………………………73

   XII. Motion to Preserve Evidence………………………………………………...74

   XIII. Motion for Government Disclosure of Rule 807 "Residual Exception" Statements...73

   XIV. Motion to Suppress All Evidence Seized…………………………………………76

   XV. Motion to Suppress Statements……………………………………………..95

   XVI. Motion for Deposition Duces Tecum of SPECIAL AGENT ANDRIY VAVILIN formerly of UKRAINE…………………………………………………99

   XVII. Motion to Transfer Venue……………………………………………..102

   XVIII. Motion to Sever Trial and for Speedy Trial………………………………...103

   XIX. Motion for Leave to File Further Motions………………………………………107

5. CONCLUSION………………………………………………………107

## **BACKGROUND**

With its false Indictment of law enforcement's go-to private practice and demonstration facility in Maryland, the government shoots itself in the foot.

It does so with apparent political vindictiveness, for a non-existent crime, in order to try and remove one of the nation's most upstanding and outspoken Sheriffs it does not like politically, who regularly and professionally appears on television opposing certain misguided and failed policies of the Biden Administration.  In doing so the government harms its own law enforcement and weakens our national security at a crucial time in our history both domestically and internationally.

Established less than one hour outside of Washington D.C. and within the security perimeter of the heart of the United States where some of the highest numbers of federal, state and military SWAT teams exist, Mr. Krop's business, The Machine Gun Nest (TMGN), has a membership **of over 383 law enforcement and military members who demonstrate its machine guns** (**Exhibit One,** TMGN law enforcement membership list, attached and incorporated), including members of the Frederick County Sheriff's Department ("FCSO"), the Frederick City Police Department, and municipal police departments in Frederick County.   Machine gun demonstrators have included: a United States Senator, elected government officials, the Maryland State Police, U.S. Marshalls, the United States uniformed services, the United States armed services, Secret Service members and former members, Camp David and Ft. Detrick security, security employed by and/or members of DOD, DEA, FBI, ICE, and, the ATF.  **All of these government and police demonstrations occurred – and continue to occur - within the jurisdiction and constitutional oversight of Sheriff Jenkins** who under the Maryland Constitution, art. IV, p.VII, has sole jurisdiction as the County's chief law enforcement officer.

This jurisdiction includes coordination and support with the State Police, ATF and FBI whenever presence and/or coordination is necessary for law enforcement Special Weapons And Tactics ("SWAT") teams, or other special operations.

On May 24, 2022, young Special Agent ANDRIY VAVILIN, formerly of UKRAINE, who has never disclosed to having served either in the UKRAINE or U.S. military or on a SWAT or other experienced special weapons and operations team, nevertheless allegedly provided a false oath for a search and seizure "Warrant by Telephone" of the premises at one of Mr. Krop's businesses in Frederick, Maryland, The Machine Gun Nest (TMGN), averring that  his "experience" caused him to be "familiar with federal firearms…**statues** [sic]" and that **"none of the weapons [sic] should be for sale in America because they should all be in the hands of [FFL] licensees for use by law enforcement entities or for testing and evaluation purposes [sic]." Exhibit Two,** excerpt attached hereto.[1]   VAVILIN additionally swore under oath in his spurious affidavit of "Probable Cause" in violation of the Fourth Amendment, without supportive citation to any law, making up the following false statements (in bold):

- The licensed machineguns being demonstrated were **"impermissible weapons"** not permitted to be imported **"into the United States."** (No citation to law).
- The said machineguns were "permitted for import," but only under a **"military/law enforcement [sic] demonstration/use [sic] exemption [sic]."** (No citation to law).
- The said machineguns were subject to **"restrictions limiting [them] to use by law enforcement agencies or the U.S. Military [sic]."** (No citation to law).
- That a **"request letter is generally [sic] required to state a need for the firearm (e.g., use by SWAT Teams [sic], patrol units, etc.)."** (No citation to law).
- That the letter needs to state **"a desire [sic]" "by the requesting agency to test [sic] and evaluate the firearm."** (No citation to law).
- **"Or"** that the letter needs to state **"a desire**…[to] have it [sic] demonstrated for them." (No citation to law).
- That **"there was a large number** [of firearms requested by FCSO]**…"** (Not true).
- **"…that are unsuitable for law enforcement."** (Not true and no citation to law).

---

[1] That a search and seizure "warrant" was sworn and advanced by VAVILIN upon such gross misspellings and political ideology foreign to our American laws and constitution demands immediate dismissal of the vindictive indictment.

- That **"some of the firearms…are belt-fed machine guns [sic]"** (Not true).
- That said firearms are **"more commonly used in warfare than on the streets of a county such as Frederick."** (No citation to law).
- **"Many of the firearms utilize 7.72 caliber ammunition."** (Not true).
- That 7.62 ammunition **"is both expensive and hard to acquire."** (Not true).
- That 7.62 ammunition is **"a non-standard police issue caliber."** (Not true).
- That **"none of the weapons [sic] should be for sale in America."** (No citation to law).
- That the said "weapons" **"should all be in the hands of Licensees [sic] for use by law enforcement entities."** (No citation to law).
- **"Or"** [alternatively] the said "weapons" **"should be…for testing [sic] and evaluation [sic] purposes."** (No citation to law).

*Id.* at pgs. 7-8, ¶ 16, 18.

The false affidavit statements were used to execute a search and seizure raid on TMGN and illegal entry by ATF/FBI agents into Mr. Krop's realtor office, and were later repeated in part as basis for the Indictment, that the machineguns were restricted "to **use** by law enforcement agencies of the U.S. Military [sic]" only, and that "use by SWAT Teams, patrol units, etc." would be an allowable reason to "test and evaluate the firearm or have it demonstrated for them." *Id.* at pg. 7. (emphasis added).  These plainly false statements under law mandate immediate dismissal of the indictment.  As VAVILIN knows or should know, *post-1986* machineguns held by Class III FFLs are permitted under federal law which governs his actions to be seen, touched and demonstrated by American citizens. 27 CFR § 479.105(c)("c. Importation and manufacture…importers and manufacturers…may important and manufacture machine guns on or after May 19, 1986, for sale or distribution to any…State…**or for use by dealers qualified under this part as sales samples** as provided in paragraph (d) of this section…[and]…for exportation in compliance with the Arms Export Control Act (22 U.S.C. § 2778)…").

VAVILIN falsely claimed therein that "a large number [of the requested machinguns] are unsuitable for law enforcement," while admitting his prior knowledge that they are in fact used in law enforcement ("commonly") but are used in "warfare [sic]" and should never be, <u>in his personal</u>

opinion, "on the streets of a county such as Frederick,"[2] without any factual evidence or legal authority and in direct conflict with his later statement in the same paragraph 18 that all requested machineguns were suitable for "law enforcement entities or for testing or evaluation." *Id.* at 8, ¶ 18.

Agent VAVILIN'S political viewpoint of what machineguns "should" or shouldn't be used by law enforcement is irrelevant to the law and has no place in a sworn warrant to raid Americans serving law enforcement.  Agent VAVILIN further erred in that TMGN was and is a Class III licensee providing membership and support for over 383 law enforcement and military persons who were lawfully performing demonstrations and evaluations of machineguns.

### VAVILIN Admitted A Recent *Ex Post Facto* Change in Biden Administration Policy Was Behind His " Investigation," Demonstrating This Prosecution Is Political and Vindictive

This is not a "conspiracy" case involving the defendants as falsely accused by VAVILIN and charged by a misled Grand Jury; it is, as also stated by VAVILIN, instead a change in policy scheme newly instituted and politically enforced by the Biden Administration across the United States against local law enforcement and FFLs. "[Beginning] In February 2022, [Biden ATF] investigators began focusing on…FFLs" (**Ex. 2**, pg. 6, ¶ 15 affdv. of VAVILIN).  The Biden ATF changed its long-standing  "Law Letter" policy on January 11, 2023 (since President Clinton issued the Law Letter policy on 11/10/1999) to mandate law enforcement explain "why" they want to demonstrate machineguns. The intent of this ATF scheme appears to be to deprive the lawful

---

[2] Perhaps ANDRIY VAVILIN is unfamiliar with several facts and thus falsely swore this part of his affidavit, namely: 1) TMGN is in the City of Frederick, not the County; and, 2) Frederick City is the second largest incorporated City in the State of Maryland after Baltimore City, and sits on a cross-roads of three major U.S. interstates where some of the worst trafficking of humans, drugs, cartel activity and international violent gang members traverse our streets. Thanks to Sheriff Jenkins and ICE, many of them are apprehended, including over 1300 deadly foreign cartel snipers, commandos, hit squads, murderers, rapists and guerrillas trained in special forces combat and explosives.

access to or possession of machine guns from "…a State, or a department, agency, or political subdivision thereof" here, the Frederick County Sheriff's Department and local law enforcement, in contravention of 18 U.S.C. § 922(o).  Federal law expressly mandates access by local law enforcement to machineguns and binds ATF from prohibiting the same as it is now apparently trying to do unilaterally and through unlawful seizures.  *Id.*  VAVILIN and the ATF are therefore involved in a political scheme to undermine federal law.  Ex. 2; *Id.*

Furthermore, this prosecution is politically vindictive and fictitious.  Should the Biden Administration's vindictive prosecution of Mr. Krop and/or Sheriff Jenkins result in shuttering the primary firearms business in Frederick, MD or the Sheriff's resignation or removal from office, it well knows that a chill over the exercise of Second Amendment rights will be felt; and, it knows that the Democrat Governor of Maryland will have the constitutional authority to appoint the interim Sheriff, thereby giving the Democrat Biden Administration pretenses through its prosecution to do what the socialist far Left of the Democrat Party and the ACLU[3] have always sought in Frederick – removal of the Sheriff, ending the 287(g) program with ICE which would allow open borders for cartel slave trafficking activity, and greatly limiting the FCSO's constitutional authority, which office is directly responsible to the voters and not political appointees or Executives.  The ATF has admitted that on January 11, 2023 of this year *after* the vindictive institution of this prosecution, it changed its policies under 27 CFR 479.105(d).  It did

---

[3] "As an attorney for the American Civil Liberties Union of Maryland, I have learned firsthand from Frederick County residents about Jenkins' appalling track record with the immigrant community. We successfully represented Frederick immigrants in a lawsuit against the sheriff in 2019 over the sheriff's policy…despite Jenkins' disregard of the law, and his current leave of absence, the Biden administration continues to partner with him in an anti-immigrant and xenophobic federal program, known as the 287(g) immigration program.  **On the campaign trail, President Joe Biden publicly criticized the 287(g) program** for undermining everyone's safety and promised to roll it back. He should fulfill his promise without delay, beginning with terminating the agreement with Frederick County.  Frederick County residents deserve answers, and the federal government must be consistent in their efforts to hold Jenkins accountable for his misconduct. The Biden administration must end its immigration partnership with the sheriff that its own Department of Justice is prosecuting on federal gun and fraud crimes. ***Nick Taichi Steiner is a staff attorney for the ACLU of Maryland.***" https://www.fredericknewspost.com/opinion/columns/charges-alleging-abuse-of-power-show-need-to-end-287-g-immigration-program/article_1b694a36-103e-5dc1-a35c-6941be131a01.html (accessed May 31, 2023).

so to place defendants in a false light before the Court and Grand Jury just weeks or so later.  It has then *ex post facto*, begun demanding more requirements for "law letters" prior to its approval of lawfully requested machine gun transfers.  Because of the ATF's newly issued political policy changes and the prosecution's misrepresentations to the court and Grand Jury, the charges are without any subject matter jurisdiction before this Court and must be dismissed with prejudice. The honorable Court is required and requested to immediately DISMISS WITH PREJUDICE the indictment.

## MR. KROP IS AN INNOCENT MAN

Mr. Krop is a loving husband and father of four small children, realtor and businessman, licensed and law-abiding at all times.  He works full-time to provide for his family as a real estate broker.  His other business, RK86 LLC and TMGN LLC, d/b/a The Machine Gun Nest (TMGN), is a Class III (Type 7) Federal Firearms Licensee (FFL), a license authorized and required under constitutional Congressional Act.  His business, The Machine Gun Nest, is and has always been licensed, and regularly monitored and audited by the ATF, *to demonstrate machine gun rentals*, and to sell, import, export, build, manufacture, transfer, transport and produce them.  In the raid VAVILIN allegedly seized a gun not present on his search and seizure warrant from the manufacturing safe at TMGN LLC (FFL #8-52-13572), namely, a B&T USA USW-A1 (SN: US 21-25986).  VAVILIN then added a "line" on his handwritten warrant "Return" after the machineguns listed and added this additionally illegally seized firearm not the subject of the warrant and not returned to TMGN LLC to date.  This unlawful interference with the ATF FFL license of TMGN LLC was never disclosed to the Court or Grand Jury.

A primary reason his business exists is the lawful demonstration of machine guns including to his law enforcement and military memberships, so to accuse Mr. Krop of not demonstrating the

said machine guns to law enforcement and military as the prosecution did is a willful and knowing misrepresentation to the Grand Jury.  So too is the false statement that his obtaining law letters was to join a "conspiracy to defraud the United States," alleging it was not to provide demonstrations to law enforcement but was merely for "profit" "from private citizens" when the ATF and prosecution knew that his TMGN membership includes over 383 law enforcement and military personnel and/or former law enforcement and military.  And according to Agent VAVILIN'S warrant affidavit even the ATF and/or FBI demonstrated machine guns at TMGN, contravening the prosecution's false presentation to the Grand Jury that no demonstrations had occurred.

As part of Mr. Krop's business motto the demonstrations of firearms by, membership, training, encouragement, and even employment, of law enforcement and military members is and has always been a daily focus, and, as licensed by the United States, all law abiding members of the public are also lawfully able to demonstrate, rent, and if licensed for the same, purchase machine guns.  In fact and truth, the ATF regularly performs audits of TMGN, recently renewed/granted his Type 7 Class III FFL approximately six months prior to the Biden Administration's political change in policy, and has never once reported any illegality or need for correction of any practice, including demonstrations of pre- and post-1986 machine guns to the government and law-abiding public as TMGN is licensed to so provide.

The instituting of the prosecution was fraudulent, willfully fictitious and vindictive, because the prosecution knew that a vast number of members of TMGN are law enforcement and military who regularly train, demonstrate and practice on the said machine guns and other firearms at Mr. Krop's business.  These truths and facts the prosecution wrongfully withheld from the Grand Jury in an attempt to politicize and misrepresent Mr. Krop's lawful business in order to try and

take down America's and Maryland's most popular Sheriff Jenkins, and because Mr. Krop, unlike other FFLs also reviewed by ATF, criticized the Biden Administration's misuse of tax dollars.

There can be no criminal conspiracy without truth and fact on the elements of the accusation, and both show that Mr. Krop is innocent, and has a lawful right to offer demonstrations of machine guns.   These material misrepresentations require dismissal of all charges with prejudice.

## ARGUMENT ON MOTIONS

Despite the Supreme Court's repeated admonition that "the fraud statutes do not vest a general power in 'the Federal Government . . . to enforce (its view of) integrity in broad swaths of state and local policymaking.'..." and that "'[f]ederal prosecutors may not use property fraud statutes to set standards of disclosure and good government for state and local officials, [but] "must prove not only that wire fraud defendants 'engaged in deception,' but also that money or property was 'an object of their fraud.'..."...," *Ciminelli v. United States*, 598 U.S. ____ (2023)(slip op. at 8)(citing *Kelly*, 590 U.S., at (slip op., at 12)), the prosecution, Mr. Leo Wise and Christine Goo, here proceeded with this knowingly baseless Indictment of innocent defendants.  They charged them with fraud on the alleged transfers and possession of machineguns via the required "ATF Form 6" and in doing so misled the Grand Jury.   Furthermore, they presented no evidence whatsoever of any deceit or any payment of money or other remuneration or benefit to either defendant, nor any defrauding of the government, as required.  *Id.*

The government knows that Mr. Krop is licensed to not only possess *post-1986* machineguns, he may manufacture them, import, export, trade, deal, sale, demonstration and display them as well.  27 CFR § 479.105(c); 22 U.S.C. § 2778.

The government further knows that Sheriff Jenkins may order, purchase, possess and distribute to his law enforcement cadre fully automatic machineguns, including "belt-fed" .223/556 such as the one allegedly mentioned in the indictment and seized, which is no different in caliber and similar in respects to the AR 15 and AR 16 fully auto machineguns which the government (VAVILIN affidavit) recognized the FCSO lawfully possesses at this moment.  22 U.S.C. § 2778; 18 U.S.C. § 922(o).

The legal questions before this honorable Court include whether Mr. Krop, a Class III FFL licensee, and/or Sheriff Jenkins, the constitutional and elected chief law enforcement officer of Frederick County, are either or both permitted under federal law to 1) possess *post-1986* machine guns, and whether 2) TMGN may use the same lawfully as demonstration rentals[4].  The answer to both questions for both defendants is yes; they may for any reason that they, in their eyes, deem suitable.  Because they may do so, there can be no conspiracy to defraud the United States as a matter of law.  The federal conspiracy statute, 18 U.S.C. § 371, requires that violating a federal law be the alleged illegal goal by the alleged conspirators.  That has not occurred here whatsoever. *United States v. Arch Trading Co.*, 987 F.2d 1087, 1091 (4th Cir. 1993).  It further requires some kind of agreement for financial benefit or monetary payment, and transfer of that money between the charged defendants, demonstrating a conspiracy.  *Id.*; *Ciminelli v. United States*, 598 U.S. _____ (2023)(*quid pro quo* required by evidence of money payment or similar financial purpose).  Not only were there no payments, donations, or money provided, whatsoever, there was not even

---

[4] The prosecution falsely told the Grand Jury Mr. Krop made a "profit" of over $100,000 from demonstration rentals when in fact there is no evidence of either a profit to Mr. Krop or to TMGN for any of the said firearms, or for any demonstrations whatsoever.  But this is not a crime in any case as explained herein, since the ATF *requires* Class III licensees to be for-profit businesses, certified to be a real corporation, and since there was no agreement or conspiracy to obtain firearms unlawfully or for any profit.  Additionally, all licensed firearms are not possessed by Mr. Krop but only by the entity which the ATF has licensed and on that authorized property alone.

any public or private support for Sheriff Jenkins' by Mr. Krop or TMGN or even an offer for the same in exchange for law letters as falsely alleged by the government.

The instituting of the prosecution is willfully vindictive and fraudulent, and the indictment is fictitious, false and defective; the warrant by telephone was falsely sworn by VAVILIN as averred herein, and no law was transgressed by Mr. Krop.  Neither Mr. Robert Krop nor Sheriff Charles "Chuck" Jenkins committed any conspiracy to defraud the United States, nor any other crime.

"We start with the familiar proposition that "[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." *Dennis v. United States*, 341 U. S. 494, 500 (1951). See also *United States v. Freed*, 401 U. S. 601, 613 (1971) (BRENNAN, J., concurring in judgment); *United States v. Balint*, 258 U. S. 250, 251-253 (1922)." *United States v. United States Gypsum Co.*, 438 U.S. 422, 436 (1978).  The Court went on to say:

> "…this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that, to constitute any crime, there must first be a 'vicious will.'" (Footnotes omitted.) Although Blackstone's requisite "vicious will" has been replaced by … less colorful characterizations of the mental state required to support criminality, see ALI, Model Penal Code § 2.02 (Prop.Off.Draft 1962), **intent generally remains an indispensable element of a criminal offense.**

*United States v. United States Gypsum Co.*, 438 U.S. 422, 437 (1978)(bold emphasis added).

Federal conspiracy is a specific intent crime.  *Id.* at 443 n. 20.

A federal criminal conspiracy under 18 U.S.C. 371[5] – the statute charged against defendants – is: (1) an intentional agreement with another entered into on a specific date, (2) to

---

[5] "If two or more persons conspire either to commit any offense against the United States or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy…"

conspire to defraud the United States, and (3) at least one member of the agreement commits at least one overt act to further the agreement.  *Id.*

Here, not a single element is met, nor can or will they be met, and the instituting of the prosecution was fully aware of this fact when they agreed to proceed and present the misrepresentations to the Judge for application of the warrant under oath, and the fraudulent and defectively drafted indictment to the Grand Jury.  As is seen on its face, there is no date stated of any agreement to defraud the government nor was there ever such an agreement; there is no statement of any meeting of the minds, inferred or expressed, to enter into any agreement to defraud America; there was no statement of any knowledge of any goal or objective of the alleged "conspiracy," and in fact no goal was even described to the Grand Jury in violation of federal law; there was no statement of how or when both Mr. Krop and the Sheriff joined into this alleged conspiracy with any intent to further any goal or objective of the conspiracy – because none exist; there was no statement to the Grand Jury of any unity of purpose to achieve any such goal, nor where and when either party to the alleged agreement had any stake in the agreement or derived any benefit therefrom – because there wasn't any.  There was no intent by either Mr. Krop or Sheriff Jenkins to defraud or obstruct the government; and, there was never any act of defrauding or obstructing. *Id.*

The government may not institute a prosecution on grounds of conspiracy to defraud or obstruct the government without truth and fact, nor may it do so, as here, upon false evidence.

> "The Supreme Court long ago opined that "a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction." *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). "This is true regardless of whether the [g]overnment solicited testimony it knew or should have known to be false or simply allowed such testimony to pass uncorrected." United States v. Kelly, 35 F.3d 929, 933 (4th Cir.1994). A new trial is required when the government's knowing use of false testimony could affect the judgment of the jury.

See Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

*United States v. Bartko*, 728 F.3d 327, 335 (4th Cir. 2013).

The evidence presented to the Grand Jury, and the Judge in order to obtain the warrant, were false and devoid of any conspiracy or even an inference of conspiracy. Instead, the sworn statements presented claimed that federal law was violated because "no demonstrations were requested [by the Sheriff]" and that a conspiracy occurred by Mr. Krop's "support for [the Sheriff's] re-election;" these were in fact verifiably false statements. Each piece of "evidence" presented by VAVILIN and the prosecution were letters *requesting demonstrations*, and demonstrations and offers of the same *are what TMGN provides and did provide*; VAVILIN never inquired about law enforcement demonstrations that were daily ongoing, and no support for the Sheriff was ever provided, intended, or even inferred either in exchange for law letters *or at any time whatsoever*. Below, *seriatim*, we address each count charged under the indictment and request an immediate dismissal.

Count One, the foundational charge drafted by the prosecution and upon which the government hinges its case, begins with a false presentation of relevant individuals and entities.

1. **Use of Past-Tense "Was" and Misrepresentations Presented Mr. Krop and Sheriff Jenkins Falsely to the Grand Jury.**

The government misrepresented to the Grand Jury that "Robert Krop **was** a resident of Frederick County and the principal owner and operator of firearms-related businesses, namely RK86, LLC and TMGN LLC, both doing business as "The Machine Gun Nest" (TMGN), and both of which **were** based in Frederick County, Maryland…Krop and his businesses **held up** two (2) Federal Firearms Licenses (FFL) with Special Occupational Tax (SOT)…that allowed Krop and TMGN **under certain circumstances** to **possess and deal in** fully automatic firearms (hereinafter

'**machineguns**[6]') [sic]…" (bold emphasis added).  And the government presented to the Grand Jury merely that "Sheriff Jenkins **was a** sworn law enforcement officer…**was** elected Sheriff in 2006 and **was** subsequently reelected, most recently in 2022…he **was** the Frederick County Sheriff's Office [sic] chief law enforcement officer…[which agency]…**was** the primary law enforcement agency for all unincorporated areas of Frederick County, and provided support to municipal law enforcement agencies within Frederick County…".

In truth and fact, the government knew that Mr. Krop *is* a resident of Frederick County, *is* the owner of said businesses, but does not profit from or have income from TMGN as he is a full-time realtor; which businesses *are* in Frederick County and that Krop and that his businesses *currently hold* two FFL licenses allowing him *at all times and circumstances under law* to possess and deal in, **including rent, sell, transport, import, export, build, transfer, and demonstrate** fully automatic **machine guns**.  In truth and fact, the government knew that Sheriff Jenkins *is* the chief law enforcement officer in Frederick County, not only for unincorporated areas as they falsely claimed in the Indictment (pg. 2, ¶ 3) but for all of Frederick County and City, having oversight and constitutional superior authority in each area.  The indictment charges Mr. Krop while falsely accusing the business and the Sheriff of conspiring to seek a profit from rentals – a lawful purpose of the business.  At no time has the Sheriff received any benefit or money or anything of value from Mr. Krop, TMGN LLC, RK86 LLC, or anyone else associated, so for the prosecution to claim this false statement to the Grand Jury was materially in error and fraudulent.

By placing both Mr. Krop and Sheriff Jenkins into the past and in the false negative light to the Grand Jury, the prosecution instituted a fraudulent viewpoint to the Grand Jury as if they

---

[6] The government's use of the term 'machinegun' in the indictment is misleading as well, as they interchange it with the legal terms "automatic firearm" and "machine gun."  This failure in pleading is more than a technicality – it presented a material error to the Grand Jury that the charged "machineguns" were of potential different nature than the Type 7 license Mr. Krop possesses, making it seem that he was obtaining illegal guns when he did not.

were no longer in roles and positions of lawful ownership, licensee status and law enforcement status, and that they were obtaining money for the same – all of which was knowingly false.  It presented them as if they were no longer law-abiding citizens.  Yet the truth and fact of this matter is that Mr. Krop *is* a machine gun dealer and license holder in good standing without any infractions, and that Sheriff Jenkins is the chief law enforcement officer overseeing the 11 municipalities and entire area of Frederick County – a  large County in the State of Maryland both for land mass and significant, growing population, burgeoning migration to our Cities and increased violent crime and drugs including child sex trafficking in one of the highest fentanyl trafficking regions in America involving sophisticated, dangerous, domestic and foreign actors.

These misrepresentations of truth and fact were not immaterial – they begin at the heart of the false accusation of wrongdoing because they placed Mr. Krop in a false light to the Grand Jury of having lost his machine gun license – which he has not, and thus presented him to the Grand Jury as if he were no longer in good standing and able to possess machine guns, thus advancing the false charge to obtain machine guns by conspiracy and the false charge of unlawful possession of machine guns.  These false statements further presented Mr. Krop to the Grand Jury as if he did not possess a license to possess, build, rent, transport, transfer, import, export, build and demonstrate fully automatic machine guns, which he does possess – the very thing they were falsely accusing Mr. Krop of doing as part their misrepresentation of "conspiracy."  The false statements presented Mr. Krop as if he were severely limited in his possession, ownership, control, rental, transfer, import, export, training, and range use of fully auto machine guns – as if he were a pariah that only could touch fully auto guns "under certain circumstances" which they misrepresented to the Grand Jury.

In fact, in the indictment they further misrepresented to the Grand Jury that the so-called "conspiracy" was to obtain fully auto machine guns so that he could rent them to "private citizens" as if private citizens in America may not demonstrate firearms – not informing the Grand Jury that his license and business purpose as approved and lawfully operating permits rentals, leases and training. The prosecution, on information and belief, falsely informed the Grand Jury that said firearms business was not licensed to deal in machine guns which allowed them to rent and make a profit on all their inventory – in fact and truth. Nor did they inform the jury that the average American citizen may possess and own a fully automatic machine gun under license, but instead they falsely claimed that Mr. Krop's license and approvals were "only" for law enforcement and military use. Indictment, pg. 4, ¶ 12(a). These were material false statements.

Additionally, TMGN did in fact invite the FCSO to view demonstrations of the said machineguns and as stated hereinabove, has FCSO and City police members who demonstrate them. Furthermore, Sheriff Jenkins did in fact appear at TMGN on several occasions and as such did in fact, on information and belief, personally view machinegun displays, sales models, demonstration(s) and/or videos of demonstrations of said guns listed in the indictment, and, though not required under federal law, had personal opportunity to demonstrate and see demonstrations all pre and post-1986 machine guns without any restriction on a timeline to do so by the ATF or that he personally must view each gun firing instead of his agents or law enforcement doing so.[7] The Sheriff and FCSO deputies were informed of arrivals of the machine guns, saw the machine guns, and he could hear and view them both while stationary and/or dry-fired, and, if desired, while

---

[7] Agent VAVILIN swore in his "affidavit for warrant" that he or his undercover agents viewed TMGN's social media as part of its investigation. Therefore, VAVILIN knew or should have known it included a video of the Sheriff on TMGN's premises during a display and demonstration of said machine guns. The said machineguns are seen – live - in the same video as the Sheriff. Apparently, prosecutor Mr. Leo WISE was not informed of this fact by agent VAVILIN, providing him cause to immediately review and dismiss this false indictment.

being live-fired.  Contrary to the malicious statement made to the Grand Jury by the prosecution, neither federal law nor the regulation forbids "belt-fed" machine guns from being obtained by interest and demonstration including post-1986 machine guns.  For the prosecution to say otherwise is a complete fabrication of the law and misrepresentation to the Grand Jury, proven additionally by the change in policy issued just this year on January 11, 2023 by the ATF trying to require a new and detailed statement of "why" local law enforcement would want to see a belt-fed machine gun.  That admission-against-interest by the prosecution agency ATF demonstrates that the prosecution knew at the outset that its statements to the Grand Jury were misrepresentations. The indictment must be dismissed with prejudice.

**2. Charging Mr. Krop while Accusing TMGN Presented Mr. Krop and Sheriff Jenkins Falsely to the Grand Jury.**

Mr. Krop was not the individual named or in receipt of the perfectly legal law letters but his business was so named, TMGN.  As such it was a material misrepresentation to the Grand Jury for the prosecution to misstate this fact and truth and instead, to invent a false scheme of conspiracy in order to politicize the prosecutions' attack on a Sheriff and a local business owner the Biden Administration may politically dislike, including presenting to the Grand Jury, on information and belief, Mr. Krop's statements to VAVILIN inferring that Mr. Krop disliked the way the Biden Administration was "doing its job" with his tax dollars.

This misrepresentation included the prosecution advancing a scheme to place Mr. Krop in the shoes of his business, TMGN, to try and make him out to be a "conspirator" to the Grand Jury. This scheme was advanced by not only placing him in the shoes of his business, but by also misrepresenting to the Grand Jury that he asked for the letters for his own profit, and that in exchange he then "offered political support" for Sheriff Jenkins, neither of which were true or supported by evidence.

Mr. Krop is a husband, father of four small children, and small businessman, and never has nor ever has had any intent whatsoever, specific or general, to violate or obstruct federal law, and he did not in fact violate any law.  In fact, he has a long-standing policy ordered to his companies and employees to "do what is right," including "avoiding even the appearance of wrongdoing."[8] He makes no room for mistakes of law in his businesses and employees understand this, since they deal in firearms serving both the government and the public.  It was wrong for the prosecution to mislead the Grand Jury to state that he entered an agreement to conspire to obtain law letters for allowing profit rentals when: 1) the prosecution failed to inform the Grand Jury that TMGN is licensed to demonstrate machine gun rentals obtained under law letters and may still demonstrate machine guns today; and, 2) TMGN, the prosecution alleges, received the law letters, not Mr. Krop, defeating the preposterous story of the prosecution that Mr. Krop was personally profiting from a conspiracy.  There is no standing against Mr. Krop and the indictment must be immediately dismissed with prejudice.

### 3. Federal Regulations for Class Three FFL Holders Were Misrepresented to the Grand Jury.

Federal law allows the possession, transfer, manufacture, importation *and exportation* of automatic firearms (a/k/a, "machine guns") that were manufactured or imported after May 19, 1986 by licensed "Type 7," Class III FFLs such as Mr. Krop.  18 U.S.C. § 922(o); 27 CFR 479.105(d).

In the instant matter, the government predicated its entire indictment presentation to the Grand Jury upon materially false information, namely, that Mr. Krop, a Class Three FFL holder, may not demonstrate, rent or charge money from demonstrating machine guns made after May 19,

---

[8] As a man of deep personal faith, Mr. Krop strives to practice what the Apostle St. Paul instructed believers in I Thess. 5:22: "Abstain from all appearance of evil."

1986 to anyone, including, to "private [American] citizens." Indictment, pg. 6, ¶ 13.  At the time they presented this materially false information they knew that it was false; and indeed, the government still knows it to be false as they presently authorize such machine gun rentals at the said business of Mr. Krop and of dozens of other FFL holders throughout the United States.  The government also knew it to be false because they knew that the existence of TMGN includes membership of law enforcement, military and United States government personnel who in fact demonstrate machine guns at TMGN while also being licensed to allow law abiding U.S. citizens to demonstrate machine guns.

But they failed to inform either the judge or the Grand Jury of these material facts.  Instead, they covered it up, on information and belief, with subterfuge and deceit, claiming in both the warrant by telephone affidavit and the indictment that Mr. Krop was only permitted to allow "demonstrations for law enforcement and military."  **Ex. 2** (VAVLIN affidavit); Indictment, pg. 3, ¶¶ 7, 9, 10.  This was also a materially false statement and remains so.  Not even *post-1986* machineguns are mandated by any federal law or regulation to be *only* for law enforcement and military demonstrations and never allowed to be touched, "in the hands of" (Ex. 2 VAVILIN), or gazed upon by mere "private [American] citizens." See, *Id.*  Mr. Krop, as a Class III FFL holder, is authorized to not only demonstrate by rental all guns in his possession to the American citizen, but he is also authorized to *export* said guns to State Department-approved foreign governments for their use however they deem necessary, including for that country's distribution to private citizens of their country for self-defense, such as is the case presently in Ukraine where the United States in its role with NATO is assisting Ukraine, on information and belief, in distributing fully automatic machine guns to its private citizens, law enforcement and military.

On pages three and five of the indictment, the prosecution repeatedly misled the Grand Jury by misrepresenting that federal law allows "properly licensed…FFL…" holders to "possess, transfer, and/or import a machinegun *for use as a sample for demonstration to potential law enforcement or military purchasers*" and "*dealer sales sample for use in a demonstration to a law enforcement agency.*"  Indict. pg 3, ¶¶ 7,8,9,10; pg 5, ¶¶ 12(b),(c). (bold emphasis added). No such federal law requirement exists and the prosecution knew this because, as seen in the warrant affidavit of VAVLIN and on information and belief, they withheld from the Court and/or the Grand Jury the governing ATF regulation for law letters dated November 10, 1999 (revised February 23, 2006), and they further withheld the changed ATF regulation for law letters dated January 11, 2023 – both of which completely exonerate defendants.  Were it not for the withholding of this legal information from the knowledge and information before the Grand Jury, no indictment would have been returned.

That is because the law does not mandate, as the government falsely proffered to the Grand Jury, that demonstrations are *only* for law enforcement or military customers seeking to buy the machine guns and may *only* be used for such purposes.  That is entirely made up and premised upon an attempt to change the regulations from Congressional intent and from ATF practice until January 11, 2023.  Additionally, the law letter requirement authority in place under the indictment states that a government official may provide any Class Three FFL holder with a letter that they "would" require a demonstration, and that no need for the particular model need be expressed, but only an "interest in seeing a demonstration of a particular machinegun" and that no mandate exists thereunder to see any type of demonstration within any time frame.  (**Exhibit Three, ATF "NFA Law Letter" dated November 10, 1999, attached and incorporated**)("Title 27, Code of Federal Regulations 479.105 requires that applications to transfer and register "post-1986" machineguns

will be approved if…letter[] from governmental entities expressing a need for a particular model *or **interest** in seeing a demonstration of a particular machinegun…* an application to transfer a "post-1986" machinegun [sic] to a Federal firearms licensee and special occupational taxpayer [FFL/SOT] must be submitted with a 'law letter' evidencing a government agency's **interest** in a particular machinegun…the NFA Branch will look for example…***interest in the machinegun…***").

The alleged "law letters" – all of them – properly stated the Sheriff and FCSO's "interest" in the particular machineguns.  It is of no import to the law or facts whether a law enforcement entity consults a licensed dealer in machineguns about what machineguns may be able to be transferred and demonstrated – indeed, it is required of it to do so as it is not a firearms dealer. Nor may the government, or the FCSO, tell the lawfully licensed dealer in good standing that it may not use dealer sales model demonstrations it purchased "for profit" – indeed, the ATF licensing scheme only exists for those firearms dealers who do so for profit.[9]  None of this factual legal information was presented to the Grand Jury, resulting in a corruption of justice for law-abiding Mr. Krop.

Furthermore, the changed regulation requirements in the ATF letter dated January 11, 2023 *adds* wording that reflects the very wording of the fraudulent indictment, namely as follows:

> "A law letter that requests the demonstration of a machinegun that is no longer in production **will be further scrutinized to ensure they are intended for government demonstration**.  The supporting documents must [also] provide information as to the availability of the machinegun to **fill subsequent orders**.
> "A law letter that requests the demonstration of a machinegun that is **generally recognized as being primarily suitable for the military** will require

---

[9] "As a general rule, you will need a license if you repetitively buy and sell firearms with the principal motive of making a profit. In contrast, if you only make occasional sales of firearms from your personal collection, you do not need to be licensed." Department of Justice, Bureau of Alcohol, Tobacco and Firearms. ATF publication 5310.2, January 2016. "Do I Need A License to Buy and Sell Firearms?: Guidance To Help You Understand When a Federal Firearms License is Required Under Federal Law." https://www.atf.gov/file/100871/download (accessed May 24, 2023).

further justification explaining how the machinegun is suitable for the requesting
government entity."
(**Exhibit Four**, pg. 3, attached hereto)(bold emphasis added).

The prosecution failed, on information and belief, to present this information to the Judge

or Grand Jury; but for that failure the Grand Jury would not have returned an indictment, nor would

the Court have authorized the search and seizure warrant.  Instead, the prosecution provided false

information that these January 11, 2023 new requirements applied to Mr. Krop from 2011 through

2022, and they did not.  But even the new and changed regulation itself <u>does nothing</u> to explain

the government's belief of what is "generally recognized as being primarily suitable for the

military" nor does it forbid law letters for any such machine guns that *law enforcement* may deem

"suitable" as being of interest to Sheriff departments that operate special operations and SWAT

teams.  To argue otherwise is a suitable public policy debate, but it is not a suitable grounds for a

prosecution.

Counts two, three, four and five hinge entirely on the false belief of the prosecution that

the machineguns requested for demonstration dealer sales models were not "suitable" for law

enforcement and the law letters and applications for transfer were therefore "false statements."

This is preposterous and without any basis in law or fact, as explained, *supra*, it is in the eye of the

beholder – the law enforcement – that federal law dictates the lawfulness of their request or

machineguns for purchase *or interest to see*.  18 U.S.C. § 922(o).  The prosecution presented no

law or evidence demonstrating that federal law prevented the requests for interest in *post-1986*

machineguns by the FCSO – because that would be a lie.  The prosecution knows that federal law

permits the FCSO to not only transfer them for interest and dealer sales samples, but also to

purchase and possess them if the interested *law enforcement* so chooses, not the ATF.  *Id.*  In fact,

on information and belief the prosecution failed to inform the Court or the Grand Jury that the

Sheriff and FCSO has purchased and does possess machineguns and such is supported by federal law.  Thus, these charges were a fabrication and must be dismissed immediately with prejudice.

Additionally, at this moment Mr. Krop and Sheriff Jenkins are being prosecuted under Counts Five and Six for "false statements" and "unlawful possession" with false declarations to the Court and to the Grand Jury that the "M249 SAW was a belt-fed machinegun **suitable only for use in combat**" (emphasis added), which averment the prosecution knew was false because: 1) federal law says the ATF may not determine suitability of the weapon for local law enforcement under federal law, see, *Id.*, and 2) in any case they are suitable for SWAT and special operations and are used as such *worldwide* including in the United States.  Also, on information and belief, the ATF itself possesses "belt-fed" machineguns for law enforcement interests.

Additionally, Count Six falsely averred to the Grand Jury a letter *requesting demonstrations* of "six (6) Sig Sauer Inc. machineguns…[but] the Frederick County Sheriff's Office **had not requested a demonstration**."  Indict. pg 14, ¶ 25 (bold emphasis added).  The letter is averred to be signed by the chief of the FCSO, Sheriff Jenkins.  The Sheriff is the FCSO by constitutional mandate and the prosecution failed to explain this fact to the Grand Jury, averring a falsity that the Sheriff was separate from the FCSO.  On its face these averments to the Grand Jury were also false because the prosecution averred that the Sheriff's office "requested demonstrations" …but "had not requested a demonstration."  Additionally, it failed to inform the Grand Jury that the six Sig Sauer machineguns were owned and being transferred from Harford County Sheriff's Department jurisdiction's Havre de Grace police department, showing that law enforcement was in fact in current possession and have had use for the same machineguns.  The nonsensical and false statements to the Grand Jury by the prosecution in the indictment must be stricken and the indictment dismissed with prejudice.

The prosecution failed as well to inform the judge and Grand Jury that the Sheriff is head of law enforcement for the entire County of Frederick and has supportive and concurrent jurisdiction within the City of Frederick, as constitutionally granted under the Maryland Constitution.  Instead, they falsely misrepresented to the Grand Jury and the Judge that a demonstration must, and needs be provided personally to *him*, the chief executive of over 200 active duty law enforcement in an ever more dangerous DC suburb, which is nowhere in the law.

Furthermore, on information and belief, the instituting of the prosecution falsely presented to the Grand Jury fake highlighted financials from the Sheriff's office highlighting what appears to be budget changes, while falsely claiming to the Grand Jury that there was a benefit to advance a "conspiracy," all while knowing this averment was entirely false and that no financial or monetary consideration or payment of any kind was ever provided to the Sheriff from Mr. KROP or anyone associated with Mr. KROP or TMGN.  These fake highlighted financial documents must be suppressed as they have no bearing whatsoever on the fake allegations.

Indeed, the prosecution then falsely used e-mails from Isaac Burrall of TMGN which are protected by free speech under the United States and Maryland Constitutions allegedly discussing whether or not TMGN could host a political event (which in other cases always included machinegun demonstrations) for the Sheriff and public, as they offer anyone who is pro-Second Amendment, without any connection or quid pro quo.  No such event was planned but even if it had been, it would have been private, political, protected speech by persons and corporations.  U.S. Const., amend. I; *c.f.*, generally, *Citizens United v. FEC*, 558 U.S. 310 (2010).  At no time has Mr. Krop, nor TMGN, provided any political donations, or any private or public payments of any kind to Sheriff Jenkins.  However, the prosecution appears to argue the nonsensical position to the Grand Jury that if TMGN wanted to reach out and host an event for FCSO and Sheriff Jenkins,

they would be wrong; but if they did not host an event for FCSO and Sheriff Jenkins, they were wrong.  Such prosecutorial action is nonsense and vindictive.

Even if the proffered e-mails to the Grand Jury could be attributed to Mr. Krop, and they cannot, TMGN merely saying kind words of thanks and support to their elected public servant, allegedly, is neither illegal nor is it a conspiracy to do anything illegal.  To say otherwise, as the prosecution instituted falsely and did so state, is illegally vindictive and a material misrepresentation to the Grand Jury.[10]

Additionally, in paragraph 11 of pg. 4 of the indictment, the prosecution continued its vindictive and material misrepresentations to the Grand Jury by speaking to the Grand Jury in the past-tense when explaining FFLs are authorized under federal law to have machine guns.  Instead, with subterfuge and falsity the prosecution told the Grand Jury the FFLs were only previously "required…to keep and maintain records related to their acquisition and disposition of machine guns." *Id*.  In this paragraph the prosecution willfully misleads the Grand Jury to pretend as if FFLs no longer are permitted to purchase, sell, transfer, import, or possess "machineguns" while then further confusing the Grand Jury by speaking of "machine guns" in the same paragraph.  This material representation is not a typo by the government – it is a willful manipulation and intimidation of a Grand Jury not familiar with federal law and regulations allowing the possession, sale, transfer, importation (and exportation) and purchase of machine guns. Instead, by speaking in the *past tense*, the Grand Jury was misled by the prosecution to believe FFLs are no longer permitted by law to own and possess such machine guns, which is a strict false statement.

**The False Averment of "The Conspiracy"**

---

[10] **Would the prosecution indict a seated public official who *donated money* to the political campaign of the chief executive who later appointed them, as is the case with many public officials**?  That would be unlawful and vindictive and yet, what is happening to TMGN and Mr. Krop is even worse by this prosecution – because they never donated or contributed a dime to Sheriff Jenkins nor offered any at any time.

It is disingenuous that the prosecution falsely titles its Indictment section called "The Conspiracy" stating the defendants "obstructed" the ATF enforcement of federal law "to limit the purchase, sale, transfer, and importation of machineguns [sic] for purchase by or demonstration for military and law enforcement agencies ***only***…".  This is false – there is no "ATF enforcement mandate" to so "limit" any regulated firearms – but only to ensure legal "purchase, sale, transfer and important" of the same lawfully.  Sheriff Jenkins and Mr. Krop could machineguns tomorrow for the Sheriff's approximately 200-person force, and the ATF may not limit the order.  18 U.S.C. § 922(o).

Indeed, the prosecution knew there was no such limit because they knew they were attempting prosecution under the one-page ATF "NFA 'Law Letter' Requirement" regulation issued November 10, 1999 (revised February 23, 2006), which makes no such limitation.  The prosecution at the instituting of the prosecution knew this lack of limitation was a problem for their interest in prosecuting the defendants, so the ATF, as described *supra*, on January 11, 2023 of this year – on information and belief near or at the beginning of the decision to draft the instant indictment - changed the regulation policy to include the detail they claim was required in order to indict Mr. Krop and Sheriff Jenkins.  This was done, namely, by adding new requirements to its regulations to seek to go beyond federal law and mandate *a particular law enforcement purpose* for the transfer of the type of machine gun, and limit the interest to exclude "training" or other purposes. See, ***Exs. 3 & 4***.

But even if the government is permitted to *Ex Post Facto* make a crime where it was not, and it cannot do so here, Mr. Krop and TMGN demonstrated the machine guns to law enforcement including members of the Sheriff's department and the prosecution failed to inform the Grand Jury they had done so.

## AGENT ANDRIY VAVILIN'S MATERIAL MISREPRESENTATIONS TO THE COURT

Assistant United States Attorneys Ms. C. GOO, ESQ., and Mr. C. AUSTIN, ESQ., upon information and belief, on statements provided to them from ATF agents ANDRIY VAVILIN (citizen of UKRAINE[11] by birth) and JESSICA WOODIN, at an unknown time presented a sworn federal district judge and Grand Jury of the District of Maryland with averred false and/or grossly inaccurate information. On information and belief, because of the lack of knowledge, inexperience and/or failure of factual checking, those statements by the said agents and the prosecution included misrepresentations that the aforesaid defendant Mr. Krop was not in fact authorized to possess, build, purchase, sell or rent *post-1986* machine guns, or to receive rental profits from renting *any* machineguns (Indictment, pg. 2, ¶ 6, pg. 3, ¶¶ 7,9,10, pg. 4, ¶12, pg. 5, ¶ 12 cont., pg. 6, ¶¶ 12 cont., 13, 14, pgs. 7-15). Such a material misrepresentation to the Grand Jury and Judge placed Mr. Krop in a false light with the Grand Jury and federal Judge. The government knows that Class

---

[11] Agent Andriy Vavilin verbally admitted to being from Ukraine to the undersigned on April 28, 2023 in an in-person meeting and review of seized machine guns he is holding in evidence at ATF headquarters in Baltimore City when the undersigned noticed a heavy Ukrainian accent and asked him if he was from Ukraine, to which he answered "Yes! That is pretty good you guessed that" or similar words. It is cited here because the **chain of custody logs and sworn statements** in the record to date identify Mr. Vavilin himself as in sole possession of the machine guns on May 25, 2022 and on dates thereafter during and after the seizure of the same. During a gap period after May 25, 2022 when Vavilin seized the machine guns, **the ATF emailed TMGN informing that "at least six" of the machine guns were "unaccounted for" after ATF possession by Mr. Vavilin.** Later, the guns were found and located by the ATF without explanation. Assuming ANDRIY VAVILIN has denounced Ukrainian citizenship in order to be lawfully employed at the ATF as a law enforcement officer with arrest powers over American citizens, the defense cannot be sure of this since discovery requests on VAVILIN have been rebuffed by the prosecution. Federal law prohibits possession of machine guns by any foreign nationals in the United States. **Additionally, his Ukrainian citizenship by birth demonstrates vindictive bias in his prosecutorial investigation of American businessman Mr. Krop, because of Vavilin's false statements in his affidavit that "these firearms should not be for sale in America….", and his written narrative that Mr. Krop made a political statement to him criticizing the Biden Administration's use of "taxpayer dollars," all while American taxpayers via the Biden Administration are, on information and belief, sending the same or similar machineguns to Ukraine for free.** Furthermore, if Vavilin has not denounced his Ukrainian citizenship the warrant must be immediately quashed and the indictment dismissed. Strict proof is demanded of compliance with federal law, a deposition duces tecum under oath is necessary to preserve the evidence for trial and to make a pre-trial determination, and the return of all property to TMGN is demanded, and the forfeiture proceeding is strongly opposed and must be DENIED.

III FFL holders may rent machineguns to the general law abiding public and failed to tell the Grand Jury this fact. The government knows that it authorized Mr. Krop as a Federal Firearms Class III Licensed Federal Firearms business owner of "RK86, LLC" and "TMGN, LLC," d/b/a The Machine Gun Nest, of Frederick, Maryland, a license provided by Congressional Act to those authorized to own, purchase, sell, build, rent and demonstrate machine guns including *post-1986* models of any kind including "belt-fed" models, being a business operated under the laws and Constitutional protections of the United States of America in order to provide demonstrations, rentals and sales of machine guns for military, law enforcement and lawfully authorized members of the public.  With the falsely obtained federal warrant, the averred ATF agents, with others in tow, raided and unlawfully seized averred property, materials and items from the Frederick, Maryland location of Mr. Krop's licensed and duly operated demonstration, training and business facility grounds, and/or claimed to have obtained items there.

ATF Agent VAVILIN, who took sole possession of said seized "machineguns" to transport to the "ATF Vault VII" in Baltimore City thereafter stated under oath in their written report on the RAID AND SEIZURE that Mr. Krop allegedly made a derogatory statement of PRESIDENT BIDEN to the agent, saying "glad to see the Biden Administration at work," which alleged comment was then wrongfully used in the narrative statements provided by Vavilin to the prosecution in order to advance the prosecution's focus on the political activities of Mr. Krop[12] and obtain the Grand Jury indictment.

### **Speedy Trial Demand by Mr. Krop**

---

[12] Robert Krop and The Machine Gun Nest serves members and people of any or no political affiliation and he does not generally telegraph his political opinions, voting choices or party affiliation, nor did he provide any political support or donations to Sheriff Jenkins.  However, knowing this fact, the agent VAVILIN singled him out for political prosecution by citing his alleged off-the-cuff statement about the Biden Administration in the agent's averment report of the raid.

On information and belief and after discussion with counsel, the undersigned was informed that the government was contemplating a trial in the instant matter "for next year, 2024" which is a national presidential election year, rather than a speedy trial as required by the constitution and federal law and demanded by Mr. Krop.  U.S. Const. amend. VI; Speedy Trial Act of 1974, 18 U.S.C. §§ 3161-3174; *Barker v. Wingo*, 407 U.S. 514 (1972).

On information and belief and after discussion with AUSA counsel by telephone at approximately 4:10 p.m. on May 15, 2023, the undersigned was informed that said AUSA "did not" so communicate, but that there may have been a discussion about a trial next year "in the context of a court-scheduling calendar discussion" but only referring to "not knowing" "Judge Gallagher's calendar" for a jury trial and because prosecutor GOO was busy most of June with another trial and could not meet the speedy trial deadline herself, but that she still intended to prosecute the trial anyway.  The undersigned re-asserted Mr. Krop's request for trial in 70 days from indictment (April 3, 2023), or 30 days from the date of his first appearance in court with the undersigned (April 13, 2023), which would be approximately May 15, 2023 or at the latest June 12, 2023.  AUSA GOO indicated that it would be up to the court to make that decision because she "cannot speak to Judge Gallagher's calendar."  As stated in Court through counsel on April 13, 2023, and as the undersigned did on his behalf again to the prosecution and chambers by e-mail on May 15, 2023, Mr. Krop again demands his speedy trial by jury **no later than June 12, 2023** should this Court not dismiss the indictment with prejudice as requested herein.

Co-defendant counsel filed, on May 24, 2023, a motion to exclude time from the arraignment through June 16, 2023 from the Speedy Trial Act requirements, which would have a trial begin on or before June 12, 2023 otherwise.  While Mr. Krop understands co-defendant's counsel request, Mr. Krop respectfully objects to the same for the following reasons.

On May 4, 2023 AUSA Goo's requested by e-mail an extension/exclusion of the speedy trial dates because she is handling a jury trial "from June 7 to June 16, 2023." She planned to move the Court, she wrote, for this speedy trial exclusion. While Mr. Krop was amenable to AUSA Goo's request he would agree only if the government provided requested discovery that was outstanding and had not be provided in a timely or complete manner. Discovery is still outstanding, and Mr. Krop did not therefore waive his speedy trial demand and he herein reasserts his speedy trial motion.

**Selective and vindictive prosecution**

The Grand Jury returned an indictment against American citizen Mr. Krop, while allegedly not charging or indicting other license holders as part of any "conspiracy" even though there were other Class III licensees who received "law letters" as well. This selective prosecution is because of the protected speech political statement of Mr. Krop and is further demonstrated as such because the Biden Administration wished to politicize falsely to the public the legal name of the small business ("The Machine Gun Nest") and the politics of Sheriff Jenkins, without informing the Grand Jury that TMGN was a Class III Licensed business with a legal name and purpose to demonstrate, rent, sell, buy and build machine guns, and, that at no time was any political support provided by Mr. Krop to Sheriff Jenkins, that no financial or monetary payments or donations were ever offered or contributed to Sheriff Jenkins for his re-election campaign, and that no quid pro quo was ever offered or provided for the lawful use of the ATF-required law letters, or that the Sheriff is allowed by federal law to purchase and possess post-1986 machineguns including every single one allegedly seized by VAVILIN and the prosecution. As such, the prosecution is politically vindictive and targeted Mr. Krop for expressing First Amendment protected speech, including political speech, and to advance a scheme to defame and destroy a lawful small

businessman in the name of new political policy just-issued by the Biden Administration to make it harder for lawful, licensed FFL holders to demonstrate machine guns.

4. **Glaringly Missing from the Indictment Is Any Setting Forth of Evidence or Averment of An Agreement as Mandated by the First Element of the Offense Charged.**

Rather than set forth evidence or averment of any agreement and intent to enter into an agreement, and actual joining of a conspiracy, the prosecution instead falsely asserts and repeats that Mr. Krop and Sheriff Jenkins "conspired…to defraud the United States [ATF]…through false law letters…to knowingly make false and fictitious written statements to a licensed dealer…[to be] kept in the records of individuals licensed…[to be used] within…a department [ATF]…and to knowingly and unlawfully possess machineguns…".  Indict. pgs. 5-6, ¶ 12.

The Supreme Court has required delineation of the "essential element" of agreement in any federal conspiracy charge.  "Agreement is the essential element of conspiracy and the evil at which the crime of conspiracy is directed."  *Iannelli v. United States*, 420 U.S. 770, 777 n. 10 (1975), overruled on other grounds, *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

The prosecution is attempting to charge a conspiracy while instead falsely alleging a scheme without any agreement.  Congress already determined that was not permitted under federal law and instead the House of Representatives mandated proof of an agreement to even charge a conspiracy:

> The Senate initially contemplated a more sweeping prohibition. The Senate version of the provisions declared it unlawful for 'two or more persons to participate in a scheme to obstruct the enforcement of the criminal laws of a State or a political subdivision thereof, with the intent to facilitate an illegal gambling business.' S. 30, 91st Cong., 1st Sess., § 802 (1969). Discussions in the Senate hearings reveal that this language was intentionally chosen to obtain the broadest possible coverage for that provision. It was hoped that prohibiting 'schemes' rather than 'conspiracies' would enable the prosecution to obtain convictions in cases in which they might be unable to establish the requisite knowledge of the major members of the enterprise required for a conspiracy conviction. See Hearings on S. 30 before the

Subcommittee on Criminal Laws and Procedures of the Senate Committee on the Judiciary, 91st Cong., 1st Sess., 397 (1969). The Senate version was criticized in hearings before the House Judiciary Subcommittee, where it was asserted that this language was too vague. See Hearings on S. 30 before Subcommittee No. 5 of the House Committee on the Judiciary, 91st Cong., 2d Sess., ser. 27, p. 498 (1970). **The bill reported from the House Judiciary Committee prohibited conspiracies rather than schemes, and that version subsequently was enacted into law**.

*Iannelli v. United States*, 420 U.S. 770, 798, n. 21, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975).

Without an agreement, the Court must dismiss the indictment as a matter of law. *Id.* at 774("Wharton's Rule"). This rule owes its name to Francis Wharton, whose treatise on criminal law identified the doctrine and its fundamental rationale as follows:

> 'When to the idea of an offense plurality of agents is logically necessary, conspiracy, which assumes the voluntary accession of a person to a crime of such a character that it is aggravated by a plurality of agents, cannot be maintained. . . . In other words, when the law says, 'a combination between two persons to effect a particular end shall be called, if the end be effected, by a certain name,' it is not lawful for the prosecution to call it by some other name; and when the law says, such an offense—e.g., adultery—shall have a certain punishment, it is not lawful for the prosecution to evade this limitation by indicting the offense as conspiracy.' 2 F. Wharton, Criminal Law § 1604, p. 1862 (12th ed. 1932). The Rule has been applied by numerous courts, state and federal alike. It also has been recognized by this Court...

*Id.* at 774-775 (internal citations and footnotes omitted).

The general application of Wharton's Rule requires that "where it is applicable" a conspiracy indictment be dismissed *before trial* "because an indictment for conspiracy cannot be maintained." *Id.*; See also, *Gebard v. United States*, 287 U.S. 112, 122, 53 S.Ct. 35, 37, 77 L.Ed. 206 (1932); *United States v. Katz*, 271 U.S. 354, 355, 46 S.Ct. 513, 70 L.Ed. 986 (1926).

"Federal courts earlier adhered to this literal interpretation and thus sustained demurrers to conspiracy indictments. See *United States v. New York C. & H.R.R. Co*., 146 F. 298, 303—305 (CC SDNY 1906), aff'd, 212 U.S. 481, 29 S.Ct. 304, 53 L.Ed. 613 (1909); *United States v. Dietrich*, 126 F. 659 (CC Neb.1904)." *Ianelli* at 775. "More recently, however, some federal

courts have differed over whether Wharton's Rule requires initial dismissal of the conspiracy indictment… [or if the] Rule's purposes can be served equally effectively by permitting the prosecution to charge both offenses and instructing the jury that a conviction [or acquittal] for the substantive offense necessarily precludes conviction for the conspiracy. *Id.*

Here, in the instant matter where no underlying crime even exists or is charged, not only was there no evidence of conspiracy or agreement at all, there was not any averment of the same. *Id*. An "agreement" must include *a criminal venture* which could not have been carried out except as the result of a pre-conceived agreement, scheme or understanding. *Id.* The indictment must be dismissed as a matter of law, with prejudice.

The prosecution claims six grounds for a "conspiracy" but claims no grounds of any agreement for wrongdoing – a necessary and defectively charged element of the indictment. Reviewing the indictment *seriatim*:

a. "defraud by interfering with" (Indict. pg. 4, ¶ 12(a)) – the government presents no evidence of this accusation, nor presents any statute indicating the truthfulness of the averment to the Grand Jury. There is no statute permitting the ATF and the prosecution to claim to a Grand Jury that its "lawful government functions of the ATF **to limit** the purchase, sale, transfer, and importation of machineguns for purchase by or demonstration for military and law enforcement agencies **only**…" as they averred to the Grand Jury. Furthermore, there is no agreement to do so even averred or inferred by the prosecution, because they knew there was none. Without an averment under oath upon probable cause of an actual agreement of any wrongdoing the indictment is defective and must be dismissed.

b. "make false and fictitious statements…[that law letters] were dealer sales samples for law enforcement demonstration" (Indict. pg. 4, ¶ 12(b)) - the government presents no evidence of this accusation, nor presents any statute indicating the truthfulness of the averment to the Grand Jury. There are no facts or law permitting the ATF and the prosecution to claim to a Grand Jury that law enforcement demonstrations were not of interest or provided, because the prosecution knew that they were of interest and were in fact provided, with the membership of the TMGN of over **383 law enforcement** and military. Furthermore, the prosecution falsely presented this statement to the Grand Jury by additionally inferring that Mr. Krop was not permitted to also use demonstrations for "private citizen" or non-law enforcement persons which they knew to be a false statement. Without an averment under oath upon probable cause of an actual agreement of any wrongdoing the indictment is defective and must be dismissed.

35

c. "make and cause to be made false statements…kept in the records of [licensed] individuals…[that] dealer samples [were] for law enforcement demonstration purposes…" (Indict. pg. 5, ¶ 12(c)) - the government presents no evidence of this accusation, nor presents any statute indicating the truthfulness of the averment to the Grand Jury.  There are no facts or law permitting the ATF and the prosecution to claim to a Grand Jury that law enforcement demonstrations were not of interest or provided, because the prosecution knew that they were of interest and were in fact provided, with the membership of the TMGN of over **383 law enforcement** and military.  Furthermore, the prosecution falsely presented this statement to the Grand Jury by additionally inferring that Mr. Krop was not permitted at all to also use demonstrations for "private citizen" or non-law enforcement persons which statement the prosecution knew to be a false statement.  Without an averment under oath upon probable cause of an actual agreement of any wrongdoing the indictment is defective and must be dismissed.

d. "make…and use…false writings and documents, namely law letters…requesting firearms demonstrations of machineguns [sic]" (Indict. pg. 5, ¶ 12(d)) - the government presents no evidence of this accusation, nor presents any statute indicating the truthfulness of the averment to the Grand Jury.  There are no facts or law permitting the ATF and the prosecution to claim to a Grand Jury that law enforcement demonstrations were not of interest or provided, because the prosecution knew that they were of interest and were in fact provided, with the membership of the TMGN of over **383 law enforcement** and military.  Furthermore, the prosecution falsely presented this statement to the Grand Jury by additionally inferring that Mr. Krop was not permitted at all to also use demonstrations for "private citizen" or non-law enforcement persons, which statement the prosecution knew to be a false statement.  Without an averment under oath upon probable cause of an actual agreement of any wrongdoing the indictment is defective and must be dismissed.

The prosecution then falsely presented to the Grand Jury several "e-mails" they told the Grand Jury "evidence" the "manner and means" of a conspiracy, which are not evidence but are purely political words of Isaac Burrall, COO of TMGN, protected by the First Amendment.  Indict. pg. 7, ¶ 14 (a),(b),(c).

After deciding and/or beginning to draft an indictment against the defendants, the prosecution went on a "fishing trip" trying to find information with which to include in a pre-determined decision to falsely indict Mr. Krop and Sheriff Jenkins.  The government admitted to

the same in an undated e-mail[13] from ATF Agent JESSICA WOODIN forwarding the so-called "pertinent e-mails" evidence of "conspiracy" to the prosecution, stating, "in case [sic] anything could be used in draft of the indictment, etc.".  The indictment was being drafted without evidence of any wrongdoing and the government was doing it anyway for political purposes.

When the indictment draft was finished, it was these "pertinent e-mails" which were used before the Grand Jury in the indictment to falsely "prove" an agreement and conspiracy existed. But curiously, the prosecution knew that some of the forwarded e-mails from WOODIN, namely, those six "pertinent" e-mails pertaining to the Sheriff inspecting the safety of the TMGN range, were disregarded by the prosecution as not pertinent to the indictment.  This is because they knew the e-mail complaints against TMGN were known by AGENT WOODIN to be from a former disgruntled employee who made up wild and false claims that had no truth or bearing, and both the Sheriff's department and the City of Frederick inspected the TMGN location and both found the complaints to be false and likely motivated by retaliation for job termination.  *Id.*  Yet, the prosecution did not inform the Grand Jury of the existence of these e-mails, on information and belief, because they knew that the duties were within the command of the Sheriff's office and that the complaints were false.  Instead, the prosecution specifically stated a falsity to the Grand Jury inferring that the Sheriff's "support" for the "City of Frederick…and our business" was a conspiracy for law letters, rather than First Amendment political speech and gratefulness for his duties as Sheriff to represent and serve all the people of Frederick County and City.  The Court must dismiss the indictment because the grounds of its proffering to and issuance by the Grand

---

[13] The undersigned has requested on multiple occasions the full production of information in the prosecution's possession and control and to date they have refused to provide all the requests, including the date and time of the e-mail from Jessica Woodin forwarding the Sheriff's emails for use "in the indictment."  Instead, on information and belief the email was physically altered **– spoliating the evidence** and tainting chain of custody in violation of law – to remove the date and time the email was sent.

Jury was indicting alleged protected First Amendment activity of lawful speech and assembly and potential organizing for political purposes and is impermissible to be charged as a crime.

To allow such a false indictment to stand would be to chill every single citizen's right to support their own elected officials.  There is no evidence of false statements, because there were none.  There is no evidence of any donations to a political campaign – which would be lawfully protected under the First Amendment, because no donations were made.  There is no evidence of any wrongdoing whatsoever; the prosecution rests its entire fake conspiracy indictment on these three e-mails.

Second, at no time was the COO offering anything in exchange for "law letters" nor even inferring such a ludicrous and sloppy charge as the prosecution has falsely informed the Grand Jury.  The Court is requested to note that the prosecution used two e-mails dated May 5th and May 10th, 2022, respectively, to falsely aver to the Grand Jury "TMGN offered political support to JENKINS in recognition of his support for TMGN's business." Indict. pg. 4, ¶ 14.  However, there is no allegation that any such First Amendment activity by Isaac Burrall, COO, was a quid pro quo or even a hint of agreement or conspiracy offered in exchange for the law letters that had allegedly been lawfully provided since about 2012, for ten years of ATF approval and three U.S. presidents.

Third, the place in time has zero connection to any law letter.  In fact, the law letter to the Havre De Grace Police Department (Harford County) in March 2022 were not even acted upon and the transfer of the requested machine guns that Havre De Grace Police had offered for sale had not occurred, so to argue that a TMGN COO e-mail in May 2022 was in support of Sheriff Jenkins because of rentals or "profits from rentals" of machineguns was neither truthful nor even remotely factual.  There had been no obtaining or renting of any of the requested machineguns and no agreement or intent to support the Sheriff whatsoever.

The claim by the government falsely stated to the Grand Jury, that demonstrations under federal law Class III licenses may not include on-location demonstration-renting of the same is flatly ludicrous.  See, Indict.   The prosecution knew that demonstration renting is permitted under federal law, and is the industry practice nationwide for Class III license holders.  Indeed, it is this long-standing private industry license that exists for the purpose of ensuring that law enforcement and military, and other law abiding Americans, have access to training, demonstration, practice and certification on Class III firearms where they can become certified for use of such firearms in service.  The entire Class III licensing opportunity would cease to exist if license holders were forbidden from renting demonstrations as the prosecution falsely told the Grand Jury.  The government has long decided that it is advantageous – and in fact required under the U.S. Constitution – to grant Class III Federal Firearms licenses and the prosecution's attempt to undermine federal law interferes with the rights of Americans thereunder, rather than perform any lawful purpose.

Furthermore, the prosecution falsely told the Grand Jury that Mr. Krop and Sheriff Jenkins "falsely stated" in law letters that the machine guns were "suitable for use as a law enforcement weapon...and…special operations…when in fact…one of the machineguns was not.  Specifically, a FN M249 SAW" which is "belt-fed…was suitable only for combat."  Indict. pg. 7, ¶ 15.  The prosecution knew this to be a misrepresentation to the Grand Jury for at least two reasons:  1) there is no federal law or regulation preventing the Class III possession or transfer of a belt-fed M249 SAW to law enforcement – in law and fact, and contrary precisely to the false representation to the Grand Jury – the M249 SAW, and the referenced P90, are for sale, rent and transfer throughout the United States from FN to law enforcement.  (**Exhibit Five, Demonstration Rentals and POLICE FULL AUTO IN USE (including Federal and State police such as ATF and**

**Sheriffs), attached hereto**).   The undersigned's law office research easily discovered through research that allied-INTERPOL police departments nationally and worldwide also use the M249SAW and P90 fully auto on their police forces and SWAT, including on information and belief the U.S., French, Belgium, Dutch, German, British, South Korean governments and U.S. states including Texas law enforcement.   The prosecution knew this but instead presented a false statement to the Grand Jury claiming that the M249 SAW was "only for combat" and military use, which is not truthful.   The fact that the prosecution appears to dislike that practice is one of a policy dispute that has nothing to do with the false words of their indictment as presented to the Grand Jury.   The SAW is in wide circulation with western law enforcement and special operations. The prosecution's policy viewpoint opposing such use is not law.

Additionally, the prosecution confused the Grand Jury by stating "at least one belt-fed machinegun" was sought, and then stated "SAW" and "SCAR" in its list of machine guns falsely presented to the Grand Jury as transferred in contravention to law.   The prosecution knew or should have known that the SCAR 16(Light) is a law enforcement grade fully automatic machine gun and the SCAR 17 (Heavy) is a sniper-level rifle, both in common use by law enforcement and useful to the saving of lives in hostage and other situations.   Yet, they did not explain this truth and fact to the Grand Jury and thus presented information in a false and misleading light.   To include a reference of "*at least* one" belt-fed machine gun was confusing and misled the Grand Jury, causing them to rely on the misrepresentation and wrongly believe that federal law prevents "belt-fed" machine guns from law enforcement demonstrations and that more than one was requested by Mr. Krop and Sheriff Jenkins.   Indict., pg. 7.

Finally, the prosecution falsely told the Grand Jury that Mr. Krop and Sheriff Jenkins presented a "false law letter to the NFA" for "transfer of machineguns held by the Havre de Grace

Police Department on ATF Form 5...”  Indict. pg. 8, ¶ 18.  This was a known misrepresentation to the Grand Jury because they knew that demonstrations of these same guns would be offered to law enforcement, including all members of the Frederick County Sheriff's Department, military, **383 law enforcement and military TMGN members,** and the law abiding public, as demonstration rentals.  The prosecution knew that TMGN, just like all businesses, does not operate a charity nor is it permitted to provide free services as a general rule of lawful for-profit business practices. TMGN is allowed to compete for machinegun contracts with government entities such as the FCSO just as much as any other FFL.

The false indictment rests upon a false political belief of the prosecution – that Class III license holders may not be permitted to rent machine guns lawfully in their possession, and that they may never make political statements for anyone such as their own Sheriff who from time to time politically disagrees with the Biden Administration, or else they will make up a fake theory of conspiracy for political support.  Such actions are not permitted by the prosecution under our system of constitutional government and the indictment must be dismissed as a matter of law.

For the reasons stated herein the indictment must be DISMISSED and all Counts DISMISSED WITH PREJUDICE.  The Court is requested to rule individually on each motion contained herein after a hearing.

## I.

**MOTION TO DISMISS THE INDICTMENT AND ALL COUNTS, ONE THROUGH SIX, BECAUSE THE INSTITUTING OF THE PROSECUTION WAS DEFECTIVE AND UNCONSTITUTIONAL**

1. Mr. KROP realleges and incorporates all paragraphs and allegations herein.
2. Counts one through six, charging violations of “Title 18 U.S.C. Section 381,” must be dismissed with prejudice as the Court has no jurisdiction over a defective and unconstitutional charge, also with no underlying crime.

3. The indictment alleges its grounds for violation as presented to the Grand Jury the material misrepresentation that Mr. Krop: "defrauded the United States…by interfering with and obstructing the lawful government function of the ATF to limit the purchase, sale, importation and transfer of machineguns [sic] for purchase by or demonstration for military and law enforcement agencies **only**…".  Indictment, pg. 4, ¶ a (emphasis added).

4. First, the ATF and prosecution materially misrepresented its own regulations and policies to the Magistrate Judge and the Grand Jury to obtain a false and defective search and seizure warrant and indictment predicated upon language that was never part of the regulations or laws of the United States, namely, that "law letters" for "machineguns" are "***only***" for "purchase by or demonstration for military and law enforcement."

5. Second, the ATF mission from Congress is not to "limit" but to investigate serious gun crimes and *regulate* their "purchase, sale, importation and transfer."  28 U.S.C. § 599A(b)(1).  It is a false statement to tell a Grand Jury that Defendant Krop interfered with a fake mission to "limit machineguns," when he was in compliance with ATF regulations at all times, as the prosecution did in its indictment.

6. Third, the ATF materially misrepresented in its indictment to the Grand Jury that all "machineguns" were equal, while not differentiating in detail in its indictment the *post-1986* gun procedures, Mr. Krop's Class III FFL license authority to rent machine guns, nor specifying exactly what regulation they aver Defendant KROP violated and how it was allegedly violated.

7. Both the warrant and the Grand Jury indictment were obtained on materially misrepresented grounds, including failure to swear out any specific act that was in contravention to federal law under any federal statute or regulation, and while instead misrepresenting that a non-specified, non-presented and misrepresented regulation was violated, allegedly triggering a federal law violation, neither of which were in fact violated.

8. Under the National Firearms Act and its implementing regulations and the Gun Control Act and its implementing regulations, Mr. Krop is authorized by federal law as a Class III FFL holder to advise law enforcement on and be provided "law letters" from government officials for the purpose of purchase, importation, exportation, sale, lease, transfer, building/manufacturing, rental, demonstration(s) and/or donating.  18 U.S.C. § 922; 27

CFR 479.105(c),(d),(e)("a transfer...under the authority of,...a State...a department, agency or political subdivision thereof").

9. Under this statutory authorization, Mr. Krop is permitted to build, manufacture, import, export and sell such "machinegun" firearms, pursuant to State Department approval, to certain foreign nations for security, training, equipment, and potential distribution to its lawful government entities. *Id.*[14]

10. Under the same statutory authorization, licensed or authorized Americans may also purchase, possess, and use any pre or post-1986 machinegun. *Id.*

11. Class Three FFL dealers who import, build, purchase, transfer or otherwise obtain and possess post-1986 machineguns **may keep samples for use in its business including potential sales or transfers** to law enforcement or military, and rentals, demonstrations, displays, marketing, promotions, touching, handling, holding, taking photos of and with, all for a fee, and for other general business purposes, including training.  "c. Importation and manufacture...importers and manufacturers...may important and manufacture machine guns on or after May 19, 1986, for sale or distribution to any...State...**or for use by dealers qualified under this part as sales samples** as provided in paragraph (d) of this section...[and]...for exportation in compliance with the Arms Export Control Act (22 U.S.C. § 2778)...".  27 CFR § 479.105(c).  It was plain error and malicious of the Agent Vavilin and the prosecution to falsely tell the Court and Grand Jury that federal law prevent "use" of post-1986 sales samples by dealers when the statute expressly says otherwise.

12. As a Class III FFL holder, Mr. Krop is authorized to keep "dealer sales samples" for demonstrations to the law-abiding public at a fee charged by his business.  *Id.* at (c), (d).

13. Contrary to the misstatements of the prosecution to the Grand Jury and judge, the law and regulations allow any law enforcement or government entity expressing interest in seeing a machine gun demonstration to issue such "law letters" and on ATF Form 5 the government expressly requires the "Sheriff" or "chief law enforcement officer" of the FFL's jurisdiction are the only law enforcement generally allowed to sign letters.

---

[14] At this moment, Class Three FFL manufacturers of machine guns in the United States, such as Mr. Krop, are licensed to build and export belt-fed or other machine guns to many nations and states as authorized under the Arms Export Control Act (22 U.S.C. 2778), and by the State Department and the Department of Defense.

14. Contrary to the misstatements of the prosecution to the Grand Jury and judge, no law, regulation or policy of the ATF mandates any particular law enforcement purpose to obtain and see a demonstration of a machine gun, including "belt-fed" machine guns, other than "interest." *Id.*

15. Contrary to the misstatements of the prosecution to the Grand Jury and judge, the reason and purpose of an FFL business is to be open for business for Americans, including law enforcement and military, and to stay open for business they are permitted to charge demonstration fees and are required by the ATF to deal *for-profit* in firearms, and to aver to the Grand Jury otherwise as the prosecution did was vindictive and materially false.

WHEREFORE, Mr. Krop moves for the dismissal of the Indictment Counts one through six as this court is without subject matter jurisdiction and no illegality has occurred.

## II.

## MOTION TO DISMISS THE INDICTMENT AND ALL COUNTS, ONE THROUGH SIX, BECAUSE THE INDICTMENT IS FACIALLY INVALID.

16. Mr. Krop realleges and incorporates all paragraphs and allegations herein.

17. The charges in the indictment under Counts One through Six should also be dismissed because they are facially deficient. *See* F.R. Crim.P. 12(b)(3).

18. Indictments must set forth a "plan, concise and definite written statement of the essential facts constituting the offense charge." Fed.R.Crim.P. 7(c)(1). The instrument must set out the charged elements so as to insure the defendant is not, in contravention of the Fifth Amendment, "convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell v. United States*, 369 U.S. 749, 770 (1962). The indictment must be specific enough to permit the defendant to prepare a defense in compliance with the Sixth Amendment in being "informed of the nature and cause of the accusation" against him. *Cochran v. United States*, 157 U.S. 286, 290 (1895).

19. In the instant matter, the government avers that Mr. Krop and Sheriff Jenkins "conspired to obtain machineguns [sic], by false statements, for the purpose to "rent those machine

guns to private citizens in exchange for money."  Indictment, pg. 6, ¶ 13.  It is this averred "purpose" that is a basis for the allegations of this case.  There is no lawbreaking alleged.  There is no federal statute alleged to have been violated by the obtaining of or demonstration of any machine guns.

**A.  No Averment of Violation of Any Element of Law.**

20.  The prosecution did not cite to any violation of any element of federal law in its indictment.  Indeed, it falsified the indictment such that the Grand Jury was informed that demonstrations of machine guns were "*only*" permitted under federal law by "law enforcement or military."  This is a false statement and as such the indictment is invalid and must be dismissed.

21. The indictment allegations set forth in excerpt as drafted by the prosecution are as follows:

a.  (12)(a) "**The Conspiracy**" "…interfering with and obstructing the lawful government functions of the ATF to limit the purchase, sale, transfer, and importation of machineguns [sic] for purchase by or demonstration for military and law enforcement agencies **only** through the creation of false law letters…".

b.  (13) "**Purpose of the Conspiracy**" "…the purpose of the conspiracy was "to rent those machine guns **to private citizens in exchange for money**."

c.  (14) "**Manner and Means of the Conspiracy**.  "The defendants sought to and did acquire machineguns by falsely representing that the machineguns would be used as **dealer samples for demonstration** for the Frederick County Sheriff's Office.  These false representations were contained in law letters on Frederick County Sheriff's Office's letterhead, which were signed by JENKINS and addressed to KROP.  While these law letters represented that the Frederick County

Sheriff's Office requested a demonstration of the listed machineguns, it was KROP, in fact, who had asked JENKINS to submit the letter so that KROP could acquire the guns and rent them out to customers at TMGN in order to generate revenue for TMGN."

22. The first allegation of "the conspiracy" is a false material misrepresentation because as explained, *supra*, the law does not limit demonstrations to "military and law enforcement agencies only."

23. As stated, *supra*, and in Exhibit One, 383 military and law enforcement personnel are actual *members* of TMGN owned by Mr. KROP, and the purpose of their membership is *the demonstration of machine guns* among other shooting and training lawful purposes.  This is precisely the kind of purpose designed and intended for the law letters to be used.  The law – as stated by the prosecution as well – says a sheriff or local government need only state an *"interest in seeing a demonstration of a particular weapon."*  The FCSO so stated its interest to Mr. Krop and Mr. Krop cannot be faulted for following the law.

**B.  No Averment of Any Conspiracy.**

24. There can be no conspiracy because not a single fact or evidence demonstrates any such intent or actual act in furtherance of the same.

25. The government avers the conspiracy is seen because Mr. Krop allegedly wanted to earn money at his business.  No fraud or illegality is alleged in fact, nor is there any "offense against the United States" stated.  18 U.S.C. § 371.

26. At no point in the indictment does the prosecution inform the Grand Jury of any fact of furtherance of any conspiracy.  Instead, the prosecution provided them with First Amendment emails indicating appreciation for the Sheriff's *law enforcement* service to his

constituents, which service includes an oath to uphold the Constitution, including the Second Amendment.  Not one piece of evidence was presented demonstrating that any First Amendment activity was provided in exchange for law letters, much less any illegal activity or illicit payments.  That is because Mr. Krop did not donate to Sheriff Jenkins' campaign and did not make any payments whatsoever to Sheriff Jenkins.  **Yet the prosecution failed to disclose this fact to the Grand Jury, poisoning the legal process and violating basic norms of Grand Jury presentations of factual, element-based allegations and proof**.

27. The prosecution cannot support its indictment in any point as there is no federal law that has been violated, and there is no federal regulation that has been violated, there is and can be no deceit or conspiracy to defraud the United States, and they admit to the same with their new January 11, 2023 "law letter" regulation trying to muddy the waters and falsify the facts.

WHEREFORE, Mr. KROP moves this honorable Court to dismiss all charges One through Six with prejudice.

### III.

### MOTION TO DISMISS FOR LEGAL INSUFFICIENCY OF EVIDENCE PRESENTED TO THE GRAND JURY, AND ADDITIONALLY, FOR IMMEDIATE DISCLOSURE OF THE GRAND JURY MINUTES.

28. Mr. KROP realleges and incorporates all paragraphs and allegations herein.

29. Mr. KROP requests this honorable Court review the Grand Jury minutes and dismiss Counts One through Six in light of the factual allegations herein.

30. For the government to present statements to the Grand Jury that the "law letters" were "fraudulent" with "intent to defraud the United States" as it so presented, it would have to

provide concrete evidence of both concealment and advancement of an illegal purpose.  It did neither.

31. First, the government claims that the law letters were not requests by Sheriff Jenkins for law enforcement demonstrations but were in fact requested "by Mr. Krop" and thus evidenced illegal intent.  Indictment pg. 6, ¶ 14.  This is a false statement to the Grand Jury.  As known by the government in their document production, the Sheriff's office inquired of TMGN if there was a form for the "law letter" requirement.  The ATF provides such a form template for the law letters so that law enforcement and FFLs could request interest in demonstrations of machine guns pursuant to their lawful right under federal law and the United States Constitution.  There is no element under any principle charged in the indictment indicating any wrongdoing in discussing machine guns of interest for demonstrations, and discussing ATF regulations required in order to comply with federal law.

32. Second, the government falsely informed the Grand Jury that the purpose of the law letters was to provide a business revenue for Mr. Krop, while he was "a constituent of JENKIN'S and TGMN was a small business located within" the Sheriff's jurisdiction.  This a false statement to the Grand Jury.  At no time does the federal law prohibit law letters from being provided by government agencies to "business constituents" of theirs; indeed, there is no other standard procedure than this, since only a Class III business may receive a law letter and at least ATF Form 5, a related form to Form 6, mandates the "Sheriff" or "chief law enforcement official" *within the jurisdiction* sign the form.[15]   Business FFL licensees

---

[15] "(f) **Law Enforcement Notification.** The transferee must provide a copy of the Form 5 to the Chief Law Enforcement Officer (CLEO) who has jurisdiction over the area of the transferee's address shown in item 2a of the Form 5. In addition, if the transferee is other than an individual, a copy of the Form 5320.23, National Firearms Act (NFA) Responsible Person Questionnaire, completed by each Responsible Person must be

provide services to the law enforcement and military bases and personnel within their jurisdiction (in Frederick County at least three major military installations among other top secret DOD facilities, and four police organizations), and private citizens who provide contractor security, and are the source of recruitment for both military and law enforcement, are those whom the government is in desperate need for to maintain recruiting goals in today's world.  But even so this does not evidence any illegal intent of wrongdoing, as no money or benefit was paid or even considered as any interest to Sheriff Jenkins nor to Mr. Krop.  Nor was there any quid pro quo intended, in existence or received.  The intent and purpose of the federal law allowing machine guns in local FFLs was inclusive of access by local government under 18 U.S.C. § 922(o) and to tell the Grand Jury otherwise, as done in the instant case, was a fraud on the court.

33. Third, the government falsely claimed and told the Grand Jury that the purpose of the "conspiracy" was so that Mr. Krop could earn money and TMGN offered political support to Sheriff Jenkins in recognition of his support for TMGN's business.  Both are materially false representations to the Grand Jury.  The government knew or should have known that Mr. Krop was not earning any money from TMGN, nor had he offered any political support to Sheriff Jenkins.  In fact, Mr. Krop's was providing machine guns for law enforcement, military and private citizen demonstrations as a business model approved by the United States, through two licenses to do such business.  Mr. Krop has never once sought to gain money for TMGN in exchange for offering political support to Sheriff Jenkins or anyone.  The prosecution falsely presented this statement to the Grand Jury without any evidence

---

provided to their respective Chief Law Enforcement Officer. **The Chief Law Enforcement Officer is considered to be** the Chief of Police; **the Sheriff**; the Head of the State Police; or a State or local district attorney or prosecutor."  Application for Transfer or Registration of a Firearms, DOJ/BATF Form 5.  https://www.atf.gov/firearms/docs/form/form-5-application-tax-exempt-transfer-and-registration-firearm-atf-form-53205/download (accessed May 24, 2023).

whatsoever of the same.  Although the prosecution included in its poorly drafted indictment excerpts of emails from TMGN to the Sheriff's office thanking him for his law enforcement service and expressing thanks for his support for the Second Amendment, which are the Sheriff's sworn duties, that is no evidence of any quid pro quo, nor is it evidence of any wrongdoing.   As argued *supra*, under the prosecution's vindictive reasoning and outrageous misrepresentations, an American citizen serving in government[16] who donates to a political party or campaign would similarly be subject to federal indictment for alleged quid pro quo "support" if they end up appointed by or working for that government official they helped elect.  Such is and would be ludicrous as nearly all appointees have at one time supported a party or candidate as is their right, and the prosecution here is entirely abusive of process and misrepresented federal law to the Grand Jury.  But with Mr. Krop, that did not even remotely occur.  Here**, Mr. KROP did not even contribute a dime to Sheriff Jenkins for his re-election effort as he was lawfully entitled to do**.  Instead, he is being vindictively prosecuted for TMGN allegedly saying a few words of thanks to its constitutional representative for serving the law enforcement needs of the community.

34. Additionally, Mr. Krop moves the Court to release the Grand Jury minutes for review.

WHEREFORE, Mr. KROP moves this honorable Court to dismiss with prejudice the indictment, counts one through six.

## IV.

## MOTION TO DISMISS BECAUSE THE INDICTMENT IS MULTIPLICITOUS, AND MOTION FOR DISCLOSURE OF THE GRAND JURY MINUTES.

35. Mr. KROP realleges and incorporates all paragraphs and allegations herein.

---

[16] See, Political donations of public officials.  https://www.opensecrets.org/(accessed May 23, 2023).

36. Counts One through Six must be dismissed as multiplicitous as they state that each allegation from Count One is "incorporated by reference herein as if fully set forth in this Count in the Indictment" and each falsely allege the same conduct (Conspiracy to Interfere with Government Functions and to Violate Federal Law Regulating Machineguns" [sic]), charged in several variant forms under the same or similar non-applicable federal statute:

   a. Conspiracy (18 U.S.C. 371)-COUNT ONE; False Statement During Purchase of A Firearm (18 U.S.C. 922(a)(6))-COUNT TWO; False Statements in Records Maintained by Federal Firearms Licensee-COUNT THREE; False Statement to a Government Agency (ATF) (18 U.S.C. 924(a)(1)(A) – COUNTS FOUR AND FIVE; Unlawful Possession of a Machinegun [sic] (18 U.S.C. 922(o)-COUNT SIX; Aiding & Abetting (18 U.S.C. 2).

37. First, the indictment falsely stated to the Grand Jury that it was an indictment inclusive of "Aiding & Abetting (18 U.S.C. 2)" but there was no such accusation in the indictment. The indictment therefore must be dismissed.

38. Second, multiplicitous counts exaggerate and present a false light surrounding the conduct that the Grand Jury is to examine, and instead of presenting evidence untainted, it causes spoilation to occur both directly in false statements not in evidence, and indirectly by inference, confusing the Grand Jury as to the facts and evidence presented.

39. This violates the double jeopardy clause of the Fifth Amendment of the United States Constitution because the question is whether Congress intended under Title 18 to create many different subsections as "units of prosecution" and multiple punishments for the same or similar averred conduct. *Bell* v. *United States*, 349 U.S. 81, 83 (1955). The Rule of Lenity forbids multiple offenses when the intent is unclear within the Congressional statutory scheme.

40. Additionally, Mr. Krop moves to release the Grand Jury minutes.

WHEREFORE, Mr. KROP moves this honorable Court for the dismissal with prejudice of the indictment, counts one through six, because they are multiplicitous and unconstitutional.

## V.

### MOTION TO DISMISS BECAUSE THE INDICTMENT IS DUPLICITOUS, AND MOTION FOR DISCLOSURE OF THE GRAND JURY MINUTES.

41. Mr. KROP realleges and incorporates all paragraphs and allegations herein.

42. Counts one through six of the Indictment must be dismissed as duplicitous.

43. An indictment is duplicitous and impermissible if it "joins two or more distinct crimes in a single count" and is "prejudicial" to the defendant. *United States v. Arcari*, 968 F.2d 1512, 1518 (2d Cir. 1992).

44. As noted hereinabove, Count One joins five separate offenses. Additionally, "aiding and abetting" is informed to the Grand Jury as charged but was not actually charged, misrepresenting wrongdoing to the Grand Jury in its analysis of "conspiracy" which caused it to likely weigh in favor of the misrepresentation.

45. All this caused great prejudice to Mr. KROP arising in the Grand Jury proceedings. Fed.R.Crim.P. 6(a)(1) states in part: "A grand jury must have 16 to 23 members". Rule 6(f) mandates: "A grand jury may indict only if at least 12 jurors concur." For the Grand Jury to find probable cause that any given offense was committed, at least 12 jurors must have voted for each separate offense. However, where a count alleges multiple offenses, the Rule is obscured and the mandate of 12 jurors becomes unknown. Disclosure of the minutes is therefore necessary.

46. Furthermore, in the event of a future conviction, the counts in the indictment would not be a proper basis for sentencing as the jurors may not have been unanimous as to any one of the charges.

47. As Counts One through Six are duplicitous and prejudicial they must be dismissed.

WHEREFORE, Mr. KROP moves for the dismissal of the Indictment on the grounds that it is duplicitous, and for disclosure of the Grand Jury minutes.

## VI.

### MOTION FOR A BILL OF PARTICULARS
### (RULE 7(f) FRCRP)

48. Mr. KROP realleges and incorporates all paragraphs and allegations herein.

49. Mr. Krop hereby moves for an order pursuant to F.R.Crim.P. 7(f) requiring the government to particularize the Indictment as requested below:

   a. **Count One of the Indictment**:

      i. Specify each and every document that the government will rely upon to prove the commission of this/these offense(s);

     ii. Specify each and every financial and monetary transaction alleged, including exact dollar amounts;

    iii. Specify the manner it will be shown that Mr. Krop "did knowingly and willfully combine, conspire, confederate and agree" (*see*, Indict. pg. 4, ¶ 12), to commit the charged offenses;

    iv. Specify the "others, known and unknown to the Grand Jury" (*see*, Indict. pg. 8, ¶ 19) that are alleged to have conspired with Mr. Krop to commit the alleged offenses;

     v. Specify the exact location of the charged offense and specify what is meant by the phrase "in the District of Maryland and elsewhere," (*see,* Indict. pg. 8, ¶ 19);

    vi. Specify the exact dates of the commission of the alleged offense(s), as opposed to "in or before August 2015 and continuing through May 2022" (*see,* Indict. pg. 4, ¶ 12);

   vii. Specify the exact federal statute, and the specific language therein, which prevents Class III FFL holders from "asking [law enforcement] to submit law letters" (Indict. pg. 6, ¶ 14);

  viii. Specify the exact federal statute, and the specific language therein, which prevents Class III FFL holders from being "as a constituent of [elected law enforcement]…a small business located within the jurisdiction of the

Frederick County Sheriff's Office" that is prevented from offering or providing "political [First Amendment] support" (Indict. pg. 6, ¶ 14);

ix. Specify the exact federal statute, and the specific language therein, which prevents Class III FFL holders from "recogn[izing]" an elected official's "support" for the small business TMGN and explain how that is different from ribbon cuttings, advocacy and support by elected officials at other small businesses who may actually receive state and federal funding, where TMGN receives no such funding (Indict. pg. 6, ¶ 14);

x. Specify the exact federal statute, and the specific language therein, which prevents Class III FFL holders from "rent[ing]" post-1986 "machineguns" for "profit[]" (Indict. pg. 6, ¶ 14);

xi. Specify whether the ATF, FBI or any federal law enforcement, U.S. or National Guard military or DOD has any "customers at TMGN" who demonstrate and "rent…machineguns" at TMGN (Indict. pg. 6, ¶ 14), and the exact federal statute, and the specific language therein, which prevents Mr. Krop and/or a Class III FFL holder from renting "machineguns" to them (Indict. pg. 6, ¶ 14);

xii. Specify the exact federal statute, and the specific language therein, which prevents Mr. Krop or TMGN from renting "machineguns" to "private citizens in exchange for money" (Indict. pg. 6, ¶ 13);

xiii. Specify the exact federal statute, and the specific language therein, which defines "demonstration" to not include "rentals of machineguns" as alleged to the Grand Jury (Indict. pg. 6, ¶ 14);

xiv. Specify the exact location and date that "Krop…asked Jenkins to submit the letters so that Krop could acquire guns and rent them out to customers at TMGN in order to generate revenue for TMGN" (Indict. pg. 6, ¶ 14);

xv. Specify the exact federal statute, and the specific language therein, which forbids a Class III FFL from "acquir[ing] machineguns to rent those machine guns [sic] to private citizens for money" and specify each and every definition or other statement in said statute that states a demonstration is limited to "law enforcement or military (Indict. pg. 5 ¶ 12; pg. 6, ¶ 13);

xvi. Specify the exact federal statute, and the specific language therein, which states that "dealer sales samples [are] for law enforcement demonstration purposes" "only" (Indict. pgs. 4,5 ¶ 12);

xvii. Specify the exact federal statute, and the specific language therein, and the locations, dates and times that Mr. Krop purportedly "made false statements and representations…kept in the records of individuals licensed…" and so state each such "individual" and the license number of the same (Indict. pg. 5 ¶ 12(c));

xviii. Specify the exact statements and location in the "law letters" where Sheriff Jenkins and/or Mr. Krop "knowingly and willfully" made 'false writings and documents, namely law letters…requesting demonstrations of machineguns…" (Indict. pg. 5 ¶ 12) and specify the exact and detailed location in any law, statute or regulation that defines a "demonstration" and the required dates within which to perform such a demonstration, and where the ATF provides notice of the same prior to the ATF's new policy dated

January 11, 2023 issued during or about the time the instant indictment was being drafted by your office and the ATF;

xix. Specify the exact United States statute or regulation stating that a "FN M249 SAW…was suitable only for combat (Indict. pg. 7 ¶ 15), and specify the exact federal statute or regulation that defines "combat" and any such statute or regulation that prohibits a "FN M249 SAW" from being requested by a law letter for a Class III FFL holder;

xx. Specify the exact date(s), time(s) and location(s), and the exact content of what was said or done to constitute an "overt act," and specify clearly where in federal law, statute or regulation a law enforcement organization is prohibited from requesting demonstrations of "the P-90 Tactical and M-249 SAW" and where in the federal law, statute or regulation law enforcement is prohibited from using the same as a "law enforcement weapon" or where federal law, statute or regulation states the said "P-90 Tactical and M-249 SAW" is not permitted thereunder for "official duties" including "patrol" and "special operations" (Indict. pg. 10 ¶ 19);

xxi. Specify the exact date(s), time(s) and location(s), and the exact content of what was said or done to constitute an "overt act," and specify clearly where in federal law, statute or regulation a law enforcement organization is prohibited from "sign[ing] a law letter on…letterhead, addressed to [a Class III FFL] and specify exactly who in federal law, statute or regulation is 1) required to sign a law letter; and 2) to whom the law letter is to be addressed (Indict. pg. 8, ¶ 19(a));

xxii. Specify the exact date(s), time(s) and location(s), and the exact content of what was said or done to constitute an "overt act," and specify clearly where in federal law, statute or regulation a law enforcement organization is prohibited from demonstrating "possible" future purchases and where federal law, statute or regulation requires a "possible" interest to be a final decision to purchase (Indict. pg. 8, ¶ 19(a));

xxiii. Specify the exact date(s), time(s) and location(s), and the exact content of what was said or done to constitute an "overt act," and specify clearly where in federal law, statute or regulation a law enforcement organization is prohibited from "demonstrating" a post-1986 machine gun it has requested to review "for evaluation and familiarization" (Indict. pg. 9, ¶19(c));

xxiv. Specify the exact date(s), time(s) and location(s), and the exact content of what was said or done to constitute an "overt act," and specify clearly where in federal law, statute or regulation a law enforcement organization is prohibited from "demonstrating" a post-1986 machine gun it has requested to review "for evaluation and familiarization" or is required to demonstrate it themselves as opposed to viewing demonstrations or where it is required to be demonstrated solely by the chief law enforcement official for the organization (Indict. pgs. 8-9);

xxv. Specify the exact date(s), time(s) and location(s), and the exact content of what was said or done to constitute an "overt act," and specify clearly where in federal law, statute or regulation a law enforcement organization is prohibited from "demonstrating" a post-1986 machine gun it has requested

to review "for evaluation and familiarization" unless done solely by the individual "signing" the law enforcement organization's law letter request (Indict. pgs. 8-9);

xxvi.   Specify the exact date(s), time(s) and location(s), and the exact content of what was said or done to constitute an "overt act," and what you presented to the Grand Jury averring that Mr. Krop did not intend to demonstrate the post-1986 machine guns (Indict. pgs. 8-10);

xxvii.  Specify the exact date(s), time(s) and location(s), and the exact content of what was said or done to constitute an "overt act," and specify clearly where in federal law, statute or regulation a law enforcement organization is prohibited from "demonstrating" a post-1986 machine gun it has requested to review "for evaluation and familiarization" including the following firearms alleged to be seized and/or prevented from transfer by the ATF in the instant matter:

1. FN M249 SAW (Belguim) – Serial No. C14326;
2. SCAR 16 – Serial No. L013194;
3. Remington ACR – Serial No. RW0019A;
4. SCAR 16 – Serial No. L011975;
5. KRISS SMG – Serial No. 455000868;
6. FN P90 – Serial No. FN079510;
7. SCAR 17 – Serial No. H012432;
8. BNT AF – Serial No. U521-25986.
9. SigSauer Street Sweeper Shotgun 12 g – Serial No. 8433;
10. SigSauer 556 SBR Machine Gun – Serial No. KB 003415;
11. SigSauer 556 SBR Machine Gun – Serial No. KB 003416;
12. SigSauer 556 SBR Machine Gun – Serial No. KB 003417;
13. SigSauer 556 SBR Machine Gun – Serial No. KB 003419;
14. SigSauer 556 SBR Machine Gun – Serial No. KB 003420;
15. SigSauer 556 SBR Machine Gun – Serial No. KB 003421.

xxviii. Specify the exact date(s), time(s) and location(s), and the exact content of what was said or done to constitute an "overt act," including but not limited to when Mr. Krop purportedly "received over $100,000 in profits from the rental of [post-1986] machineguns in the years 2018 and 2019 alone…" (Indict. pg. 6, ¶ 14);

xxix.   Specify the exact date(s), time(s) and location(s), and the exact content of what was said or done to constitute an "overt act," and specify clearly where in federal law, statute or regulation a law enforcement organization is prohibited from "demonstrating" a post-1986 machine gun it has requested to review "for evaluation and familiarization" while in the same law letter is permitted under the same laws for demonstrating a "Street Sweeper Shotgun 12 gauge" (Indict. pg. 11, ¶ 19(e));

xxx.    List each and every alleged overt act, specifying individual or joint, of Mr. Krop and Sheriff Jenkins, done in furtherance of the alleged conspiracy, as opposed to "overt acts, among others" (Indict. pg. 8, ¶ 19);

xxxi.  Identify any person acting for the government that was present during the commission of the alleged overt acts, charged or uncharged, setting forth their names, addresses and telephone numbers;

b.  **Count Two of the Indictment:**

i.  Specify each and every document that the government will rely upon to prove the commission of this/these offense(s);

ii.  Specify each and every financial and monetary transaction alleged, including exact dollar amounts;

iii.  Specify the exact location of the charged offense and specify what is meant by the phrase "in the District of Maryland and elsewhere," (*see,* Indict. pg. 12, ¶ 21);

iv.  Specify the grounds and facts upon which Count Two realleges Count One and does not merge with Count One (Indict. pg. 12, ¶ 20);

v.  Specify exactly the conduct by Mr. Krop averred to be in violation of federal law or regulation, and specify the exact federal law, statute or regulation, and the specific language therein, that Mr. Krop is averred to have violated, regarding "false statements…in connection with the acquisition of a firearm, a 'P-90 Tactical machinegun [sic]" including exactly what is alleged to be a "false statement" and exactly what is meant by the averment "in connection with the acquisition" (Indict. pg. 12, ¶ 21);

vi.  Specify exactly the "false representations" alleged that Mr. Krop  "made" in a "written statement" which you informed the Grand Jury were "false and fictitious" and how it is you believe they were false (Indict. pg. 12, ¶ 21);

vii.  Specify exactly how it is you believe the request for "dealer sales samples" were not "dealer sales samples," (Indict. pg. 12, ¶ 21) including:

1.  How and upon what grounds of federal law or regulation, and specify the exact federal law, statute or regulation, and the specific language therein, you believe Mr. Krop is not a licensed machinegun "dealer";

2.  How and upon what grounds of federal law or regulation, and specify the exact federal law, statute or regulation, and the specific language therein, you believe Mr. Krop is not licensed to possess "sales samples" as a Class III dealer of machineguns; and,

3.  How and upon what grounds of federal law or regulation, and specify the exact federal law, statute or regulation, and the specific language therein, you believe that Sheriff Jenkins is not the chief "law enforcement" officer permitted to request demonstrations of machineguns under federal law, statute or regulation for himself, for law enforcement in general, or for any member of his department, or any other law enforcement agency within his jurisdiction or oversight.

4.  How and upon what grounds of federal law or regulation, and specify the exact federal law, statute or regulation, and the specific language therein, you believe that "samples" may only be used for law enforcement demonstrations.

      viii.   Specify exactly which conduct Mr. Krop performed as a "principal actor" and which he performed as an accomplice under 18 U.S.C. § 2 (*see,* Indict. pg. 12);

      ix.   Specify the exact manner it will be shown by you the government that Mr. Krop acted "knowingly" in the alleged commission of the alleged offense and specify exactly the alleged offense by citing the precise federal law (Indict. pg. 12, ¶ 21);

      x.   Identify any person acting for the government that was present during the commission of the alleged acts, setting forth their names, addresses and telephone numbers;

c.  **Count Three of the Indictment:**

      i.   Specify each and every document that the government will rely upon to prove the commission of this/these offense(s);

      ii.   Specify each and every financial and monetary transaction alleged, including exact dollar amounts;

      iii.   Specify the exact location of the charged offense and specify what is meant by the phrase "in the District of Maryland and elsewhere," (*see,* Indict. pg. 13, ¶ 23);

      iv.   Specify the grounds and facts upon which Count Three realleges Count One and does not merge with Count One (Indict. pg. 13, ¶ 22);

      v.   Specify exactly how the government believes and intends to prove that Mr. Krop, or Sheriff Jenkins or the "Frederick County Sheriff's Office" did "not request[] a demonstration" of machineguns in the law letters requesting demonstrations of machineguns (Indict. pg. 14, 25, CTs 4-5);

      vi.   Specify exactly how TMGN "requesting firearm demonstrations of a P-90 Tactical machinegun" and then providing demonstrations of the same at TMGN was a "false statement or representation" and specify exactly how Mr. Krop is accused of making a "false statement or representation" of demonstrating a "P-90" firearm (Indict. pg.13, 23);

      vii.   Specify exactly which conduct Mr. Krop performed as a "principal actor" and which he performed as an accomplice under 18 U.S.C. § 2 (*see,* Indict. pg. 12);

      viii.   Specify the exact manner it will be shown by you the government that Mr. Krop acted "knowingly and willfully" in the alleged commission of the alleged offense and specify exactly the alleged offense by citing the precise federal law (Indict. pg. 13, ¶ 23);

      ix.   Identify any person acting for the government that was present during the commission of the alleged acts, setting forth their names, addresses and telephone numbers;

d.  **Counts Four and Five of the Indictment:**

      i.   Specify each and every document that the government will rely upon to prove the commission of this/these offense(s);

      ii.   Specify each and every financial and monetary transaction alleged, including exact dollar amounts;

    iii. Specify the exact location of the charged offense and specify what is meant by the phrase "in the District of Maryland and elsewhere," (*see,* Indict. pg. 14, ¶ 24);

    iv. Specify the grounds and facts upon which Counts Four and Five reallege Count One and does not merge with Count One (Indict. pg. 14, ¶ 24);

    v. Specify exactly how an "FN M249 SAW" was not "particularly suitable" for law enforcement use because it "was a belt-fed machinegun suitable only for use in combat" and specify exactly where in the federal laws charged under Counts Four and Five, namely 18 U.S.C. 1001 and 2, or elsewhere in federal law, statute or regulation, it states that an "FN M249 SAW" is "not suitable" for law enforcement purposes (Indict. pg. 14, 25);

    vi. Specify exactly how and when it is alleged Mr. Krop "requested the letter so that he could [only]…import the machine guns and rent them to customers at TMGN" and specify what customers exactly were forbidden from demonstrating the machineguns, including exact names, employment or any other identifying information and where in federal law, statute or regulation those customers are forbidden from renting or demonstrating machineguns (Indict. pg. 14, 25);

    vii. Specify exactly how the government believes and intends to prove that Sheriff Jenkins or the "Frederick County Sheriff's Office" did "not request[] a demonstration" of machineguns in the law letters requesting demonstrations of machineguns (Indict. pg. 14, 25, CTs 4-5);

    viii. Specify exactly which conduct Mr. Krop performed as a "principal actor" and which he performed as an accomplice under 18 U.S.C. § 2 (*see,* Indict. pg. 14);

    ix. Specify the exact manner it will be shown by you the government that Mr. Krop acted "knowingly and willfully" in the alleged commission of the offense (Indict. pg. 14, ¶ 25);

    x. Identify any person acting for the government that was present during the commission of the alleged acts, setting forth their names, addresses and telephone numbers;

**e. Count Six of the Indictment:**

    i. Specify each and every document that the government will rely upon to prove the commission of this/these offense(s);

    ii. Specify each and every financial and monetary transaction alleged, including exact dollar amounts;

    iii. Specify the exact location of the charged offense and specify what is meant by the phrase "in the District of Maryland," (*see,* Indict. pg. 15, ¶ 27);

    iv. Specify the grounds and facts upon which Count Six realleges Count One and does not merge with Count One (Indict. pg. 15, ¶ 26);

    v. Specify whether Mr. Krop was ever notified by the ATF or any other federal agency prior to May 25, 2022 that he was not permitted to possess the identified machineguns in the indictment (Indict. pg. 15, ¶ 27);

    vi. Specify each and every audit of Mr. Krop and the ATF of TMGN LLC and RK86, LLC from the granting of the Class III FFL through the present, and any other time that identified to Mr. Krop any of the statements of issue in

the incorporated paragraphs "one through eleven and thirteen through eighteen of Count One" (Indict. pg. 15, ¶ 27);

vii. Specify exactly whether the machineguns specified in the indictment are permitted under federal law to be possessed by Class III FFL holders and where exactly they are prohibited from Class III FFL possession (Indict. pg. 15, ¶ 27);

viii. Specify exactly whether the machineguns specified in the indictment were possessed by anyone other than AGENT ANDRIY VAVILIN on May 25, 2022, and who each of those persons were, and specify whether you intend to claim any person other than Mr. Krop was in unlawful possession of the specified machineguns (Indict. pg. 15, ¶ 27);

ix. Specify exactly whether AGENT ANDRIY VAVILIN is a citizen or dual citizen or former citizen of UKRAINE, when and on what date he renounced his Ukrainian citizenship, and whether federal law, statute or regulation permitted his sole possession of the machineguns listed in the indictment from being in his sole possession and custody on May 25, 2022 (Indict. pg. 15, header and ¶ 27);

x. Specify and identify exactly the federal law, statute, regulation or policy, and each specific statement therein, that you alleged prevented Mr. Krop from "knowingly and unlawfully" possessing the identified firearms in the indictment on May 25, 2022 (Indict. pg. 15, header and ¶ 27);

xi. Specify and identify exactly the federal law, statute, regulation or policy, and each specific statement therein, that you alleged prevented TMGN LLC and/or RK86, LLC from "knowingly and unlawfully" possessing the identified firearms in the indictment on May 25, 2022 (Indict. pg. 15, header and ¶ 27);

xii. Specify exactly which conduct Mr. Krop performed as a "principal actor" and which he performed as an accomplice under 18 U.S.C. § 2 (*see,* Indict. pg. 12);

xiii. Specify the exact manner it will be shown by you the government that Mr. Krop acted "knowingly" in the alleged commission of the offense (Indict. pg. 12, ¶ 21);

xiv. Identify any person acting for the government that was present during the commission of the alleged acts, setting forth their names, addresses and telephone numbers;

**VII.**

**MOTION FOR DISCOVERY PURSUANT TO RULE 16; NOTICE OF INTENT PURSUANT TO RULE 12(B)(4)**

50. Pursuant to Rule 16, Mr. Krop requests that the government provide discovery, to the extent that they have not already done so. Though the government has provided the defense access to various documents and items in its possession, it has not provided all requested information, and this motion is brought to preserve the defendant's discovery rights and

seek to compel the government to provide missing information already requested as well as information that they have which they have not provided the defense.  Rule 12(b)(4) also establishes procedures for notification of the government's intent to use certain evidence at trial.  The purpose of this is to afford an opportunity for submission of pre-trial motions seeking the suppression of such evidence.  Rule 12(b)(4)(B).  To the extent the government has complied with Rule 12(b)(4), it should so note on its disclosure notice.  Therefore, request is hereby made for an immediate notice setting forth the evidence which the defendant may be entitled to under Rule 16 that the government intends to utilize at trial.  This evidence includes, but is not limited to:

### Statements of Mr. Krop

51. Mr. Krop is aware of only one time that he may have had oral statements recorded by the ATF or its agents, that being on May 25, 2022 when agents came to his real estate employment headquarters and demanded an impromptu meeting, for which he had no prior notice of, no statement at the outset from the agents that his business TMGN was simultaneously being raided without prior notice, no disclosure of his rights or statement that he was a target, nor opportunity to obtain legal counsel concerning the questioning, all while lying to Mr. Krop and telling him he was not under arrest but using a show of force to intimidate and surround him to force him to speak without reading him his rights.

52. However, the government must disclose the substance of any relevant statements made by the defendant or any of his business "agents or employees" in response to interrogation by a government agent if intended to be used at trial, and any transcripts, reports and summaries.  This includes but is not limited to any interviews of his employees and co-defendant.  Mr. Krop further hereby requests notification of any other recorded or written

statements made by him, or copies thereof, within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known.  Recorded statements, whether written, typed or electronically created, include, but are not limited to, all recordings and testimony relative to any Count of the Indictment, including said Counts regarding purported statements to the ATF or government agencies or FFL license holders.

### Defendant's Prior Record, If Any

53. Mr. Krop hereby requests a copy of his prior criminal record, if any, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the government.

### Documents and Tangible Objects Disclosed

54. Mr. Krop requests a copy of: any documents and tangible items within the government's possession, custody or control, the existence of which is known, or by the exercise of due diligence may become known, to the government.  This includes but is not limited to (a) that which the prosecutor intends to use as evidence; (b) that which was obtained from the defendant(s) or which belongs to the defendant(s); (c) that which is material to the preparation of the defense; (d) and any and all tape, media, digital or other recordings of conversations which pertain to the any fact alleged in the indictment or which the prosecutors intend to introduce at trial or use for any information in this case.  Regarding the discovery materials previously provided, the government is requested to specify the date and title of each item and whether the specific requests in response from defense were completed responded to in production and if so, to so identify each response.

### Intercepted Communications

55. Mr. Krop requests notification regarding any and all Title III surveillance, or any electronic surveillance conducted pursuant to federal, state, or local warrant, including any intercepted communications (audio and/or video intercepts and Internet, e-mail, social media, texts, or any other communications) or evidentiary leads derived therefrom, and a statement as to whether they were acquired in the presence or absence of court authorization.  If acquired by warrantless means, the government is requested to disclose the following:

   a. Specifications of the name, address and contact information for any participant in each such communication who ostensibly consented to interception of the same; (b) reproduction of any technical or physical surveillance logs respective of each communication so intercepted; (c) reproduction of any transcripts purporting to memorialize the content of each communication so intercepted; and (d) any instructions by the supervising agency to each participant who purportedly consented to the interception.
   b. Any and all material, regardless of source, is requested to be provided in its original format (meta data included, if any) which a written declaration and identity of the person who gathered said information, and the chain of custody log for each material so produced.

56. As to each intercepted communication, counsel seeks an opportunity to examine and inspect the electronic equipment used to intercept and record each communication constituting the subject of electronic surveillance.  The undersigned counsel requested full and complete data from a mostly blank file named "bug" but to date the prosecution has stated all she has is the mostly blank file, which is an approximately 40 minute eavesdropping recording without any identifying or other information, most it being blank and the intermittent few minutes as having no transcription and unintelligible statements by unidentified persons.  As this and any other material was acquired by eavesdropping order(s), the disclosure and duplication is requested as to the following:

   a. Each eavesdrop order and each amendment and extension order; (b) the application and all other supporting documents which preceded each such eavesdrop,

amendment and/or extension order; (c) all progress reports which relate to any eavesdrop, amendment and/or extension order; (d) any technical and/or physical surveillance logs; (e) all minimization instructions to the executing agency(s); (f) all sealing order(s) which relate to any of the aforementioned orders.

b. Furthermore, any other information relating to the eavesdropping materials, including but not limited to, all eavesdropping materials pertaining to any other defendant, target, associate, employee or any person related to the instant matter.

## Search and Seizure

57. To the extent not yet provided, Mr. Krop seeks notification whether evidence to be offered consists of, or was derived from, the "fruits" of any search and/or seizure authorized by a judicial and/or administrative warrant.  Request is further made for:

a. A copy of each voice recording, stenographic transcript and/or longhand record with respect to any oral search warrant application; a copy of any search warrant inventory return; the exact time and date when the United States Government entered into the investigation of the defendant or any co-defendant relative to the instant matter, and whether the government, including any police officials or United States prosecutors, had any involvement in the instant case.

58. In the event that evidence was acquired as referred to above, request is made for any item memorializing, consisting of or deriving from the "fruit" of any search and seizure.

## Identification

59. Mr. Krop requests notification of whether any evidence to be offered relates to or is derived from an identification of his person, voice, handwriting, picture and/or a composite sketch purporting to embody his facial features.  If so, a statement is requested setting forth the date, time and place where the identification occurred; and the substance of the proceeding, including the names of all present.  If such evidence relates to non-corporeal identification proceedings, request is made for access to any pictures, sketches, voice exemplars or handwriting specimens utilized during said proceeding(s).

## Reports of Examinations and Tests

60. Mr. Krop requests disclosure of all results of any physical, mental, or scientific examinations, tests or experiments within the prosecution's possession, custody, and/or control, the existence of which is known, or by the exercise of due diligence may become known, to the government, whether they are either intended to be used as evidence or are believed material to the defense.

### *Jencks* Material

61. Mr. Krop requests disclosure of all *Jencks* material (18 U.S.C. § 3500) at least 30 days in advance of trial so as to permit its meaningful use by the defense.  *See*, *U.S. v. Hinton*, 719 F.2d 711, 715 (4th Cir. 1983)(citing *Goldberg v. United States*, 425 U.S. 94 at 122, 96 S.Ct. at 1353(1976))(a 'statement' of a witness, as recorded by the Government Agent qualifies as a statement within the intendment of the Act and must be preserved under the possible statutory penalty sanction...").  This should have already been done and the government has failed in its requirement to do so.

WHEREFORE, it is respectfully moved and requested that the defense motion for discovery and inspection pursuant to Rule 16 and notice of intention be granted.

### VIII.

### MOTION FOR THE PRE-TRIAL DISCLOSURE OF ALL *BRADY* MATERIAL

62. Pursuant to the prosecution's obligations under this Court's order and *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Agurs*, 427 U.S. 97 (1976), *United States v. Bagley*, 473 U.S. 667 (1985), *Kyles v. Whitley*, 514 U.S. 419 (1995), *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *United States  v.  Higgs*, 663 F.3d 726 (4th Cir. 2011), Mr. Krop moves for the immediate disclosure of any and all exculpatory material and any and all material impeaching any witness or defendant, in the

prosecution's possession, knowledge, custody, control or is otherwise known to the prosecution, including, but not limited to:

a. Any information and/or material which tends to exonerate Mr. Krop or which tends to show that he did not knowingly commit the indicted offenses;

b. Any and all evidence which tends to impeach the credibility of any prospective government witness (including co-defendant), including but not limited to:

   i. Any records or information revealing prior criminal convictions or juvenile adjudications, including but not limited to, relevant "rap sheets" of each witness the prosecutor intends to call at trial;

   ii. Any records and information revealing prior or subsequent misconduct, unethical conduct, criminal acts, bad acts of any witness, including co-defendants, the prosecutor intends to call at trial;

   iii. Any allegations of prior or subsequent misconduct, unethical conduct, criminal acts, bad acts of any witness, including co-defendants, the prosecutor intends to call at trial of which the prosecutor knows or through the exercise of reasonable diligence should know;

   iv. Any and all consideration or promises of consideration given during the investigation and preparation of this case by law enforcement, including prosecutors and agents, police or informers, to or on behalf of any witness, including co-defendants, or on behalf of a relative of any such witness or co-defendant, the government intends to call at trial, or any such consideration or promises expected by any such witness, or relative of any witness, at any time.  Such "consideration" refers to anything which arguably could be of value, benefit or use to a witness, or a relative of a witness, and anything which could reveal an interest, motive or bias in favor of the prosecution or against defendant or which could induce one to testify or to color one's testimony;

   v. Any and statements, formal and informal, oral or written, by the prosecution, its agents and representatives to any person (including counsel for such persons) whom the prosecution intends to call as a witness at trial pertaining in any way to the possible or likely course or outcome of any government action – state or federal, civil or criminal – or licensing, matters against the witness, including co-defendants, or anyone related by blood or marriage, or a domestic partner or civil union, to the witness;

   vi. Any threats, express or implied, direct or indirect, or other coercion directed against any witness, or against a relative of such witness, whom the prosecutor intends to call at trial; criminal prosecutions, investigations, or potential prosecutions pending or which could be brought against such witness, or relative of such witness; any probationary, parole, deferred prosecution or custodial status of any such witness, or relative of such

witness or co-defendant, and the state or federal government, any agency thereof or any regulatory body or over which the state or federal government, agency, body or association has real, apparent or perceived influence;

vii. A list of any requests, demands or complaints made by any witness, including co-defendants, which could be developed on cross-examination to demonstrate a hope or expectation by the witness or co-defendant for favorable action in his or a relative's behalf;

viii. With respect to each witness or co-defendant the government intends to call at trial, or any member of the immediate family of any such witness, copies of all indictments, complaints or information(s) brought by the federal, or any state or local government, all administrative, disciplinary, regulatory, licensing, tax, customs, or immigration proceedings brought by the federal, or any state or local government, or by any regulatory body or association, and, state what counts or actions have been the subject of guilty pleas, convictions, consent decrees, dismissals, or understandings to dismiss at a future date; the date or dates on which pleas of guilty took place.  If the government does not have said documents, state the information known;

ix. With respect to each witness or co-defendant the government intends to call at trial, or any member of the immediate family of any such witness, a written summary of all charges or proceedings which could be brought by the federal, or any state or local government, but which have not or will not or which the witness believes have or will not be brought because the witness is or has cooperated with the government, including copies of all memoranda regarding government witnesses, including letters to the attorney for a witness;

x. Any material not otherwise listed which evidences a motivation of any witness or co-defendant either to cooperate with the government or any bias against defendant; the identification of each occasion where a witness has testified before any court, grand jury, administrative regulatory, disciplinary body or other association, or otherwise officially narrated, in the investigation, the indictment or the facts of this case, and any testimony, statements or documents from him or her;

xi. All judicial proceedings in any criminal cases, and all regulatory, association or disciplinary proceedings of which the government knows or through the exercise of reasonable diligence should have reason to know in which testimony by any persona has been given, regarding the misconduct, criminal acts or bad acts of any witness the government intends to call at the trial of this action;

xii. Any statements or documents, including but not limited to, judicial, regulatory, administrative, disciplinary, association or grand jury testimony, or federal, state or local tax returns, made by any potential witness or co-defendant at trial, which the prosecution knows or by reasonable diligence should have reason to know, is false;

xiii. Any records from civil lawsuits, arbitration or other proceedings between the defendant and any witness or company with which defendant or any

government witness may be affiliated, including records regarding the investigation, conduct and disposition of such litigation;

xiv. Any written or oral statements, whether or not reduced to writing, made by any potential prosecution witness and/or co-defendant which in any way contradicts or is inconsistent with or different from other oral or written statements he has made;

xv. Any requests prepared by the prosecution for permission to grant formal or informal immunity or leniency for any witness and/or co-defendant, whether or not such request was granted;

xvi. The same records and information requested in items (1) through (15) with respect to each non-witness declaring whose statements will or may be offered at trial pursuant to Fed.R.Evid. 806;

xvii. Copies of any and all records of law enforcement agencies reflecting intradepartmental disciplinary action taken against any law enforcement official or agent who will testify at trial;

xviii. Copies of any and all records of any law enforcement or other governmental agency reflecting any commendations, awards or recognition of any kind made to or by any government agent or law enforcement officer for conduct in connection with this case.

c. The name and addresses and statements made by any person, including co-defendants, with information concerning the events at bar and whose version of the same events is contrary to, or non-supportive of, the accusations in the indictment; the name and address and written or oral statement made by persons and /or co-defendants the government believes has information helpful to the defense.

63. Due process requires that, upon request, the government disclose evidence favorable to the defendant or discrediting to its own case. *United States v. Agurs*, *supra*. This requirement extends to candor by witnesses as well as matters relating directly to guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972). As a defendant's ability to acquire evidence is disproportionate to that of the government, the prosecution is obliged to share exculpatory evidence. *See, United States. v. Bagley*, *supra*.

**A. Time of Disclosure.**

64. "Disclosure by the government must be made at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case, even if

satisfaction of this criterion requires pre-trial disclosure." *United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir. 1976)(citations omitted).  The mandate for pre-trial disclosure is not only the rule of law, it is ordered in the instant matter and to date has not occurred in completion, with a speedy trial request under the 70 day rule making the instant matter less than 30 days from the date federal law requires the jury trial possibly to be held.  This Court must ensure that justice is administered properly by requiring immediate disclosure of the information sought.

### B. Impeachment Evidence.

65. Mr. Krop has itemized below some likely sources of impeachment.  *United States v. Agurs*, *supra*.  Disclosure here is necessary in order to prepare for trial.  At issue are the principles of crediting and discrediting witnesses.  *See*, 1 McCormick on Evidence § 33, at 111-12 (4th ed. 1992); *see also*, *United States v. Wilson*, 624 F.3d 640 (4th Cir.2010)("in *Brady* [ *v. State of Maryland* ], the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. [83] at 87, 83 S.Ct. 1194 [10 L.Ed.2d 215 (1963) ]). *United States v. Bartko*, 728 F.3d 327, 338 (4th Cir. 2013).

This includes impeachment evidence of any inducement(s), promise(s), compensation, or consideration, or suggestion of a future consideration, which the government has suggested or held out to witnesses or which a witness anticipates to receive in exchange for testimony or assistance.  An anticipatory benefit directly gives rise to the inference of bias.  *See, United States  v. Luck*, 611 F.3d 183, 187-88 (4th Cir. 2010)(paid informants create a "potential for perjury born out of self-interest. *See* Alexandra Natapoff, Snitching 77 (2009) ( "[W]hen

defendants do go to trial, numerous exonerations reveal just how often juries believe lying criminal informants, even when juries know that the informant is being compensated and has the incentive to lie. **A report by the Center on Wrongful Convictions at Northwestern School of Law describes fifty-one wrongful capital convictions, each one involving perjured informant testimony accepted by jurors as true.**")(bold emphasis added).  The duty to disclose is an affirmative one and one prosecutor's ignorance as to promises made by another prosecutor does not excuse a failure to disclose.  *Giglio v. United States*, *supra.* Disclosure includes all compensation or benefits paid to or expected by each witness.  *United States v. Leja*, 568 F.2d 499 (6th Cir. 1977).  This includes both "the stick and the carrot" incentives for any witness.  *United States v. Sutton*, 542 F.2d 1239, 1243 (4th Cir. 1976).  Any prior testimony, including "302 reports" whether or not they are believed to be exculpatory or helpful for impeachment should be produced.  *Brady v. Maryland*, supra at 87.  Mr. Krop's request for the substance of all occasions known in which an informer, accomplice or co-conspirator has previously testified, should be granted.   Where a government employee testifies, the defendant is entitled to access the personnel file to determine whether impeachment material exists. *See, United States v. Morell*, 524 F.2d 550, 552-555 (2d Cir. 1975).  The right to cross-examine remains the means by which "the scope and the truth of hist testimony are tested."  *Davis v. Alaska*, 415 U.S. 308, 316 (1974).  The prosecution should be ordered to disclose the requested information; if they are unwilling they must show good cause for their failure to do so.  *United States v. Agurs*, *supra.*

WHEREFORE, it is respectfully requested that the defense motion for pre-trial disclosure of all *Brady* material be granted.

# IX.

## MOTION FOR REVALATION OF IDENTITY OF INFORMANTS

66. Mr. Krop hereby moves this honorable Court, pursuant to F.R.Crim.P. 16 and the Fifth Amendment of the Constitution of the United States of America, for an order requiring the government to disclose the following information:

    a.  The identity of any and all informants possessing information which may be material to defendants' alleged guilt or innocence; the identity of any and all informants who were present at any of the events which are described in the instant indictment; and any material government reports containing information received from any informant referenced above.

67. This motion is made on the grounds that informants may be percipient witnesses to the allegations contained in the indictment and may also possess exculpatory information.  At a minimum, defendant Mr. Krop seeks that all reports above be submitted *in camera* for review and subsequent disclosure.  In the event the Court does not compel disclosure, defendant requests all government reports be made part of the record concerning any ruling of denial.

    a.  **<u>The government must disclose the identity and whereabouts of informants and make them available to the defense.</u>**

The Supreme Court has held that when an informant's testimony is "relevant and helpful" to the defense or "essential to the fair determination of a cause" the identity of the informant is mandated to be revealed.  *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957).  Four considerations are relevant to the analysis of this rule: 1) the crime charged; 2) the possible defenses; 3) the possible significance of the informant's testimony; and 4) other relevant factors.

It is the government's burden to prove that what an informant might say if disclosed is entirely not "relevant and helpful" for the defense, since the defense has no access to the informant.

The informant's role, no matter how incidental, may have allowed him to possess relevant information. The defense is therefore entitled to know the informant's identity, whereabouts and addresses and contact information so as to investigate before trial. *See, United States v. Hernandez*, 608 F.2d 741, 745 (9th Cir. 1979). The prosecution has failed to provide not only any informants that may be relevant to the instant matter, but has also directly refused to provide the addresses and contact information of its initial list of witnesses so that the undersigned may prepare the case for defense. Finally, the government's obligation does not merely extend to disclosing identity and location; it must also make the witnesses available for interview and questioning pre-trial. Failure to do so, as the prosecution has asserted in writing its refusal, requires dismissal.

    b. <u>**The defendant is entitled to pre-trial access to witnesses.**</u>

68. While the accused in a non-capital crime case does not necessarily have a constitutional right to the production of witness names and addresses, this idea has been questioned. *See, United States v. Baum*, 482 F.2d 1325 (2d Cir. 1973). Requiring pre-trial disclosure of witnesses is a proper exercise of judicial authority. *See*, *United States v. Richter*, 488 F.2d 170, 173-74 (9th Cir. 1973); *Alford v. United States*, 282 U.S. 687-88 (1931). In *Alford*, the Court wrote: "prejudice ensues from a denial of the opportunity to…put the weight of [a witnesses'] testimony and credibility to a test, without which the jury cannot fairly appraise them." *Id*. at 688. *See also*, *United States v. Celis*, F.3d 818, 830 (D.C. Cir. 2010)(citing *Alford*, noting that informant discovery is decided case by case).

WHEREFORE, this honorable Court should order the government to disclose the identity of their informants and their whereabouts, and to make them available to the defense.

**X.**

**MOTION FOR THE PRE-TRIAL DISCLOSURE OF EVIDENCE PROFFERED UNDER RULE 404(b) AND THE EXCLUSION OF ANY SUCH EVIDENCE FOUND TO BE INADMISSIBLE**

69. To the extent not already provided, Mr. Krop moves pursuant to F.R.E. 404(b) for the pre-

trial disclosure of any such evidence the government seeks to proffer at trial and for the

exclusion of evidence found inadmissible pursuant to F.R.E. 403 and 404(b).  F.R.E. 404(b)

requires "reasonable notice in advance of trial" of the prosecution's intention to proffer

evidence under the Rule.  Herein, Mr. Krop seeks pre-trial disclosure of each such item of

evidence to be offered against him.  Rule 404(b) evidence, even when relevant, must be

excluded under Rule 403 where its probative value is outweighed by the danger of "unfair

prejudice."   The Supreme Court has noted that 404(b) protects against extrinsic act

evidence "when that evidence is offered solely to prove character," requiring an appropriate

purpose for the evidence, which is required to be relevant and must satisfy the Rule 403

balancing test.  *Huddleston v. United States*, 485 U.S. 681, 687-691 (1988).  To be relevant,

the evidence must be proven to be similar to the case at bar.

**XI.**

**MOTION FOR SEARCH OF PERSONNEL FILES OF GOVERNMENT AGENT WITNESSES AND/OR WITNESS INFORMANT**

70. Mr. Krop moves, pursuant to F.R.Crim.P. 12, and the Fifth and Sixth Amendments of the

Constitution, for an order requiring the government, (*See*, *Kyles*, 514 U.S. at 441-446; and

*Payne*, 63 F.3d at 1210) to search the government agent witness personnel files, including

ATF, FBI, IRS employees, or any other government employees who are potential

witnesses, to determine if *Brady* or *Giglio* material exists.  *See, United States v. Kszweski*,

877 F.2d 210, 216 (2d Cir. 1989).  Such material includes acts of misconduct, dishonesty, proof of bias, family and/or personal background, employment history, citizenship status, citizenships held whether dual or former/terminated or other, tax status, bonuses paid, opportunities provided by anyone to them including but not limited to scholarships, salaries, retirement, investments, benefits provided in exchange for education, migration, travel, employment, visa or immigration support, educational history, awards, false statements, mental or emotional disorder(s) or instability, financial interests and holdings, prejudice, interests, corruption, or any other evidence of any infirmity, lack of capacity, disadvantage, or disability.  If such information and material is found it should be disclosed to the undersigned or submitted to the Court for *in camera* review.

WHEREFORE, it is respectfully requested that the defense motion for search of government agent witness and/or witness informant personnel files be granted.

## XII.

## MOTION TO PRESERVE EVIDENCE

71. Mr. Krop moves this honorable Court for an order directing the government to preserve and not destroy, alter or "misplace" any evidence, papers, reports, notes, objects or other information relating to this investigation, including, but not limited to, the information and items requested through the instant motions.  In support, the accused shows, as follows:

   a. This motion does not demand disclosure, discovery, inspection or production.  It merely seeks to command the preservation of evidence, directly admissible or otherwise, and other information which may be necessary or helpful to a proper resolution consistent with the defense.

b.  Included in this motion to preserve evidence is, though not limited thereto, any and all information related to the following:

    i.  Evidence, reports, memoranda, notes, video tapes/CDs/digital files, audio tapes/CDs/digital files, e-mails, electronic information, social media or other application information, text messages, screen shots, PDFs, documents, photos, metadata, code or other information, arguably subject to disclosure, discovery, inspection or subpoena pursuant to F.R.Crim.P. 6€, 7(f), 16(a) and 17; evidence, reports, memoranda, notes, video tapes/CDs/digital files, audio tapes/CDs/digital files, e-mails, electronic information, social media or other application information, text messages, screen shots, PDFs, documents, photos, metadata, code or other information arguably subject to production or disclosure at trial pursuant to 18 U.S.C. § 3500; evidence, reports, memoranda, notes, video tapes/CDs/digital files, audio tapes/CDs/digital files, e-mails, electronic information, social media or other application information, text messages, screen shots, PDFs, documents, photos, metadata, code or other information arguably favorable or useful to the accused regarding their guilt or innocence or concerning impeachment of prosecution or co-defendant witnesses; and/or Evidence, surveillance reports and interview notes, notes video tapes/CDs/digital files, audio tapes/CDs/digital files, e-mails, electronic information, social media or other application information, text messages, screen shots, PDFs, documents, photos, metadata, code or other information with respect to any witness interviewed as a part of the investigation leading to this indictment, regardless of the intent to call him or her at trial.

c.  Any of the above in the direct or indirect or constructive possession, care custody or control of the prosecution may be required for scrutiny by the Court of defense counsel during the pre-trial and trial stages of this case.

72. The purpose of this motion is to preserve evidence; necessitated by the administrative practice of alleged good-faith destruction of records, *see*, e.g., *United States v. Bufalino*, 576 F.2d 446, 449-450 (2d Cir. 1978), and by the caution which the undersigned's experience teaches.[17]   The prosecution has no legitimate interest in the destruction, alteration or suppression of any evidence, including the above-requested items.  It is a slight

---

[17] In a past civil litigation, this court has previously ordered electronic discovery to be granted to the undersigned, only to have the government (State of Maryland) indicate at that time that its computer system had been "upgraded" or similar words, losing the information.

burden if any at all on the agencies involved in retaining records to do so until the accused has an opportunity to inspect the same. Any such "burden" is manifestly and greatly outweighed by the defendant's right to a fair trial and due process. Indeed, the government has an obligation to preserve all potentially discoverable evidence gathered in the course of its investigation. *United States v. Bryant*, 439 F.2d 642, 651 (D.C.Cir. 1971).

WHEREFORE, it is respectfully requested that the defense motion to preserve evidence be granted.

## XIII.

## MOTION FOR GOVERNMENT DISCLOSURE OF RULE 807 "RESIDUAL EXCEPTION" STATEMENTS

73. Mr. Krop moves this honorable Court for the disclosure of residual statements pursuant to F.R.E. 807. The United States Congress has consolidated Rules 803(24) and 804(b)(5) into Rule 807, titled the "Residual Exception." Rule 807 requires the statement's proponents to provide sufficient notice before trial of the content of the statement and contact information of the declarant, so as to "provide the adverse party with a fair opportunity to prepare to meet" the statement. *Id.*

WHEREFORE, Mr. Krop respectfully moves the Court that the government be ordered to immediately comply with Rule 807 by notifying the defense accordingly.

## XIV.

## MOTION TO SUPRESS ALL EVIDENCE SEIZED FROM TMGN 7910 REICHS FORD ROAD, FREDERICK, MARYLAND 21704

74. Mr. KROP realleges and incorporates all paragraphs and allegations herein.

75. On May 25, 2022 the Honorable Beth P. Gesner, U.S. Magistrate Judge, the duty magistrate at 3:45 p.m. on May 24, 2022, issued by telephonic or similar electronic request from a one

ATF "SPECIAL AGENT" ANDRIY VAVILIN formerly of UKRAINE, upon Mr. VAVILIN'S sworn application for search and seizure ("attachment A" to the "Warrant By Telephone") and upon Mr. VAVILIN'S sworn oath and affidavit ("attachment B" to the "Warrant By Telephone"), and upon such other alleged probable cause yet unknown and not provided to the defense.

76. This "warrant by telephone" issued by the duty magistrate was executed on May 25, 2022 at "1210" and signed as executed by the said "SPECIAL AGENT ANDRIY VAVILIN" with "inventory made in the presence of one said "SPECIAL AGENT WRIGHT."

77. The inventory was incomplete and non-descriptive of certain items, including "BNT AG" with serial number and "misc documents."

78. The "warrant by telephone" exhibits (attachments A and B).

79. The withholding of discovery make clear, on information and belief, that the government's objective was to obtain information and thereafter to hide the fruits of the poisonous tree of requested information.

80. Moreover, at no time did the magistrate judge authorize the agents to enter and intrude upon the real estate business office location, and interrogate Mr. Krop, as the agents did on May 25, 2022.

81. At no time did Mr. Krop waive his attorney-client and/or attorney-work product privilege.

82. On information and belief, the government violated the warrant by telephone and opened or accessed other premises, documents, servers, rooms, drawers, lockers, buildings and spaces, other than permitted under the "Warrant By Telephone" and as such violated the laws and constitution of the United States of America.

83. Such lawless actions stand to be remedied with sanctions and complete suppression of the poisonous fruits of the tree.

84. On information and belief, at no time did the government honor and protect the attorney(s) of Mr. Krop and/or TMGN and their communications with Mr. Krop, and in failing to so do they failed to protect the attorney-work product/attorney-client privilege protections.

85. On information and belief, other than TMGN, at no time did the government name the individuals whose possessions, spaces, computers, offices, buildings, ownership, lockers, desks, vehicles, papers, electronic devices had privilege and protection from illegal search and seizure and instead the government searched and seized materials outside the authority of the "warrant by telephone" and as such the information and fruits of the poisonous tree seized materials must be suppressed as a sanction to the government and protection of citizens pursuant to constitutional law.

    a. **Defendant Mr. Krop has standing to challenge the searches and seizures at 203 Broadway St, Ste 310, Frederick, MD 21701 and 7910 Reichs Ford Road, Frederick, MD 21704.**

    A defendant has standing to challenge the admission of evidence when his own constitutional rights have been violated. See, *United States v. Salvucci*, 448 U.S. 83, 86-87 (1980); *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). Mr. Krop had a reasonable expectation of privacy in the areas searched and items seized. See, *Rawlings v. Kentucky*, 448 U.S. 98, 104-05 (1980). At the time of the warrant's execution, 7910 Reichs Ford Road, Frederick, MD 21704, TMGN, was Mr. Krop's business, but he was neither present nor provided a signed copy of the warrant with exhibits thereto, in violation of Mr. Krop's constitutional rights. Although the "warrant by telephone" is alleged to have been granted

the day before, May 24, 2022 at 3:45 p.m., and Mr. Krop has only shown cooperation with the ATF at all of their regular and repeated unannounced and announced inspections, audits, reviews and on-site appearances, the prosecution instead chose to sit on the warrant by telephone and instead raid the premises during business hours, surprising and causing fear in staff and customers alike, harming Mr. Krop's business and good will, which was and remains in good standing with the ATF and all licensing authorities.   Furthermore, on information and belief, the documents and materials seized through the search warrant may include items protected by attorney-client and/or attorney-work product privilege, were in fact at least in part not from the premises stated in either the warrant or the warrant's return, and were not within the scope of the warrant.   Mr. Krop enjoyed a legitimate expectation of privacy in the premises and the documents therein, and any which are not from the premises must also be suppressed as unlawfully and without articulation claimed to be from the warrant's return without strict proof or even a scintilla of evidence, other than the overly broad and vague statements of one Mr. VAVILIN.   These all violated Mr. Krop's Fourth Amendment rights.  *Id.*

Additionally, Mr. Krop's Fifth and Sixth Amendment rights to Due Process, a Fair Trial and Counsel were violated.   Mr. Krop has a legal and constitutional right to speak freely with and consult with an attorney about his licenses, business practices and any other matters without having his communications utilized against him in a subsequent criminal proceeding.   Any items and documents seized by the execution of the search warrant which include documents, e-mails, communications or any other materials which were part of Mr. Krop's communications with counsel must be suppressed.

On information and belief, Mr. Krop enjoys a legitimate expectation of privacy, due process, fair trial and counsel in the documents, materials and communications seized in the search warrant – and those not listed in the search warrant's return but now alleged by the prosecution to have been seized in the search warrant execution.

The prosecution's entire argument in support of its indictment of Mr. Krop hinges in part on an alleged drafting role of legal documents which the Sheriff was averred to be providing to fulfill a legal requirement of the ATF. Neither the prosecution nor the ATF have averred that 1) there was any crime-fraud exception to any drafts or copies of legal documents of Mr. Krop or Sheriff Jenkins, nor 2) what, if any, relevant evidence was actually obtained from the premises as there is no description on the warrant return signed by AGENT VAVILIN other than "misc documents" [sic]. There is no evidence, as required by law to be provided by the prosecution, that any of the items, documents, communications or materials seized "related to client communications in furtherance of contemplated ongoing criminal or fraudulent conduct." *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997). Trial courts may perform *in camera* review of privileged documents to determine whether the "crime-fraud exception" is applicable by demonstrating that communications, documents or other materials were intended in some way to facilitate or conceal criminal activity. See, *Id.* at 88; See also, *United States v. Zolin*, 491 U.S. 554, 572 (1989).

Since Mr. Krop cannot be sure of any of the items, documents, materials and communications seized from 7910 Reichs Ford Road as not being outside of the attorney-client and/or attorney-work product privacy protections, or whether they are even from the location now alleged as there is no articulated warrant return, he asserts his demand for a

hearing *in camera* determination by this Court.   Suppression of the averred items, materials, communications and documents is appropriate.

b. **The requirement of probable cause was not met in order to obtain the warrant or perform any search and seizure.**

The Fourth Amendment requirement that warrants authorizing searches and seizures are only permitted "upon probable cause, supported by Oath or affirmation," U.S. Const. amend. IV, was not met in the instant matter because there was no determination of the sufficiency of AGENT VAVILIN'S or any other affidavit as bearing beyond "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231 (1983).  On information and belief, there were no sworn facts "sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past."  The government's "abuse [of the warrant process] led to the adoption of the Fourth Amendment," and this, together with legislation regulating the process, should be liberally construed in favor of the individual. *Boyd v. United States*, 116 U.S. 616, 635, 6 S.Ct. 524, 29 L.Ed. 746; *Byars v. United States*, 273 U.S. 28, 32, 47 S.Ct. 248, 71 L.Ed. 520; *Marron v. United States*, 275 U.S. 192, 196, 197, 48 S.Ct. 74, 72 L.Ed. 231; *United States v. Lefkowitz*, 285 U.S. 452, 464, 52 S.Ct. 420, 76 L.Ed. 877." *Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260, 85 A.L.R. 108 (1932).*  There, in an alcohol prohibition case binding on the Bureau of Alcohol, Tobacco and Firearms (ATF) in principle regarding warrants today, the "statute require[ed] that the judge or commissioner issuing a search warrant for intoxicating liquors must be satisfied 'of the existence of the grounds of the application or that there is

probable cause to believe their existence.' Act of June 15, 1917, tit. 11, § 6 (18 USCA § 616). **He must take proof** to that end. Id., §§ 4, 5 (8 USCA §§ 614, 615). The warrant must state 'the particular grounds or probable cause for its issue and the names of the persons whose affidavits have been taken in support thereof.' Id., § 6. While the statute does not fix the time within which proof of probable cause must be taken by the judge or commissioner, **it is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time**." *Id.* at 210.

Here, the government rested its affidavit for application of the warrant most unadvisedly upon VAVILIN'S false averments.  His sworn statements refer to a May 5th, 2022 "TMGN" e-mail by Mr. Isaac Burrall, the COO, not Mr. Krop, allegedly offering to "talk about what we can do to support your re-election as Sheriff" but which at no point either in fact or inference demonstrate any evidence of a quid pro quo for machine gun demonstrations.  Indict. pg. 7, ¶ 14(a).  However, the "law letters" the ATF and prosecution are wrongly averring were "fictitious" and "intended" to "defraud" the government were truthful and rare, having allegedly been provided under law for over ten (10) years under three Presidential Administrations who draft these ATF regulations: Presidents Obama, Trump and Biden. Indict. pg. 4, ¶ 12 ("beginning on or before August 2015…").  Furthermore, there is no allegation of any payment of funds – ever – either to the Sheriff or his re-election campaign, nor was there any payments.  Neither was there ever a political event held by Mr. Krop or TMGN for the Sheriff, though that would have been his right to do so under the First Amendment if he had.  Mr. Krop, by doing business and being licensed by the ATF to serve law enforcement and the community with firearms and machine guns,

does not and did not waive his right to participate in politics or to run for office.  He remains, as every licensed American, in his rights to receive law letters and to demonstrate and rent machine guns, while also participating in all politics even though he did not do so, other than his COO who allegedly praised Sheriff Jenkins and his own alleged criticism of the Biden Administration and its raid on his business.

There is and was no nexus in time with any proof of facts "so closely related to the time *of the issue of the warrant* as to justify" any probable cause.  Indeed, the government admitted its changed regulation on ATF "law letters" forms the basis of the same arguments to the indictment – none of which are permissible and all of which are *ex post facto*.


c. **The affidavit in support of the search and seizure warrant by telephone was insufficient on its face to establish probable cause.**

Young agent ANDRIY VAVILIN, averred "Team Leader" of the raid on Mr. Krop's business TMGN and signatory to the oath and application under oath for the "Warrant by Telephone" to raid Mr. Krop's business and on information and belief who supported by oath the Indictment papers, arguments and "evidence" presented to the Grand Jury, misrepresented to the Court the law and facts which were the sole basis upon which he sought the "Warrant by Telephone" and further thereupon misrepresented the law and facts in the instant matter to the Grand Jury, which misrepresentations are reflected in the "probable cause" statement and other sections of his sworn "Affidavit in Support of Search Warrant" and in the Indictment.

As cited *supra*, the United States Constitution, art. IV, requires that no warrants may be issued except "upon probable cause, supported by Oath or affirmation."  *Id.*

Here, the warrant was applied for by Mr. VAVILIN by telephonic and electronic mail means.  There is no record of any proceeding before U.S. Magistrate Beth P. Gesner, indicating that the only oath taken was the one in Rule 41.1 mandating the Agent provide affirmation of the submitted written documents over the telephone.  F.R.Cr.Proc. 41.1.

However, this violated Mr. Krop's constitutional Fourth Amendment protection to ensure that ANDRIY VAVILIN provided actual support for his affidavit and be visibly seen by the Magistrate Judge, to be viewed for his apparent youth and inexperience, questioned thereupon if the Magistrate were to rightly inquire, to be actually whom he says he is and to cite the law which he did not cite supporting his affidavit, which cannot be verified merely by telephonic or even in today's AI technology world, video, means, and to be seen by the judge swearing under oath with his right hand raised attesting to each and every element of the facts and law he presented therein his application.  If the general rule under Rule 41 had been followed, and not the "warrant by electronic means and telephone," then the Magistrate Judge may have noticed ANDRIY VAVILIN'S extreme youth, heavy foreign accent indicating a potential lack of knowledge of U.S. law, and determined a need to examine the law and facts more carefully, thereby avoiding the misrepresentations now exposed to the Court.

In paragraph 15 of the affidavit ANDRIY VAVILIN swears falsely that "beginning in February 2022, investigators began focusing on violations of federal law involving false statements made by FFLs while applying for an exemption to import or otherwise facilitate the transfer and acquisition of **impermissible weapons** into the United States under the pretense that they were, in fact, weapons permitted for import **under the military/law enforcement demonstration/use exemption."** (bold emphasis added to highlight the false

statements). This statement of probable cause was false and known to be false to VAVILIN for at least two reasons:  1) government investigators have worked each and every month and year, during the years VAVILIN states in the affidavit (2011-2018) and beyond "focusing on" ensuring compliance and truthful statements to the ATF on all required forms including import/export forms, and agent VAVILIN falsely stated that the Biden Administration began something new in February '22;  2) at no time were the "weapons permitted for import" only permitted under a "military/law enforcement demonstration/use exemption" only, and that defendants were acting "under the pretense" that these lawfully obtained machine guns were never to be demonstrated by anyone other than military or law enforcement, as inferred in the proffer to the Court by VAVILIN.

In paragraph 16, VAVILIN further flatly lies to the Court in a material fact when he wrote: "Based on [sic] my training and experience, I know that…If the firearm is subject to restrictions **limiting it to use by law enforcement agencies or the U.S. Military [sic],** a letter from the law enforcement entity or military agency must also accompany the ATF Form 6…".  (bold emphasis added).  At the time of writing this statement to the Court in order to support his probable cause statement to receive the warrant to raid Mr. Krop's business, Agent VAVILIN knew or should have known that federal law does not "limit[]…to use by law enforcement agencies or the U.S. Military" machine guns transferred on AFT Form 6 to an FFL.  This was a material false statement by VAVILIN going to the gravamen of the claim of wrongdoing which in fact was a misrepresentation. On information and belief, but for the misrepresentation, the Magistrate Judge would not have issued the warrant by telephone because there would not have been any probable cause.

In paragraph 17, VAVILIN identifies unknown and unsworn "investigators" who "identified that between 2011-2018" the Frederick County Sheriff's Office submitted law letters for "demonstration and possible acquisition…through KROP via RK86 LLC (TMGN)…" and two other FFLs.  These statements were false because VAVILIN knew or should have known that: 1) the alleged law letters were lawfully submitted for "demonstration" purposes as stated therein and as required by the ATF, 2) the law letters did not place orders for "possible acquisition" of any firearms, indeed, they stated expressly they were not orders but were for demonstration purposes only, and 3) the lawful entity required to receive any and all such "demonstrations" is an FFL and VAVILIN failed and willfully withheld that information from the Magistrate.  For instance, no law enforcement may directly receive a shipment of a Class III machine gun; federal law mandates that any such machine guns be transferred to a Class III license holder such as TMGN LLC or RK86, LLC – not "KROP via RK86 LLC" as the affidavit falsely stated.

In paragraph 18, VAVILIN references unknown and unidentified "investigators" claiming that "even though they [firearms] were requested for law enforcement demonstration/usage, **there was [sic] a large number that are unsuitable for law enforcement." Exhibit Two.**  This was a willful false statement of VAVILIN made not upon any probable cause but upon his own political viewpoint and a false statement of the facts.  VAVILIN knew at the time he swore the statement that there were not a "large number" of any belt-fed machine guns as he infers, there were not *any* requested firearms "unsuitable for law enforcement," and that he was not permitted to create policy to define "suitability' but he did it anyway in violation of the Supreme Court's order to the federal government (*Ciminelli v. United States*, supra), and he further knew, but did not inform the

Magistrate Judge, that the law and regulations do not prevent the demonstration by law enforcement of Class III machine guns which are belt-fed.  In fact, the particular SAW and SCAR machine guns listed falsely by VAVILIN to be off-limits entirely to United States Sheriffs and American citizens for demonstration use, and potentially for use in SWAT, Special Operations, Counter-Drug operations, etc., were actually and still are being sold by the manufacturer for law enforcement use as explained additionally hereinabove.  **Exhibit Five, attached hereto.**  VAVILIN further misrepresented to the Magistrate Judge by averring in his statement of probable cause the following untruths and personal, political vendetta statements more in line with the partisan political views not permitted in a probable cause affidavit: "some of the firearms requested by the FCSO (Sheriff's office) are belt-fed machine guns that are more commonly used in warfare than on the streets of a county such as Frederick.  Many of these firearms utilize 7.62 caliber ammunition, which is both expensive and hard to acquire, as well as being a non-standard police issue caliber…Accordingly, **none of the weapons should be for sale in America** because they should all be in the hands of [FFL] licensees for use by law enforcement entities or for testing and evaluation purposes."[18]  This nonsensical statement is grounds for dismissal.

VAVILIN'S false statement that "belt-fed" machine guns are impermissible for law enforcement shows his inexperience and inability to comprehend either law enforcement SWAT or special operations *or* firearms, and/or is entirely biased and vindictively willful targeting of law enforcement whom he disagrees with politically, such as Sheriff Jenkins.

---

[18] It is of note that none of the firearms mentioned by VAVILIN or seized even use the 7.62 caliber.  This is probably the only round he knows about since it is a common caliber in Russian firearms that Ukraine is known to use for guns chambered in 7.62x39, such as: AK-47, AK74, Zastava M70, etc.  The actual round, .308, which is a common NATO and US round and is highly popular in both sporting and hunting.  It is probable that VAVILIN used the phrase 7.62 because its connection with the AK-47 would sound scarier to those not educated in firearms law.  As such his statements must be suppressed.

He makes political statements rather than probable cause statements, and it went undetected by the Magistrate likely because the sworn statement over the telephone allowed a cover up of the false statements in the affidavit. These above statements to the Court were so false as to be facially demonstrated as a willful deception of this honorable Body.  First, VAVILIN knew that there were not "some" belt-fed machine guns, but there was only one averred SAW – the only one capable of "belt-fed" service, and that it fires a .223/556 round commonly used by law enforcement.     VAVILIN argues in his affidavit a false political position rather than a legal one, namely, that: 1) belt-fed machine guns are impermissible to Sheriff Jenkins because they "are more commonly used in warfare than on the streets of a county such as Frederick";  2) that firearms that "utilize 7.62 caliber ammunition" is both "expensive and hard to acquire…" and is "a non-standard police caliber."  None of these averments by VAVILIN are legal, truthful or a basis for any probable cause.

In fact VAVILIN knew or should have known his facts and law were completely fabricated: 1) 7.62 caliber ammunition is one of the cheapest and easiest ammunition to obtain on the market[19] and is largely used as a 308, and 2) police use machine guns, sub-machine guns and all sorts of ammo including 308 or 7.62 ammo on SWAT, Special Operations, patrol and sniper teams regularly each and every day[20].   Even though VAVILIN knew that SWAT means "special weapons" and that 7.62 ammo is a

---

[19] A simple search on ammo websites shows 7.62 and/or 308 ammo is available widely for $9.89 for a box of 20, or about .49 cents each bullet; compare with 9mm ammunition (used widely in 9mm handguns) for $11.99-$14.00 for a box of 20, or about .67 cents a bullet or more. See,  https://www.cheaperthandirt.com/ammunition/rifle-ammo/7.62x39mm/      (accessed      May      22,      2023),      and https://www.cheaperthandirt.com/search?q=9%20m%20ammo&start=0&sz=96 (accessed May 30, 2023).  See also, www.ammoseek.com (accessed May 30, 2023).

[20] See, FBI/SWAT with MP5 MACHINE GUNS (Ex. 5 attached hereto); **SWAT means: "Special Weapons and Tactics"** and are operated by police forces including Sheriff Jenkin's Frederick County Sheriff's Department.  A "Special Weapon" includes machine guns, belt-fed machine guns and ammo including rubber bullets, .50 caliber, 308, 9mm, 7.62 and other caliber bullets.

Russian/Ukrainian round and no such guns were sought or seized by VAVILIN from TMGN, but that 308 ammo is regularly used by law enforcement, he falsely swore to the Magistrate Judge a non-sensical political argument, that "none of the weapons **should** be for sale in America because they **should** all be in the hands of [FFL] licensees for use by law enforcement entities or for testing and evaluation purposes."  VAVILIN, a former Ukrainian, does not have the authority to falsely swear out an affidavit in order to raid an American FFL licensee business the Biden Administration dislikes.  He was not authorized to allege to the Magistrate Judge irrelevant and false information that he believes none of the "weapons" allowed by federal law and the ATF "should be for sale in America."  He also contradictorily stated the weapons he was asking the Magistrate Judge to let him seize from the FFL licensee Mr. Krop were in fact permissible to be in the possession and "hands" [sic] of FFL licensees [as Mr. Krop] "for use by law enforcement or for testing and evaluation…" [as TMGN provides]. What VAVILIN inferred and stated affirmatively to the judge was that Mr. KROP and SHERIFF JENKINS were not permitted to be in possession of lawfully transferred ATF Form 6 machine guns because, in his view, such "weapons should not be for sale in America."

VAVILIN further eviscerates his own false affidavit by averring that "FCSO's inventory consists of machine guns such as M4 and M16 variants but none of the firearms listed on the law enforcement demonstration request letters."  He failed to inform the Court that M4 and M16 and "variants" are post-1986 machineguns which use .223/556 ammo just as those he was seeking to seize.  VAVILIN further mispresented to the Court the fake term of law "law enforcement demonstration request letters" instead of the actual ATF term "Law Letter," inferring his political belief that the firearms are only for "law

enforcement touching" or, as he stated in his affidavit, "should not be in the hands" of American citizens, while then falsely averring that federal law prevents the Sheriff from demonstrating other types of modern machine guns and that only those firearms that the Sheriff purchases are therefore permitted to be demonstrated.

Next, VAVILIN falsely includes in his affidavit to the Magistrate Judge two "law letters" neither of which were to either defendant Mr. Krop or either of his businesses, and both of which are illegible and unable to be plainly ascertained. What can be seen is that they are addressed to others not part of the instant matter in any way, as proffered by AUSA GOO on May 15, 2023 at 4:10 p.m. when the undersigned spoke with her on the phone in regard to Mr. Krop's requests for all discovery to be provided. In that conversation, Ms. GOO rejected any information or evidence to be provided pertaining to other entities because "they are in no way part of this matter." Yet, VAVILIN used them to illegally obtain the warrant by telephone and to seize items at Mr. Krop's businesses.

VAVILIN further asserts that he wishes to seize a "machinegun PKM 7.62 that commonly would not be suitable for law enforcement entity use" in his affidavit ¶ 21. However, no such firearm was in Mr. Krop's or his businesses possession nor was it sought to be transferred and VAVILIN knew this. Yet it is used as a false example to the Court of an illegal firearm transfer. Additionally, even if Mr. Krop had that particular firearm, which he did not, VAVILIN has no law or authority to unilaterally proclaim from his personal belief that the said machine gun PKM 7.62 is not "suitable for law enforcement entity use." Indeed, like all those firearms he illegally swears about in his affidavit and those he has averred to have stolen from Mr. Krop or blocked transfer of for demonstrations, he does not have any legal, statutory or constitutional authority to make

up his own standard for American law enforcement as to what he deems as appropriate for law enforcement demonstration or use.[21]  Strict legal proof is demanded of the government to prove where it is in federal law that VAVILIN is able to make such wild claims and is not misrepresenting the law.

Finally, in paragraph 23 of the probable cause affidavit of VAVILIN, he falsely avers that unidentified and unknown "investigators learned that TMGN submitted four law enforcement demonstration request letters for FCSO between 2015 and 2018…". No such "law enforcement" letters were submitted – but VAVILIN, to fit his false narrative, re-states the ATF "Law Letters" to a newly self-titled "law enforcement demonstration request letters" in order to put the law in a false light to the Magistrate Judge.  Namely, that Law Letters under ATF NFA 'Law Letter' regulation dated November 10, 1999 were solely for "law enforcement demonstrations" which no such law or policy existed at the time VAVILIN wrote it, nor does it exist at the present moment.  Additionally, VAVILIN further falsely claimed in paragraph 23 three times, under the header "**RK86 LLC (TMGN),**" "law enforcement demonstration request letters" were "used" including for a "FN M249SAW" obtained "domestically" and "four other machineguns": "FN SCAR-16 CQC, FN SCAR-16, FN SCAR-17 and FN P90."  VAVILIN inferred to the Court that these firearms were illegally imported and they were not; and VAVILIN cites no law other than his own mind's political viewpoint to assert the false inference that the firearms were illegally imported.

---

[21] It is understandable that ANDRIY VAVILIN, as a former resident of a former Communist Bloc country, would have a different upbringing and understanding of the rights secured to Americans in our Constitution, since Ukraine was ruled by a fake constitution under Soviet Communism.  However, his personal beliefs about political policy are no basis for swearing out a false search and seizure warrant and supporting the prosecution's false Indictment by the Grand Jury of law abiding Americans and law enforcement such as defendants.

In paragraph 24, VAVILIN falsely explained his position of false knowledge of ATF Class III import law, namely, that these aforesaid firearms were "impermissible for important into the United States" and that "a licensed importer can" [sic] import them if: 1) the entity writes a letter wishing to **test** or purchase the firearm, 2) the firearm is **only** for demonstration or sale to a law enforcement entity once it enters the United States, and 3) the firearm cannot be sold or transferred to personal buyers or other FFLs" without also meeting the law's requirements for import and possession.  These were false statements.

VAVILIN willfully misled the Court in precisely the probable cause averments upon which the Court granted the warrant for search and seizure and later the Indictment.  First, contrary to VAVILIN's false statement and as argued *supra*, the said firearms are not limited *only* to demonstration and sale to a law enforcement entity once it enters the United States.  Strict proof of this averment is demanded.  VAVILIN knew that it is not a crime for a Class III FFL to demonstrate such firearms (including "for rent" of course) to American citizens.  Yet, he falsely swore in the affidavit that probable cause existed because TMGN was alleged by himself and his "undercover investigators" to have done so (see, par. 26).  Strict proof is demanded of this law.  He also falsely swore that the letter from law enforcement or other entity was strictly for them to "test" the machine gun themselves.  No such law exists; VAVILIN again made this averment up entirely and falsely pleaded his affidavit.  Strict proof is required.  Finally as to these particular false averments in paragraph 24, VAVILIN falsely stated that only an entity with a "law enforcement exemption letter" could buy or transfer the firearms.  This is also completely made up once again – inventing a third title to the very specific and long-standing "Law Letter" in order to confuse, manipulate and misrepresent the truth of the facts and law

which do not require either a "law enforcement exemption" letter or a "law enforcement demonstration request" letter, but merely a very simple and straightforward "Law Letter" permitting demonstrations by law enforcement and any other law abiding citizen in America.  VAVILIN knew these facts and matters pertaining to the law, because the law was in long practice, and instead lied and misrepresented to the Court a complete fabrication and falsity.  Sadly, the prosecutors, Leo Wise and Christine Goo, knew or should have known this and decided to advance the false averments before this Court and the Grand Jury.

VAVILIN goes into great detail for the Magistrate Judge in his probable cause affidavit, paragraph 27, with several additional completely false averments.  First, once again changing the name of the NFA Law Letter policy to the misrepresentation "law enforcement demonstration request letter" claiming falsely to the Court that neither the FN P90 nor the FN M249 SAW may be demonstrated "as a rental."  This is a false statement of material fact, as no federal law or policy prevent such demonstrations and in fact, all demonstrations under Class III licenses are provided "as a rental" complete with background checks and a fee prior to the American citizen being permitted under federal law to handle the firearm in a demonstration.  VAVILIN knew this and falsified his affidavit, also further falsely stating that since TMGN was "out of [the P90] 5.7x28mm ammunition that said information proves that the P90 was under his "experience and training" difficult to find and…expensive…further illustrating [sic] that most police departments would not be able to afford it as a department issued weapon."[22]  VAVILIN

---

[22] During the pandemic shipments of ammo containers were held up indefinitely, and TMGN did halt demonstrations of some of its firearms during this once-in-a-lifetime shutdown and chain of supply delay. Yet Vavilin and the prosecution knew this and presented false evidence to the Grand Jury, namely, that such ammo was always scarce.

has no SWAT or special operations "experience and training."  He falsely claimed he did

by inferring to the Court that a P90 would not be used by law enforcement special

operations.  But that is not the focus of the gravest error here: there is no legal standard,

federal statute or policy preventing a P90 from ***demonstration*** by the Sheriff and

possession by a Class III licensee holder such as Mr. Krop, as even VAVILIN admitted in

his affidavit but failed and refused to explain this fact to the judge.  Instead, he made up a

false "illustrat[ion]" of his personal feeling about the matter, none of which are either

relevant or faithful to the law and truth.

Additionally, and of interest to the law, VAVILIN swears that his "undercover law

enforcement agents" demonstrated all or most of the averred machine guns at TMGN

which is within the jurisdiction of the Sheriff's Department. See, Vavilin aff. ¶ 26-27.  As

such, by VAVILIN's own averments that law enforcement in the jurisdiction of the District

of Maryland were demonstrating the said machineguns while he swore to the Court that

TMGN did not in fact "demonstrate" the machine guns for law enforcement is negated

entirely, without even needing to know that TMGN has a membership of 383 law

enforcement and military who demonstrate their machine guns all in full compliance of the

Law Letter policy and federal law.

### d. The seized items are highly prejudicial and inflammatory, and a jury will not be able to differentiate inflammatory facts from legal authority.

If the prosecution places the alleged machineguns seized from TMGN in front of

the jury as Mr. Kemp, Esq. indicated "as they should" "when proving [Count Six]" the jury

will not be able to ascertain the fact that the machineguns are lawfully permitted to be in

the possession, control and use of TMGN as a Class III licensee,[23] and that the sole grounds for the count is "conspiracy" to transfer them by a means of law letters – essentially a paperwork violation false allegation.  Such is no grounds for displaying prejudicial firearms wrongfully seized in front of a jury that is being told false information about a Class III licensee and federal law including false allegations they are used only for "warfare", particularly in the Maryland environment which political establishment has a strong anti-law enforcement policy position similar to the Biden Administration and its agent ANDRIY VAVILIN.

Upon the foregoing grounds and further evidence to be submitted at any hearing on the matter, the affidavit is a fraud and illegality, there existing no probable cause and only made-up political viewpoints of VAVILIN, and the fruits thereof must be suppressed and the items and materials falsely alleged and taken by VAVILIN must be returned to TMGN, and this vindictive "case" dismissed with prejudice.

## XV.

## MOTION TO SUPPRESS STATEMENTS

86. Mr. KROP realleges and incorporates all paragraphs and allegations herein.

87. The defense has been notified of defendant's purported statements to law enforcement, occurring in the morning of May 25, 2022.  As set forth below, Mr. Krop was subjected to custodial interrogation without the benefit of any *Miranda* warnings and without the opportunity to either contact counsel.  He moves for suppression of all statements.

---

[23] As explained, *supra*, TMGN as a Class III licensee may build these same firearms, may produce them for sale or export and may import them for demonstrations, and for sales to law enforcement and military.  One difference between a law letter and a purchase order is the fact that federal law does not mandate a Class III licensee with law letters have a purchase agreement or even likely sales contract to import or otherwise obtain, as they are allowed for sales samples and demonstrations.

88. At the time and under the circumstances that Mr. Krop allegedly made the statements any reasonable person would have believed he was in custody and being interrogated.  In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court determined that the Fifth and Fourteenth Amendments to the Constitution prohibition against self-incrimination required that custodial interrogation be preceded by advice to the defendant that he has the right to remain silent and to the presence of counsel.  *Id.* at 479.  Government custody is any "depravation of freedom of action in any significant way." *Id.* at 444.  The Court is therefore required to examine the objective circumstances at play in the instant matter, *Stansbury v. California*, 511 U.S. 318, 321 (1994), utilizing the "reasonable person" perspective in Mr. Krop's position.  *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

89. On May 25, 2022 ATF and/or FBI and other agents interviewed Mr. Krop in a surprise raid and visit to his businesses, both TMGN and his real estate brokerage firm where he was actually working.  They did so with a large show of force, with at least 10 armed agents in tow and a swath of federal vehicles all following young ANDRIY VAVILIN who was "Team Lead," effectively shutting down Mr. Krop's businesses for most of the day.

90. At no time did they read Mr. Krop his rights or report to him that he had a right to remain silent or to obtain an attorney as required by *Miranda*.  Additionally, the agents sought to intimidate, question and interrogate him knowing that Mr. Krop was always a cooperative man with ATF audits occurring at his TMGN business regularly as part of his licensing and review, yet they took advantage of his inferior position and licensing disadvantage, leveraging that business license against seeking to interrogate him.

91. In fact no legal counsel was present nor did the ATF or agents present even offer him an opportunity to contact his attorney.

92. No *Miranda* warnings were provided and at no time did the agents inform Mr. Krop of his constitutional rights.

93. The interrogation took place by the agents at Mr. Krop's real estate business location, 203 Broadway St, Ste 310, Frederick, MD 21701, and no warrant was every sought or provided to permit the agents to enter thereupon and seek to interrogate Mr. Krop as they did.

94. The "summary" of the interrogation by the agents includes a clear statement from Mr. Krop, upon realizing that the interrogation was seeking to entrap him falsely, requesting the right to counsel and to cease asking him questions and to leave the property as they had no warrant to enter the premises of his real estate business as the agents had done.

95. Even after Mr. Krop professionally in a businessman-like manner requested the agents cease and desist interrogating him without counsel present and without a warrant to be on his premises, they continued to remain there and seek to interrogate him, sitting in his conference room for another length of time refusing to leave.

96. The ATF and FBI used trickery to enter the premises of Mr. Krop's real estate brokerage, informing him that they were raiding his business at TMGN, had a warrant to do so, and needed to enter and speak to him in regards thereto.

97. Only under duress, intimidation and threat of arrest did the agents enter his premises and interrogate him.

98. The interrogation was in essence a custodial interrogation because 1) Mr. Krop was intimidated, threatened and told by agents they were raiding his business with a warrant and that, by trick, they entered his real estate business premises; 2) Mr. Krop was never *Mirandized*; 3) Mr. Krop was threatened by the ATF and FBI agents once in the room interrogating him, accusing him of "lying" and that he needed to call his employees and

"ensure the public doesn't have to see our being at your business" raiding it all day by shutting the TMGN business down knowing full-well they were in the middle of training and sales and would lose significant revenues and good will; 4) that when he demanded to have counsel present and asked the ATF and FBI agents to leave, they did not do so and instead continued seeking to interrogate Mr. Krop; 5) Mr. Krop repeatedly invoked his right to counsel and was ignored, talked over and falsely insinuated by the interrogators that he had "lied" to the ATF.

99. These "agents" names and contact information, including addresses and phone numbers, are demanded to be revealed to defendants for the undersigned to exercise due diligence in interviewing each of them concerning this matter in preparation for trial and a motions hearing.

100.    The undersigned further moves that the Court order Mr. Krop may access each of their personnel files as requested hereinabove and as required by the federal rules and law.

101.    A reasonable person in Mr. Krop's situation would have believed that he was not free to leave, and that there was no alternative but to answer any questions the agents had. However, Mr. Krop was never advised of his *Miranda* rights prior to being subjected to custodial interrogation.  Accordingly, he did not make a knowing, intelligent and voluntary waiver of his Fifth Amendment rights.  His statements were involuntary.  *See generally*, *Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004); *Withrow v. Williams*, 507 U.S. 680, 693-694 (1993)(considering the totality of circumstances in determining voluntariness, including failure to advise of rights and to have counsel present during custodial interrogation).  The violation of Mr. Krop's rights in this regard renders his statements inadmissible.  Accordingly, suppression is in order.

WHEREFORE, Mr. Krop respectfully requests the Court enter an order precluding and/or suppressing any such statements allegedly made on or about May 25, 2022, or, in the alternative should this Court not determine from the proffered argument a decision to suppress the statements, that an evidentiary hearing be conducted to determine the voluntariness of such statements and whether he was advised of his *Miranda* rights.

## XVI.

## MOTION FOR DEPOSITION DUCES TECUM OF
## AGENT ADRIY VAVILIN

102.     Pursuant to Federal Rule of Criminal Procedure 15, Mr. Krop moves the Court for leave to take the deposition duces tecum of MR. ANDRIY VAVILIN, a current or former UKRAINIAN national and current ATF Special Agent, whose sworn statements and application under oath caused this Court to issue the "Warrant by Telephone" and who personally conducted the raid at TMGN as "team lead agent."

103.     Federal law and the Rules of Criminal Procedure require warrants to be issued by the Court only to authorized individuals under United States law and not foreign nationals.

104.     Federal law for the employment of federal law enforcement agents mandate that all federal law enforcement agents empowered with arrest and police powers of United States citizens on United States soil must themselves be United States citizens and not a foreign national or agent with a foreign passport, citizenship, dual citizenship or permanent residency.

105.     Federal law for the employment of federal law enforcement agents further mandates that all federal law enforcement agents be registered with the Selective Service in order to be potentially drafted into the military service of the United States of America.

106.     On information and belief, ANDRIY VAVILIN, holds a top secret security clearance as a federal agent for the ATF, and is also possibly a foreign national from the nation-state of UKRAINE because he admitted to the undersigned on April 28, 2023 in thick Ukrainian accent, to be from Ukraine.

107.     On information and belief, ANDRIY VAVILIN is likely not and/or was not registered with the Selective Service as the date of the issuance of the warrant by telephone, namely, May 24, 2022, because a foreign national is not mandated for registration with the Selective Service, or at least it is unclear as to his Selective Service registration status because he admitted to the undersigned his foreign national former and/or current status and Mr. Krop is unable without questioning to ascertain his registration status with Selective Service.

108.     Furthermore, young ANDRIY VAVILIN falsely informed the Court he has "experience" in training and "statues [sic]" but in fact he does not have the training, education and experience in US SWAT, military or special operations, nor does it appear he has any education, training or valid expertise in the United States Constitution and laws concerning federal firearms licensing and Class III status, including Law Letters and lawful demonstration purposes of machine guns, because he was in college when his affidavit alleges the "law letters" from Sheriff Jenkins began to be issued and approved under the Administration of President Obama, and in fact his sworn affidavit falsely states the law as the sole foundation for its requested issuance, as outlined hereinabove.

109.     The undersigned requested from prosecution counsel information concerning VAVILIN and to date counsel has failed or refused to provide such background and related information of the agent in charge of both the affidavit and warrant by telephone to seize

items and documents, and the search and seizure, and was the sole custodian averred to possess and control the machine guns on May 25, 2022 with no noted or disclosed joint agent and out of the presence of Mr. Krop, in violation of federal law and the federal rules of criminal procedure.  See, 18 U.S.C. 2703; Fed. R. Crim.Proc. 41 (f) *Executing and Returning the Warrant*. (B) *Inventory.* An officer present during the execution of the warrant must prepare and verify an inventory of any property seized. The officer must do so in the presence of another officer and the person from whom, or from whose premises, the property was taken. **If either one is not present, the officer must prepare and verify the inventory in the presence of at least one other credible person**."(bold emphasis added).  Here, AGENT VAVILIN failed to prepare and verify the inventory in the presence of either Mr. Krop or two (2) other credible persons. The "Return" of warrant provided to the Court and the undersigned lists only Mr. VAVILIN as the signatory and include non-descript items seized ("misc documents [sic]") in violation of federal law.  Additional two (2) "Evidence Logs," one of photographs and the other of averred seized items and documents, each have only one other signatory thereto indicating non-compliance with the execution of the warrant's preparation of the seized items inventory not being done in the presence of Mr. Krop or at least two (2) credible persons.  **This has both tainted and spoliated any and all averred seized items and has cast a reasonable doubt on the actual items which were allegedly taken, compared with what is averred now to be included in the "misc documents."**  Such violates Mr. Krop's due process and constitutional rights and presents to this Court and potentially to a jury no confidence in the averred items taken as actually having been from the location(s) averred by Mr. VAVILIN.  As such they must be suppressed and Mr. VAVILIN must be deposed to

determine his background and compliance with federal law as to chain of custody and mishandling of federal evidence.

110.     These facts and matters are material and substantive to the issues at bar and necessary for the defense and preservation of all evidence in the instant matter.

WHEREFORE, Mr. Krop respectfully moves this Court for an order permitting the taking of the deposition duces tecum of AGENT ANDRIY VAVILIN forthwith.

## XVII.

## MOTION TO TRANSFER VENUE FOR TRIAL

111.     Mr. KROP realleges and incorporates all paragraphs and allegations herein.

112.     Should this Court not dismiss the indictment as requested hereinabove, Mr. Krop moves the Court to transfer venue for trial to the Northern District of West Virginia.

113.     Because of the great prejudice and abuse to Defendant by the false pleadings of the prosecution, and because of so great a prejudice that exists in the District of Maryland against Mr. Krop such that he cannot obtain a fair and impartial trial, and pursuant to Fed. R. Crim. P. 21, Mr. Krop moves the Court to transfer venue to the Northern District of West Virginia, in Martinsburg, WV.

114.     As demonstrated by Codefendant's counsel in his filing for a motion to sever, great prejudice will occur in Baltimore should the defendants be tried together.

115.     Additionally, as demonstrated by Codefendant's counsel in the same filing, where he averred that his opinion of the machineguns being placed in front of a Baltimore jury will have great prejudice that will occur against Mr. Krop such that he is unable to obtain a fair and impartial trial.

116.     The same prejudice and loss of fairness and impartiality is less likely in the Northern District of West Virginia as the subject is firearms which West Virginia is much more familiar with, and the location and headquarters of the ATF for this area is in Martinsburg, WV near the Court, allowing for greater access to justice and potential witness and expert testimony at trial.

WHEREFORE, for the reasons stated hereinabove and to be further provided at oral argument Mr. Krop moves this honorable Court, should the Court not dismiss the indictment as moved by Mr. Krop, to immediately transfer venue for trial to the Northern District of West Virginia.

## XVIII.

### Fed. R. Crim. P. 14(a) MOTION TO SEVER TRIAL AND FOR SPEEDY TRIAL

117.     Mr. KROP realleges and incorporates all paragraphs and allegations herein.

118.     Because of the great inequities and illegalities demonstrated herein and in the prosecution's misrepresentations to the Court and Grand Jury, it is necessary and essential for a constitutional Fair Trial for the Court to sever the defendants and trials forthwith.

119.     Mr. Krop cannot possibly obtain a fair trial when the prosecution is presenting false and baseless claims to the jury and court, all while trying to tie him to the sheriff of Frederick against whom they appear to have the most significant bias and political vindictiveness.

120.     The Sheriff's counsel has now notified the Court that they wish to delay a trial "beyond the end of summer 2023" or similar e-mail to the Court and concurrent motion, and that they also concur to sever trial, because they have substantial information to review and because they will have different and separate defenses from Mr. Krop.

121.     This averment and subsequent motion by the Sheriff's counsel further mandates that a fair trial cannot be had by combining the two defendants.

122.     Esteemed counsel for the Sheriff, Mr. Kemp, asserted in his motion to sever that several grounds exist, and several arguments exist which he made before this Court that further demonstrate the significant prejudice to Mr. Krop and Sheriff Jenkins should this Court not sever the trials.  Fed. R. Crim. P. 14(a); *Zafiro v. U.S.*, 506 U.S. 534, 539 (1993). First, counsel asserts that Mr. Krop is "insisting on trial before the completion of Rule 16 discovery."  This is an apparent misunderstanding as Mr. Krop has never waived his right to immediate and complete discovery and seeks sanctions for failure to provide the same by the prosecution, including dismissal of the indictment.  It is not Mr. Krop's fault that Rule 16 discovery has not been completely provided, and such failure by the government may not be used as a ground for delaying his trial.  On information and belief, the reason the government is not forthcoming with much discovery is because they have no evidence of wrongdoing and they want to delay trial until the presidential election political year of 2024 arrives so they may misuse Mr. Krop's legal rights in exchange for Biden's political benefit       in       Maryland       in       an       election       year. Second, Mr. Kemp asserts two "discrepancies" in discovery received thus far but represents those from a position that Mr. Krop strongly opposes – thus demonstrating additional grounds that trial for Mr. Krop should be severed.  Mr. Kemp averred that "discovery thus far reflects that Mr. Krop obtained automatic weapons for the purpose of renting them to the general public…".  There is no such evidence in discovery thus far and the statement is vigorously opposed; indeed, Mr. Kemp was advocating vigorously for his client no doubt, but does not cite to or provide such grounds in the discovery, and improperly infers

to the Court that renting "automatic weapons" is a charge herein.  Nor can he assert Mr. Krop's intent by claiming, without truth or support, that "at worst Mr. Krop duped Sheriff Jenkins without knowing… the motive of Mr. Krop was to gain financially from TMGN's special permission to possess and to import, and even to obtain, these weapons." Codefendant's motion to sever, pg. 4, sec. IV.  Such conclusory statements by counsel Mr. Kemp, Esq. are highly prejudicial and actually demonstrate how important it is for Mr. Krop to have a fair trial by severance of this case.  There was no illegal motive, there was no "duping" and there was no crime and Sheriff Jenkins has stated the same publicly.

123.    What Mr. Kemp, Esq. further stated is true, that "there is no evidence of fraud or conspiracy of any sort" and that the recent case of *United States v. Ciminelli*, 598 U.S. _____ (2023) requires some transfer of money or value as a *quid pro quo* for any act of fraud to stand is true and fully demonstrated by the evidence and argument stated hereinabove by Mr. Krop.  Here, there was no such money or value, nor was there any *quid pro quo*, whatsoever.

124.    Therefore, Mr. Krop demands his right to a fair trial and moves the Court to sever the trials of defendants.

125.    Additionally, Mr. Krop asserts his speedy trial rights without waiver and strongly objects to requiring him to go to trial before the Sheriff because such a procedure is not contemplated in controlling precedent, where, as here, Mr. Krop is listed as the secondary party.  This is because if the alleged principal party charged in the indictment is acquitted, as the Sheriff most assuredly must be since he and Mr. Krop committed no conspiracy to do anything more less defraud the United States or otherwise, there can then be no conviction of Mr. Krop.

126.     Furthermore, Mr. Krop has moved for a speedy trial under the Speedy Trial Act of 1974 ("the Act") and on information and belief the government and the codefendant's counsel have not as of yet agreed to such a speedy date of trial, all to the disadvantage and business damage of Mr. Krop who has a right to a jury trial after the Sheriff and before the expiration of 70 days from the indictment which was April 3, 2023, or 30 days from the undersigned counsel's first appearance in court with Mr. Krop, which was April 13, 2023, whichever is later.  18 U.S.C. §3161(c)(1).

127.     Pursuant to the Act, Mr. Krop first appeared in court represented by counsel on April 13, 2023.   At that time in open court the undersigned asserted Mr. Krop's speedy trial rights under the Act and demanded trial forthwith.  To date, no action has been taken to protect the constitutional rights of Mr. Krop and his right to a speedy trial as mandated against the government by the Act.  Instead of following the rule of law and request of Mr. Krop, on information and belief the prosecution has delayed, and according to calendar discussions between counsel, the undersigned is informed that trial may not be until "next year, 2024" in the height of the presidential political election season.  It is of importance to note that Sheriff Jenkins is the only elected Republican in the Sixth Congressional District of Maryland who was elected by a majority of Frederick County – making him a front-runner potential candidate for the opening Congressional seat in MD's Sixth District this coming 2024 election cycle, but for this political indictment.  The prosecution further sent e-mail messages stating that any speedy trial will have to be coordinated with the Court.

WHEREFORE, Mr. Krop moves the Court to sever the trials of defendants and to set in his trial pursuant to the Speedy Trial Act of 1974, after the trial of the Sheriff is completed.

## XIX.

### MOTION FOR LEAVE TO MAKE FURTHER MOTIONS

128.     Mr. Krop incorporates his prior paragraphs herein as if fully set forth hereinbelow.

129.     Mr. Krop moves this honorable Court to allow leave for potential further motions

as the right, justice and cause of defendant Mr. Krop may be necessarily supported.

### CONCLUSION

130.     Defendant Mr. Krop respectfully requests that the Court issue orders granting all of

the relief sought in the attached notice of Omnibus Motion.

> Respectfully submitted,
> ____/s/_____
> Daniel L. Cox
> THE COX LAW CENTER, LLC
> P.O. Box 545
> Emmitsburg, MD 21727
> Telephone: 410-330-3551 (mobile)
> Telephone: 410-254-7000 (office)
> Facsimile: 410-254-7220
> District of Md Attorney Id: 28245
> Attorneys for Plaintiffs

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on May 31, 2023, a copy of the foregoing motion was filed via ECF, which caused copies to be sent to all parties of record.

> _____/s/_____
> Daniel L. Cox