**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 23-123-SAG |
| | * | |
| v. | * | |
| | * | |
| CHARLES AUSTIN JENKINS, | * | |
| | * | |
| and | * | |
| | * | |
| ROBERT JUSTIN KROP, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**\*\*\*\*\*\*\***

### UNITED STATES' OMNIBUS OPPOSITION
### TO DEFENDANTS' PRETRIAL MOTIONS

The United States of America, by and through its undersigned attorneys, hereby submits this omnibus response to (1) Defendant Charles Jenkins's Motion to Sever, ECF No. 18; and (2) Defendant Robert Krop's "Rule 12(b)(3), Rule 7(f) Omnibus Motion and Memorandum of Law," ECF No. 20-1. The Defendants' motions are meritless and should be denied.

### REQUEST TO EXCEED PAGE LIMITATIONS

The Government chose to respond to two filings, one of which was 107 pages long and contains 19 motions, in a single response, which required the Government to exceed the 35-page limit in Local Rule 105.3. The Government requests permission to exceed the page limit rather than separate this single filing into separate filings.

## Table of Contents

I.    BACKGROUND AND INTRODUCTION.........................................................................4

II.   DEFENDANT JENKINS' MOTION TO SEVER SHOULD BE DENIED....................7

   A.    The Defendants are Properly Joined Pursuant to Rule 8.........................................9

   B.    Severance Pursuant to Rule 14 Would be Contrary to the Law.............................12

III.   DEFENDANT KROP'S OMNIBUS MOTION SHOULD BE DENIED ..................19

   A.    Defendant Krop's "Motion to Dismiss the Indictment and All Counts, One Through Six, Because the Instituting of the Prosecution Was Defective and Unconstitutional," is Meritless and Should Be Denied........................................21

   B.    Defendant Krop's "Motion to Dismiss the Indictment and All Counts, One Through Six, Because the Indictment is Facially Invalid" is Meritless and Should Be Denied..................................................................................................22

   C.    Defendant Krop's "Motion to Dismiss for Legal Insufficiency of Evidence Presented to the Grand Jury, and Additionally, for Immediate Disclosure of the Grand Jury Minutes," is Meritless and Should Be Denied. ...........................24

   D.    Defendant Krop's "Motion to Dismiss Because the Indictment is Multiplicitous, And Motion for Disclosure of the Grand Jury Minutes" is Meritless and Should Be Denied....................................................................................................25

   E.    Defendant Krop's "Motion to Dismiss Because the Indictment is Duplicitous, And Motion for Disclosure of the Grand Jury Minutes," is Meritless and Should Be Denied.26

   F.    Defendant Krop's Motion for a Bill of Particulars is Meritless and Should Be Denied.................................................................................................................27

   G.    Defendant Krop's "Motion for Discovery Pursuant to Rule 16; Notice of Intent Pursuant to Rule 12(B)(4)" is Meritless and Should Be Denied. .......................28

   H.    Defendant Krop's "Motion for the Pretrial Disclosure of all *Brady* Material" is Meritless and Should Be Denied. .......................................................................30

   I.    Defendant Krop's "Motion for Revelation of Identity of Informants" is Meritless and Should Be Denied. .......................................................................................30

   J.    Defendant Krop's "Motion for Pre-Trial Disclosure of Evidence Proffered Under Rule 404(b) and the Exclusion of Any Such Evidence Found to Be Inadmissible" is Meritless and Should Be Denied. .......................................................................30

   K.    Defendant Krop's "Motion for Search of Personnel Files of Government Agent Witnesses And/Or Witness Informant" is Meritless and Should Be Denied...................31

   L.    Defendant Krop's "Motion to Preserve Evidence" is Meritless and Should Be Denied.................................................................................................................31

   M.    Defendant Krop's "Motion for Government Disclosure of Rule 807 'Residual Exception' Statements" is Meritless and Should Be Denied ................................31

   N.    Defendant Krop's "Motion to Suppress all Evidence Seized from TMGN 7910 Reichs Ford Road, Frederick, Maryland 21704" is Meritless and Should Be Denied .....32

*1.   The Warrant Affidavit Contained Ample Probable Cause* ........................................ 33

*2.   The Warrant Was Executed In Good Faith Reliance On The Judgment Of The Magistrate Judge.* ...................................................................................................... 35

*3.   Defendant Is Not Entitled To A Franks Hearing Because He Fails To Identify Any Material Misrepresentations Or Omissions That Would Have Affected The Finding Of Probable Cause* ........................................................................................................ 36

**O.   Defendant Krop's "Motion to Suppress Statements" is Meritless and Should Be Denied** ................................................................................................................................... 39

**P.   Defendant Krop's "Motion for Deposition Duces Tecum of Agent Adriy [sic.] Vavilin " is Meritless and Should Be Denied** .................................................................. 41

**Q.   Defendant Krop's Motion to Transfer Venue is Meritless and Should Be Denied** 41

**R.   Defendant Krop's "Fed. R. Crim. P. 14(a) Motion to Sever Trial and For Speedy Trial" is Meritless and Should Be Denied** .............................................................................. 43

**IV.   CONCLUSION** ........................................................................................................ 43

## I.      BACKGROUND AND INTRODUCTION

Defendant Charles Jenkins, the Frederick County Sheriff, signed "law letters" on five (5) occasions over a seven (7) year period—in August and October 2015, in August 2016, in April 2018 and in March 2022—falsely claiming he was seeking demonstrations of machineguns by a local Federal Firearms Licensee (FFL), Robert Krop, the owner of a gun shop and firing range in Frederick County, Maryland, named The Machine Gun Nest.  These letters claimed that Jenkins was considering purchasing the machineguns for use by the Frederick County Sheriff's Office when he was not.  These letters were then submitted to the ATF along with applications to acquire the  machineguns referenced in the law letters.  With the exception of the 2022 law letter, which the ATF found insufficient, the ATF approved all the applications for machineguns that Krop caused to be submitted based on Jenkins' representations.

Krop used these letters to import machineguns manufactured in Belgium and acquire machine guns manufactured in the United States that he would otherwise have been prohibited from obtaining.[1]  Once Krop had the guns, he rented them out to customers at The Machine Gun

---

[1] As alleged in the Indictment:

6.  Federal law generally prohibits the possession, transfer, and importation of machineguns[1] that were imported or manufactured after May 19, 1986, except by bona fide government agencies.  The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") was an agency within the Executive Branch of the U.S. government that, among other things, administered and enforced federal law concerning machineguns. Any domestic purchase, sale, or transfer of a machinegun must first be approved by ATF's National Firearms Act Division ("NFA Division"). Any permanent importation of a machinegun must first be approved by ATF's Firearms and Explosives Imports Branch ("Imports Branch").

7.  There is an exemption to the general machinegun prohibition that allows a properly licensed and qualified FFL/SOT to possess, transfer and/or import a machinegun for use as a sample for demonstration to potential law enforcement or military purchasers.    Pursuant to ATF regulations, the exception requires the law enforcement agency who is requesting a demonstration of the machinegun to submit a "law letter" to the ATF.  A "law letter" is an industry term that refers to a letter drafted and signed by a law enforcement official expressing a need for a

Nest generating significant revenue.  In 2022, after requesting the last law letter, an employee of The Machine Gun Nest reached out to Jenkins and offered to support him politically in the then upcoming election cycle.

Despite having represented that they were being obtained for the express purpose of demonstrating their capabilities to law enforcement, no demonstrations to Jenkins or anyone in a position to purchase machineguns at the Frederick County Sheriff's Office ever occurred at The Machine Gun Nest.  Not one.  As will be shown at trial, emails from the Frederick County Sheriff's Office show that Krop drafted the law letters and asked Jenkins to submit them and Jenkins told law enforcement in an interview, which will also be presented to the jury at trial, that all of the

---

particular model of machinegun or interest in seeing a demonstration of that model of machinegun for potential future purchase by the law enforcement agency for use in their official duties. The dealer sales sample exemption requires the dealer to have a law letter, prior to purchase of the machinegun, to be submitted with the requisite ATF Form.

8. To import a machinegun manufactured outside the United States as a dealer sales sample for use in a demonstration to a law enforcement agency, an FFL/SOT must provide Imports Branch with an application on an ATF Form 6 and a law letter which is submitted with the application.  Except for narrow exceptions, Imports Branch and NFA Division would not approve an importation or transfer of a machinegun for or to an FFL/SOT without a law letter.

9. To acquire a machinegun manufactured or imported into the United States after May 19, 1986 as a dealer sales sample for use in a demonstration to a law enforcement agency, an FFL/SOT must provide the NFA Division with an application on an ATF Form 3 and a law letter which is submitted with the application.  Except for narrow exceptions, the NFA Division would not approve the transfer of a machinegun for or to an FFL/SOT without a law letter.

10. To acquire a machinegun as a dealer sales sample from a government entity for use in a demonstration to a law enforcement agency, an FFL/SOT must cause the submission to the NFA Division of an application on an ATF Form 5 and a law letter which is submitted with the application. Except for narrow exceptions, the NFA Division would not approve the transfer of a machinegun for or to an FFL/SOT without a law letter.

11. Federal law required FFL/SOTs who purchased, sold, transferred, imported, or possessed machineguns to keep and maintain records related to their acquisition and disposition of machine guns.

Indictment ¶¶ 6-11.

letters had been submitted at Krop's request. Finally, when Jenkins was interviewed by law enforcement and asked why he had submitted the law letters he explained that it was done to help Krop and his small business.  Jenkins never stated during his interview that he had any interest in purchasing these machineguns or in demonstrations to determine whether they were suitable for law enforcement purposes.  To the contrary, he told the agents that at least one of them, a belt-loaded machinegun, which is used in combat, would not be suitable for use in law enforcement and that he regretted signing the law letter that requested a demonstration of it.

The creation of these fake law letters and their use to acquire machineguns by Krop to rent at his business forms the basis of four sets of charges in the Indictment: (1) conspiracy to defraud the United States by interfering with a government function, namely, the ATF's regulation of machineguns, and to violate federal law, specifically, 18 U.S.C. § 922(a)(6), which makes it a crime to make a  false statement during the purchase of a firearm, § 924(a)(1)(A), which makes it a crime to falsify certain records that FFLs are required to maintain, and 18 U.S.C. § 1001(a)(2), which makes it a crime to knowingly and willfully make false statements to an agency of the United States government, and 18 U.S.C. § 922(o) which makes it a crime to unlawfully possess a machinegun; (2) a substantive violation of 18 U.S.C. § 922(a)(6) for the 2018 law letter and the application to import a machinegun that was submitted using that law letter; (3) a substantive violation of 18 U.S.C. § 924(a)(1)(A) for the 2018 law letter and the application to import a machinegun that was submitted using that law letter; (4) two substantive violations of 18 U.S.C. § 1001(a)(2) for the 2018 law letter and the 2022 law letter; and (5) one count of illegally possessing machineguns that were identified in the law letters and recovered from The Machine Gun Nest when it was searched by federal law enforcement.

The counts in the Indictment are the following

| DEFENDANT(S) | CT. | STATUTE | DESCRIPTION |
|---|---|---|---|
| Charles A. Jenkins<br>Robert J. Krop | 1 | 18 U.S.C. § 371 | Conspiracy to Defraud the United States |
| | 2 | 18 U.S.C. § 922(a)(6) | False statement during purchase of a firearm |
| | 3 | 18 U.S.C. § 924(a)(1)(A) | False statements in records FFLs are required to maintain |
| | 4 & 5 | 18 U.S.C. § 1001 | False statements to a federal agency |
| Robert J. Krop | 6 | 18 U.S.C. § 921(a)(23)<br>18 U.S.C. § 922(o)<br>26 U.S.C. § 5845(b) | Unlawful possession of machineguns |

## II.     DEFENDANT JENKINS' MOTION TO SEVER SHOULD BE DENIED

As a preliminary matter, the Government notes that Defendant Jenkins has filed what he describes as a "bare-bones" motion to sever that will be "supplemented once all Rule 16 discovery is completed." There is no such thing as a "bare-bones" motion that can later be supplemented. Defendant Jenkins has chosen to file a motion to sever. The United States opposes it for the reasons outlined below. Defendant Jenkins will, pursuant to the local rules of this Court, have the opportunity to file a reply to the Government's opposition. But at that point, the motion will be fully briefed and ripe for decision. And if the Defendant receives an adverse ruling, the Court's decision will be the law of the case.[2] Neither the Federal Rules of Criminal Procedure nor the local rules of this Court contemplate the filing of a motion, which triggers a 14-day deadline for the filing of a response by the Government, and then an additional opportunity to supplement the filing at some unspecified date in the future, presumably after the Government has filed its

---

[2] "As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) (*citing Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988).

response.

Furthermore, the reason that Defendant Jenkins gives for the need to supplement his "bare bones" filing is that Rule 16 discovery is not complete.  That is not true.  The Government produced all Rule 16 discovery in its possession to the defendants prior to the filing of Defendant Jenkins' motion to sever.  Further, while Defendant Jenkins signed a discovery agreement pursuant to which witness statements would be produced one week prior to trial, the Government has voluntarily provided those witness statements to the defendants and did so prior to Jenkins filing his motion to sever.

In his motion, Defendant Jenkins moves to sever his trial from his co-defendant Kropp pursuant to Federal Rule of Criminal Procedure 8 and 14.  ECF 18 at 1.  At the outset the Government notes that the Supreme Court has recognized that:

> There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials "play a vital role in the criminal justice system." *Richardson v. Marsh*, 481 U.S. 200, 209, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987). They promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Id.*, at 210, 107 S.Ct., at 1708. For these reasons, we repeatedly have approved of joint trials. *See ibid.*; *Opper v. United States*, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954); *United States v. Marchant*, 12 Wheat. 480, 6 L.Ed. 700 (1827); cf. 1 C. Wright, Federal Practice and Procedure § 223 (2d ed. 1982) (citing lower court opinions to the same effect).

*Zafiro v. United States*, 506 U.S. 534, 537–38 (1993).  The Fourth Circuit has held, "[w]e adhere to the general principle that when defendants are indicted together, they should be tried together." *United States v. Dinkins*, 691 F.3d 358, 368 (4th Cir. 2012) (*quoting United States v. Singh*, 518 F.3d 236, 255 (4th Cir. 2008) ).  The preference for joint trials is particularly strong in conspiracy cases, like the case here. "[J]oinder is highly favored in conspiracy cases, over and above the general disposition [supporting] joinder for reasons of efficiency and judicial economy." *Id*. (*quoting United States v. Tedder*, 801 F.2d 1437, 1450 (4th Cir. 1986) ) (alterations in original).

This is because, as the Fourth Circuit explains, "[t]he gravamen of conspiracy is that each conspirator is fully liable for the acts of all co-conspirators in furtherance of the conspiracy." *Tedder*, 801 F.2d at 1450. Although Defendant Jenkins cites Rule 8, he offers no argument as to why joinder is improper pursuant to Rule 8. Instead, his arguments all focus on Rule 14. In any event, the Government will address both.

### A.  The Defendants are Properly Joined Pursuant to Rule 8

"The test for joinder under Rule 8(b) is whether the defendants 'are alleged to have participated in the same act or transaction or in the same series of acts or transactions." *United States v. Santoni*, 585 F.2d 667, 673 (4th Cir. 1978).[3] That is the case here. Kropp and Jenkins worked together to produce the false law letters that were submitted to the ATF in order to illegally obtain otherwise prohibited machineguns. These letters are the heart of the conspiracy to defraud that the United States charged in Count One and all five of them are charged as overt acts in that count. Specifically, the Indictment alleges that:

a. On or about August 25, 2015, **JENKINS** signed a law letter on Frederick County Sheriff's Office letterhead, addressed to **KROP** and his business RK86 LLC d/b/a TMGN in Frederick, Maryland, requesting "a demonstration of the SCAR 16 CQC, SCAR 16 14", SCAR 17 16" (SCAR 16 CQC, SCAR16, SCAR 17)" for possible future purchase and use by our officers in the performance of their official duties." The law letter falsely stated, among other things, that "[t]he Frederick County Sheriff's Office would like a demonstration of the "SCAR 16 CQC, SCAR 16 14", SCAR 17 16" (SCAR 16 CQC, SCAR16, SCAR 17)" for possible future purchase and use by our officers in the performance of their official duties." This law letter was subsequently submitted to a licensed dealer, manufacturer and importer, and ultimately to the Imports Branch along with an application for importation of the machineguns listed in the law letter, on ATF Form 6. Based on the representations

---

[3] Rule 8(b) provides as follows:

> (b) Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. Pro. 8(b)

in the law letter, the Imports Branch approved the importation of these machineguns to **KROP** or his businesses.

b.  On October 8, 2015, **JENKINS** signed a law letter on Frederick County Sheriff's Office letterhead, addressed to **KROP** and his business RK86 LLC in Frederick, Maryland. The law letter falsely stated, among other things, that "[t]he Frederick County Sheriff's Office is requesting a demonstration by RK86 LLC…. This demonstration will evaluate the firearms listed below." The letter listed the following machineguns:

| QUANTITY | MANUFACTURER | TYPE | MODEL | CALIBER |
|----------|--------------|------|-------|---------|
| 2 | Kriss USA, Inc. | Vector | SMG | .45 ACP |
| 2 | Kriss USA, Inc. | Vector | SMG | 9x19 |
| 2 | Kriss USA, Inc. | Vector | SMG | 9x21 |

The letter further falsely stated, "Two units of each caliber have been requested to accommodate the simultaneous evaluation by two personnel from our organization." This law letter was subsequently submitted to a licensed dealer and manufacturer and ultimately to the NFA Division along with an application for transfer of the machineguns listed in the law letter, on ATF Form 3, to the "RK86 LLC" FFL/SOT license held by **KROP**. Based on the representations in the law letter, the NFA Division approved the transfer of these machineguns to **KROP** or his businesses.

c.  On August 19, 2016, **JENKINS** signed a law letter on Frederick County Sheriff's Office letterhead, addressed to **KROP** and his business RK86 LLC d/b/a TMGN in Frederick, Maryland. The law letter falsely stated, among other things, that "[t]he Frederick County Sheriff's Office would like a demonstration of the following firearms for evaluation and familiarization: Remington: ACR (5.56/.223)." This law letter was subsequently submitted to a licensed dealer and manufacturer and ultimately to the NFA Division along with an application for transfer of the machinegun listed in the law letter, on ATF Form 3, to the "RK86 LLC" FFL/SOT license held by **KROP**. Based on the representations in the law letter, the NFA Division approved the transfer of this machinegun to **KROP** or his businesses.

d.  On or about April 10, 2018, **JENKINS** signed a law letter on Frederick County Sheriff's Office letterhead, addressed to **KROP** and his business RK86 LLC d/b/a TMGN in Frederick, Maryland. The law letter falsely stated, among other things, that "[t]he Frederick County Sheriff's Office would like a demonstration of the P-90 Tactical and M-249 SAW for possible future purchase and use by our officers in the performance of their official duties," and that "[t]he firearm requested for demonstration is particularly suitable for use as a law enforcement weapon, due to cost, availability and its use in day to day patrol as well as special operations." This law letter was subsequently submitted to a licensed dealer and manufacturer and ultimately to the NFA Division along with an application for transfer of the M-249-SAW machinegun listed in the law letter, on ATF Form 3, to the "RK86 LLC" FFL/SOT license held by **KROP**. Based on the representations in the law letter, the NFA Division approved the transfer of this machinegun to **KROP** or his businesses. This letter was also subsequently submitted to a licensed

dealer, manufacturer and importer and ultimately to the Imports Branch along with an application for importation of the P90 Tactical machinegun, listed in the law letter, on ATF Form 6.  Based on the representations in the law letter, the Imports Branch approved the importation of this machinegun to **KROP** or his businesses.

e. On or about March 29, 2022, **JENKINS** signed a law letter on Frederick County Sheriff's Office letterhead, addressed to The Machine Gun Nest in Frederick, Maryland, at **KROP's** attention. The law letter falsely stated that six (6) Sig Sauer Inc. machineguns in the possession of Havre de Grace Police Department would be transferred to TMGN for "demonstration purposes."  This law letter was subsequently submitted to the NFA Division along with an application for transfer of one of the Sig Sauer Inc. machineguns listed in the law letter, on ATF Form 5, to the TMGN under the FFL/SOT license held by **KROP**.

Indictment ¶ 19.

Further, the April 10, 2018 law letter is charged in Count Two as a false statement made during the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6), in Count Three, along with the ATF Form 6 to which it was attached, as a false statement in records maintained by a federal firearms licensee in violation of 18 U.S.C. § 924(a)(1)(A), and in Count Four as a false statement to law enforcement in violation of 18 U.S.C. § 1001.  The March 29, 2022 law letter is also charged as a false statement to law enforcement, in violation of Section 1001, in Count Five.  Thus, the same law letters that are charged as overt acts in the conspiracy count are charged in the substantive counts and Defendant Jenkins and Kropp are charged in all five counts.

The Fourth Circuit has previously defined the level of relatedness required to satisfy Rule 8(b)'s requirements. *United States v. Haney*, 914 F.2d 602, 606 (4th Cir. 1990).  In *United States Porter*, the Fourth Circuit held that "[t]here must be a series of acts unified by some substantial identity of facts or participants."  821 F.2d 968, 972 (4th Cir.), *cert. denied*, 485 U.S. 934 (1987). That is certainly the case here.  The acts charged in the indictment, as quoted above, all involve both Jenkins and Krop as integral players in the scheme.  As such these acts are unified by the same facts and participants as the Fourth Circuit described in *Porter*.  Further, the Fourth Circuit has "defined 'transaction' flexibly, as 'implying a connection or logical relationship rather than

immediateness.' " *United States v. LaRouche*, 896 F.2d 815, 830 n. 5 (4th Cir.1990), *quoting United States v. Carmichael*, 685 F.2d 903, 910 (4th Cir.1982).  As the overt acts quoted above make clear, there is such a logical relationship between Jenkins signing the law letters and Krop's subsequent actions using them to obtain machineguns for his business.  Any passage of time between Jenkins providing the law letter to Krop and Krop ultimately obtaining the machinegun does not transform the single transaction of acquiring the machinegun into multiple ones.

   **B.  <u>Severance Pursuant to Rule 14 Would be Contrary to the Law</u>**

   As noted above, other than a citation to Rule 8, Defendant Jenkins' arguments for severance focus exclusively on Rule 14.  The Fourth Circuit has held that only in the "rare" case will properly joined charges require severance. *United States v. Cardwell*, 433 F.3d 378, 387 (4th Cir. 2005). In seeking severance under Rule 14, the defendant must make a "genuine" and "strong showing of prejudice." *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984). It is the defendant's burden to show "that a joint trial would be so unfairly prejudicial that a miscarriage of justice would result." *United States v. Williams*, 10 F.3d 1070, 1079-80 (4th Cir. 1993).

   Defendant Jenkins argues that "there is a serious risk that a joint trial would comprise specific trial rights of Defendant Jenkins," citing *Zafiro v. United States*, 506 U.S. 534, 539 (1993) but then fails to identify what those "specific trial rights" are that would be compromised by a joint trial.  ECF 18 at 1.  Instead he offers a number of bases for severance that do not satisfy Rule 14.

   First, he argues that his co-defendant is "insisting on the trial being conducted before the completion of Rule 16 discovery,"  ECF 18 at 2.  But as stated above, Rule 16 discovery is complete and was complete before Defendant Jenkins filed his motion.

   Next Defendant Jenkins argues, incorrectly, that the "heart" of the government's allegations, contained in Count One, are that "the co-conspirators acted with the purpose of

obtaining money or property," and that Jenkins "never received anything of value for his supposed role in this conspiracy." *Id.* Jenkins summary of the "heart" of the allegations is inaccurate. In fact, the "heart" of the allegations in the Indictment are the false law letters that Jenkins signed that Krop caused to be submitted to the ATF. The fact that Jenkins did not receive anything of monetary value for signing them does not speak to their falsity. To be clear, the fact that Krop received revenue from renting out the machineguns is relevant as to his motive for engaging in the crimes charged in the Indictment. And motive, while not an element, can be evidence of intent. *See* Sand, Siffert, *Modern Fed. Jury Instructions,* Instruction No. 6:18. But the fact that Jenkins did not have a similar motive is not a basis for severance and Defendant Jenkins cite no authority for the proposition that differing motives forms a basis for severance.

Count One does not allege a scheme to obtain money or property from the government. Instead, it alleges a conspiracy with five objects. The first object is:

> to defraud the United States, namely the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), an agency of the United States, by interfering with and obstructing the lawful government functions of the ATF to limit the purchase, sale, transfer, and importation of machineguns for purchase by or demonstration for military and law enforcement agencies only through the creation of false law letters on Frederick County Sheriff's Office letterhead from **JENKINS** to **KROP** and the submission of those letters to the ATF with an application and permit for the importation of machineguns, on ATF Form 6, and with applications to acquire machineguns in the United States, on ATF Forms 3 and 5, in violation of Title 18, United States Code, Section 371

Indictment ¶ 12(a). This charging language tracks the second prong of Section 371, the "defraud prong."[4] Violations of the "defraud prong" are sometimes referred to as a *Klein* conspiracy. *See*

---

[4] The full text of 18 U.S.C. § 371 is as follows:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

*United States v. Klein*, 247 F.2d 908, 921 (2d Cir. 1957) (affirming conviction for conspiracy to defraud in connection with tax evasion for whiskey sales where evidence showed concealment of income, including false statements on tax returns and in interrogatory responses).  Violations of the defraud prong are also referred to "interference with governmental functions," which is what occurred here.  The Supreme Court has "stated repeatedly that the fraud covered by the [Section 371] reaches any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government." *United States v. Kelerchian*, 937 F.3d 895, 905 (7th Cir. 2019) quoting *Tanner v. United States*, 483 U.S. 107, 128 (1987) (internal quotation marks omitted) (collecting cases).[5]

The Fourth Circuit follows a three element formulation to prove the defraud prong.  Those elements are the following:

> First, that there was an agreement between two or more persons to defraud the United States by obstructing the lawful functions of ATF by deceitful or dishonest means as charged in the indictment;

> Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

> Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy, with all of you agreeing on a particular overt act that you find was committed.

*United States v. Gosselin World Wide Moving*, 411 F.3d 502, 516 (4th Cir. 2005); *United States v. Tedder*, 801 F.2d 1437, 1446 (4th Cir. 1986), *cert. denied*, 480 U.S. 938 (1987).  Obtaining money

---

[5] In *Kelerchian*, the defendant was charged with conspiracy to defraud the United States, specifically by interfering with the lawful functions of the Food and Drug Administration to:
> a. Limit the sale of various restricted laser aiming sight devices to the military and law enforcement agencies only;
> b. Correctly identify first line purchasers of various laser aiming sight devices which were restricted to military or law enforcement agency purchasers only.
937 F.3d at 906.

or property from the Government thus is not an element.  As a result, Section 371's defraud clause is not limited to instances where the defendants have defrauded the Government out of money or property.  *See, e.g., United States v. Price*, 995 F.2d 729, 732 (7th Cir. 1993); *United States v. Wiley*, 979 F.2d 365, 368 n.9 (5th Cir. 1992); *United States v. Murphy*, 957 F.2d 550 (8th Cir. 1992) (defendant's informing friend that he was subject of federal criminal investigation was sufficient under section 371); *United States v. Elkins*, 885 F.2d 775, 782 (11th Cir. 1989), *cert. denied,* 494 U.S. 1005 (1990) (affirming conviction of conspiracy to defraud the government of its right to implement its foreign policy); *United States v. Kato*, 878 F.2d 267, 270 (9th Cir. 1989) (upholding conviction of conspiracy to defraud the United States into issuing private pilot certificates to unqualified persons); *United States v. Bucey*, 876 F.2d 1297, 1313 (7th Cir.), *cert. denied*, 493 U.S. 1004 (1989) (upholding conspiracy to defraud in money laundering scheme); *United States v. Tuohey*, 867 F.2d 534, 537 (9th Cir. 1989) (same); *United States v. Anderson*, 579 F.2d 455, 458 (8th Cir. 1978), *cert. denied*, 439 U.S. 980 (1980); *United States v. Jacobs*, 475 F.2d 270, 283 (2d Cir.), *cert. denied*, 414 U.S. 821 (1973).

Further, courts have specifically upheld convictions where defendants were charged with conspiring to defraud the United States by interfering with the ATF's regulation of firearms, as is the case here.  *See, e.g., United States v. Kelerchian*, 937 F.3d 895, 905 (7th Cir. 2019); *United States v. F.J. Vollmer & Co.*, 1 F.3d 1511 (7th Cir. 1993).

The Supreme Court's recent decision in *United States v. Ciminelli*, 598 U.S. ___ (2023) which Defendant Jenkins cites is inapposite.  *See* ECF 18 at 3.  In *Ciminelli*, the question before the Supreme Court was "whether the Second Circuit's longstanding 'right to control' theory of fraud describes a valid basis for liability under the federal wire fraud statute, which criminalizes the use of interstate wires for "any scheme or artifice to defraud, or for obtaining money or property

by means of false or fraudulent pretenses, representations, or promises.' " 143 S. Ct. 1121, 1124

(2023).  In *Ciminelli*, the Supreme Court did not address Section 371, which is the statute at issue

here, and Defendant's claim that *Ciminelli* "require[s] a transfer of money or something of value

as a *quid pro quo* for any act of fraud," is found nowhere in the text of the Court's opinion.

Further, Count One also alleges the violation of federal law, which the first prong of

Section 371 criminalizes. [6]  Specifically, Count One alleges that Defendants Jenkins and Kropp

conspired to:

> b.      to knowingly make false and fictitious written statements to a licensed
> dealer, importer and manufacturer, within the meaning of Chapter 44, Title 18,
> United States Code, which statements were intended and likely to deceive the
> licensed dealer, importer and manufacturer, as to a fact material to the lawfulness
> of the sale and acquisition of machineguns under chapter 44 of Title 18, to wit: the
> defendants submitted and caused to be submitted law letters on Frederick County
> Sheriff's Office letterhead from JENKINS to KROP to licensed dealers, importers
> and manufacturers that contained false representations that the machineguns
> identified in the law letters were dealer sales samples for law enforcement
> demonstration purposes, in violation of Title 18, United States Code, Sections
> 922(a)(6) and 924(a)(2);
> c.      to knowingly and willfully make and cause to be made false statements and
> representations with respect to information under Chapter 44 of Title 18 of the
> United States Code, required to be kept in the records of individuals licensed under
> Chapter 44, relating to the acquisition of firearms, to wit: false law letters on
> Frederick County Sheriff's Office letterhead from JENKINS to KROP, that
> contained false representations that the machineguns identified in the law letters
> were dealer sales samples for law enforcement demonstration purposes, which
> caused FN to make representations in block 10 of ATF Form 6, an application and
> permit for importation of firearms, and to attach the same law letters to ATF Form
> 6, a form that was required to be kept in the records of individuals licensed under
> Chapter 44, relating to the acquisition of firearms, in violation of Title 18, United
> State Code, Section 924(a)(1)(A);
> d.      to knowingly and willfully make and cause to be made, and use and cause
> to be used, in a matter within the jurisdiction of a department or agency of the
> United States, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, false
> writings and documents, namely law letters on Frederick County Sheriff's Office
> letterhead from JENKINS to KROP, requesting firearm demonstrations of
> machineguns, knowing the same to contain a material false, fictitious, or fraudulent

---

[6] The law allows both prongs to be charged in a single count, although the elements are
slightly different.  *United States v. Arch Trading Co.,* 987 F.2d 1087, 1092 (4th Cir. 1993).

statement, in violation of Title 18, United States Code, Section 1001(a)(2); and
e.        to knowingly and unlawfully possess machineguns, in violation of Title 18, United States Code, Section 922(o).

Indictment ¶ 12.   None of these statutes involve obtaining money or property.   Rather, they criminalize making false statements or creating false records related to the acquisition of machineguns and the unlawful possession of machineguns.   And Counts Two through Six also do not involve obtaining money or property.

Thus, since none of the objects of the conspiracy charged in Count One or any of the substantive violations charged in Counts Two through Six involve the acquisition of money or property, the fact that Jenkins didn't receive anything of value is not a basis for severance.   The other factual assertions that Defendant Jenkins makes, that he was "never notified when or if any of the machine guns were ever obtained by Krop or TMGN," and that "[n]one of the discovery provided by the government indicates that Krop ever met with Sheriff Jenkins," are also not bases for severance and Defendant Jenkins fails to even articulate why or how they would be.   ECF 18 at 3.

Defendant Jenkins also argues that the fact that he is not charged in Count Six is also a basis for severance.   Not so.   "Where the defendants' acts are part of a series of acts or transactions, it is not necessary that each defendant be charged in each count, nor to show that each defendant participated in every act or transaction in the series."   *Id.*; *United States v. Dorsey*, No. CR RDB-18-0347, 2019 WL 3804113, at *12 (D. Md. Aug. 13, 2019) ("So long as codefendants are alleged to have taken part in the same series of acts or transactions, defined flexibly, defendants may be charged in the same indictment even if they are not charged with the same offenses."); *see United States v. Mills*, 597 F.2d 693, 695-96 (9th Cir. 1979) (finding that trial court did not abuse its discretion by denying severance to defendant charged with being an accessory after the fact, even

though he was not charged with armed bank robbery as were his codefendants); *United States v. Dye*, 508 F.2d 1226, 1236 (6th Cir. 1974) (permitting joinder of defendant charged as an accessory after the fact but not as a member of the alleged conspiracy).  While Kropp is charged alone in Count Six for unlawful possession of machineguns, in violation of 18 U.S.C. § 921(a)(24), the machineguns that he illegally possessed were the ones that Jenkins procured for him through the use of the false law letters, in other words, they are part of the same transactions that involved both Jenkins and Krop.[7]

Defendant Jenkins next argues that since there are no other members of the conspiracy, "the evidence at trial, therefore, will focus on Krop and Jenkins, and, therefore, "[a] joint trial would be profoundly unfair to Jenkins."  The fact that the evidence at trial will focus on Krop and Jenkins is not a basis for a severance.  It is not sufficient for a defendant to show that a separate trial might offer him or her a better chance of acquittal, or to show that joinder will make the defense's task more difficult. *Goldman*, 750 F.2d at 1225 (4th Cir. 1984); *see also Zafiro v. United States*, 506 U.S. 534, 540 (1993) (""[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials.").  Courts have recognized that the inherent prejudice of a joint trial is insufficient to justify severance under Rule 14 and the judicial inefficiency, inconvenience, and expense wrought by severance.  *See United States v. Santoni,* 585 F.2d 667, 674 (4th Cir. 1978) ("The trial court must weigh the inconvenience and expense to the government and witnesses of separate trials against the prejudice to the defendants inherent in a joint trial . . . .");  *United States v. Simmons*, 163 F. Supp.3d 317, 322 (E.D.

---

[7] In *Porter*, the Fourth Circuit even went so far as to hold that "[s]eparate acts constituting separate offenses are sufficiently related to be within the same series if they arise out of a common plan or scheme." 821 F.2d at 972.  Here there are no separate offenses, with the exception of Count Six.  Otherwise, all the counts in the indictment charged both defendants.

Va. 2016) ("Severance is appropriate only if the risk of actual prejudice outweighs the interest in [the] efficient administration [of] justice.").

"[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would ... prevent the jury from making a reliable judgment about guilt or innocence." *Cardwell*, 433 F.3d at 387-88 (citing *Zafiro v. United States*, 506 U.S. 534, 539 (1993)); *accord United States v. Qazah*, 810 F.3d 879, 891 (4th Cir. 2015). A risk of such prejudice may arise "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Cardwell*, 433 F.3d at 388.  No such risk is present here.  The evidence of the conspiracy and the substantive offenses is admissible in a joint trial just as it would be in separate trials.  Further, the Fourth Circuit has shown a preference for limiting instructions, that can vitiate any potential jury confusion, over separate trials.  *Cardwell*, 433 F.3d at 388 (holding that district court's jury instruction cured any potential prejudice arising from joinder of charges under Rule 8(a)).

## III.    DEFENDANT KROP'S OMNIBUS MOTION SHOULD BE DENIED

Defendant Kropp has filed a "Rule 12(b)(3), Rule 7(f) Omnibus Motion and Memorandum of Law."  *See* ECF 20-1.   It purports to contain 19 motions, all of which are meritless and should be denied.  All 19 motions incorporate the first 44 pages of the filing, which are not directed to any of the 19 motions in particular.  The Government will not address the various inaccurate factual assertions that Krop makes in these 44 pages, the erroneous legal arguments he advances in them or the political statements he makes which have nothing to do with either the law or the facts in this case.

The Government is compelled to note that beginning in this section of his brief and continuing throughout the filing, Defendant Krop made a series of personal attacks on one of the

special agents in this case based on his nationality.[8]  Simply put, these attacks on a member of federal law enforcement based on the country of his birth have no place in our justice system and the Government asks the Court to reject them unequivocally.

---

[8] For example, counsel for Defendant Krop refers to the agent as "formerly of Ukraine" and asserts "[t]hat a search and seizure 'warrant' was sworn and advanced by VAVILIN upon such gross misspellings and political ideology foreign to our American laws and constitution demands immediate dismissal of the vindictive indictment."  *See* ECF 20-1 at 5.  Aside from failing to identify what "political ideology" he is referring to, what counsel for Krop claims are misspellings from the search warrant are not.  For example, counsel for Krop writes, quoting the search warrant affidavit, "[t]he said machineguns were 'permitted for import' but only under a 'military/law enforcement [sic] demonstration/use [sic] exemption [sic]." ECF 20-1 at 5.  None of these are misspellings.  Ironically, it is counsel for Krop whose filing contains misspellings and other grammatical mistakes. Later in his motion, counsel for Defendant Krop repeats and expands on his attacks on Special Agent Vavilin based on his nationality.  Specifically, he:

- Again refers to "Special Agent Andriy Vavilin, formerly of UKRAINE …" when moving to suppress evidence obtained by a search warrant affidavit authored by Special Agent Vavilin.  ECF 20-1 at 77;
- Makes the claim that if the warrant had not been sworn out over the telephone, then "the Magistrate Judge may have noticed ANDRIY VAVILIN's extreme youth, heavy foreign accent indicating a potential lack of knowledge of U.S. law …" *Id*. at 84;
- Speculates that, "[i]t is of note that none of the firearms mentioned by VAVILIN or seized even use the 7.62 caliber.  This is probably the only round he knows about since it is common in Russian firearms that Ukraine is known to use for guns …" *Id*. at 87.
- Asserts that, "VAVILIN, a former Ukrainian, does not have the authority to falsely swear out an affidavit in order to raid an American FFL licensee because the Biden Administration dislikes [sic.]." *Id*. at 89.
- Further speculates that, "It is understandable that ANDRIY VAVILIN, as a former resident of a former Communist Bloc county, would have a different upbringing and understanding of the rights secured to Americans in our Constitution, since Ukraine was ruled by a fake constitution under Soviet Communism …" *Id*. at 91.
- Makes himself a witness by volunteering that, "[o]n information and belief, ANDRIY VAVILIN, holds a top secret security clearance for the ATF, and is also possibly a foreign national from the nation-state of UKRAINE because he admitted to the undersigned on April 28, 2023 in thick Ukrainian accent, to be from Ukraine." *Id*. at 100.
- Refers to Special Agent Vavilin as "a current or former UKARANIAN national" when asking to depose him. *Id*. at 99.
- Again makes himself a witness when he claims that Special Agent Vavilin "admitted to the undersigned [counsel for Defendant Krop] his foreign national former and/or current status … *Id*. at 100.

The baselessness of all the arguments in the first 44 pages of Krop's filing is best demonstrated by his taking exception to the use of the past tense in the Indictment.  In a section titled, "Use of Past-Tense 'Was; and Misrepresentations Presented Mr. Krop and Sheriff Jenkins Falsely to the Grand Jury," Defendant Krop argues that the use of the past tense was a "misrepresentation" to the Grand Jury.  For example, he argues, "the Government misrepresented to the Grand Jury that 'Robert Krop **was** a resident of Frederick County" and that his business "**held up** two (2) Federal Firearms Licenses (FFL) with Special Occupational Tax (SOT)" and that Defendant Jenkins "**was** a sworn law enforcement officer…**was** elected Sheriff in 2006 and **was** subsequently reelected" and "**was** the Frederick County Sheriff Office [sic] chief law enforcement officer" and "**was** the primary law enforcement officer for all unincorporated areas of Frederick County." ECF 20-1 at 15-16 (emphasis in original).

The past tense is used because the Indictment describes events that occurred in the past.  "Past tense." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/past%20tense. Accessed 13 Jun. 2023.  The very first sentence of the Indictment reads, "The Grand Jury for the District of Maryland charges that at all times relevant to this Indictment," and the time period referenced in Count One of the Indictment is August 2015 through May 2022, which is obviously in the past.  Thus, alleging that Krop "was" a resident of Frederick County and that Jenkins "was" the Frederick County Sheriff is grammatically correct.

A.  **Defendant Krop's "Motion to Dismiss the Indictment and All Counts, One Through Six, Because the Instituting of the Prosecution Was Defective and Unconstitutional," is Meritless and Should Be Denied**

Defendant Krop's first motion to dismiss argues that "Counts one through six, charging violations of 'Title 18 U.S.C. Section 381' must be dismissed with prejudice as the Court has no jurisdiction over a defective and unconstitutional charge, also with no underlying crime."  ECF

20-1 at 41.  This motion is meritless and should be denied.

The Government first notes that the Indictment does not allege that Defendant Kropp violated "Title 18 U.S.C. Section 381."  Rather, the Indictment alleges that Krop violated 18 U.S.C. Section 371.  Second, while Defendant Krop claims to challenge the jurisdiction of the Court, he makes no arguments that go to its jurisdiction.  Instead, he make a series of arguments about the affidavit that supported the search warrant to search Krop's business, The Magine Gun Nest, and the Government's presentation to the Grand Jury.  *Id*. at 41-44.  None of these offer any basis to dismiss the Indictment.[9]  As to the former, he offers no authority for the proposition that a search warrant affidavit could ever be a  basis to dismiss an indictment because there is none.

**B.** **Defendant Krop's "Motion to Dismiss the Indictment and All Counts, One Through Six, Because the Indictment is Facially Invalid" is Meritless and Should Be Denied**

Defendant Kropp moves to "dismiss the indictment and all counts, one through six, because the indictment is facially invalid," citing Federal Rule of Criminal Procedure 12(b)(3)  ECF 20-1 at 44.  This motion is meritless and should be denied.

"An indictment constituted by a legal and unbiased grand jury, . . . if valid on its face, is enough to call for trial on the merits."  *Costello v. United States*, 350 U.S 359, 363 (1956).  "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'"  *Hamling v. United States*, 418 U.S. 87, 100 (1974).[10]

---

[9] The Constitution grants Congress the power to create inferior courts and to assign jurisdiction for those courts.  Congress has done so through 18 U.S.C. § 3231, which provides that federal district courts "shall have original jurisdiction, exclusive of the court of the States, of all offenses against the laws of the United States."

[10] The Supreme Court in *Hamling* went on to conclude that the various component parts of the constitutional definition of obscenity need not be alleged in the indictment in order to establish

Echoing these long-established and basic principles, the Fourth Circuit explained in *United States v. Burks*,

> Federal Rule of Criminal Procedure 12(b)(3) allows a defendant to move before trial to dismiss the indictment for failure to state an offense. To overcome such a motion, the indictment must include every essential element of the offense.  *See United States v. Perry*, 757 F.3d 166, 171 (4th Cir. 2014). In general, it is "sufficient that an indictment set forth the offense in the words of the statute itself." *Id.* (internal quotation marks omitted).

746 F. App'x 191, 198 (4th Cir. 2018) (quoting *United States v. Wills*, 346 F.3d 476, 488-89 (4th Cir. 2003)).

"When the words of a statute are used to describe the offense generally, they 'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" *United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009) (quoting *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002)). *See also* Fed. R. Crim. P. 7(c)(1) ("The indictment ... must be a plain, concise, and definite written statement of the essential facts constituting the offense charged ...").

Defendant Krop's criticisms of the Indictment are all unfounded.  For example,  he asserts that "there is no federal statute alleged to have been violated by the obtaining of or demonstration of any machine guns." ECF 20-1 at 45.  But that is clearly incorrect.  Count One alleges a violation of 18 U.S.C. § 371.  Count Two alleges a violation of 18 U.S.C. § 922(a)(6).  Count Three alleges a violation of 18 U.S.C. § 924(a)(1)(A).  Counts Four and Five allege violations of 18 U.S.C. § 1001.  And Count Six alleges violations of 18 U.S.C. §S 921(a)(24) 922(o) and 26 U.S.C. § 5845(b).  Counts Two through Six all allege violations of 18 U.S.C. § 2 as well.

The six counts in the indictment that Defendant Krop has moved to dismiss all include the

---

its sufficiency.  418 U.S. at 118.

language of the statutes they charge, all their essential elements and a more than sufficient statement of facts to "inform the accused of the specific offense." For that reason, the Indictment is "valid on its face" and "call[s] for trial on the charges on the merits."

C. **Defendant Krop's "Motion to Dismiss for Legal Insufficiency of Evidence Presented to the Grand Jury, and Additionally, for Immediate Disclosure of the Grand Jury Minutes," is Meritless and Should Be Denied.**

Defendant Krop "requests this honorable Court review the Grand Jury minutes and dismiss Counts One through Six in light of the factual allegations herein," ECF 20-1 at 47. This motion is meritless and should be denied.

At the outset the Government notes that by his own account, then, the Defendant acknowledges that the issues he raises are factual ones that can only be resolved by a jury.

In any event, Rule 6(e)(3)(E)(ii) provides that, "[t]he court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter . . . (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. Pro. 6(e)(3)(E)(ii). This provision is not an invitation to engage in a fishing expedition to search for grand jury wrongdoing and abuse when there are no grounds to believe that any wrongdoing or abuse has occurred. *United States v. Loc Tien Nguyen*, 314 F.Supp.2d 612, 616 (E.D.Va. 2004). This is precisely what the defendants seek, a fishing expedition, born out of the hope that the Government made some mistake that it can seize upon. Defendant Krop has not and cannot put forward any factual basis to suggest that any wrongdoing or abuse has occurred. "Because grand jury proceedings are entitled to a strong presumption of regularity, a defendant seeking disclosure of grand jury information under Rule 6(e)(3)(E)(ii) bears the heavy burden of establishing that 'particularized and factually based grounds exist to support the proposition that irregularities in the grand jury

proceedings may create a basis for dismissal of the indictment.'" *Id.* (citing *Hamling v. United States*, 418 U.S. 87, 139 n. 23 (1974)). "Thus, courts should not reveal the secrecy of grand jury proceedings unless there is a '"strong showing of particularized need.'" *United States v. Johnson*, 2013 WL 3880148, at *1 (D.S.C. Jul. 26, 2013) (quoting *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443, (1983)); *see also Dennis v. United States*, 384 U.S. 855, 870, 86 (1966). "Generally, this requires the moving party to show that without access to the materials, the 'defense would be greatly prejudiced' or 'an injustice would be done.'" *United States v. Eury*, No. 1:20CR38-1, 2021 WL 276227, at *12 (M.D.N.C. Jan. 27, 2021) (citing *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682 (1958)).

Defendant Krop has failed to meet his burden.  Nowhere in his filing does he even address the particularized need standard.

   **D.** **Defendant Krop's "Motion to Dismiss Because the Indictment is Multiplicitous, And Motion for Disclosure of the Grand Jury Minutes" is Meritless and Should Be Denied.**

Defendant Krop next moves to dismiss because "the Indictment is Multiplicitous" and for "disclosure of the grand jury minutes."  This motion is meritless and should be denied.

The latter motion for relief is obviously repetitive of his previous motion for grand jury minutes and should be denied for the reasons articulated above.

As for his claim that "Counts One through Six must be dismissed as multiplicitous as they state that each allegation from Count One is 'incorporated by reference herein as if fully set forth in this Count in the Indictment' and each falsely allege the same conduct," it is similarly unfounded.

As the Fourth Circuit has explained, "multiplicity," means that a single offense was charged in multiple counts. *United States v. Goodine*, 400 F.3d 202, 207 (4th Cir. 2005); *United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir.1993) (describing multiplicitous indictment).  The

"signal danger" of a multiplicitous indictment is that a defendant might thereby receive multiple punishments for the same crime. *Id.*; *see also United States v. Colton*, 231 F.3d 890, 910 (4th Cir. 2000).

The Defendant's argument fails because the Fourth Circuit has "consistently rejected" the notion that all crimes arising out of the "same transaction" must be prosecuted in a single proceeding. *Goodine*, 400 F.3d  at 208 *citing United States v. Dixon*, 509 U.S. 688, 709 n. 14 (1993); *United States v. Williams*, 155 F.3d 418, 420-21 (4th Cir. 1998).  Thus, the fact that the same conduct is charged as violations of different statutes does not mean that these counts are multiplicitous.

**E.  Defendant Krop's "Motion to Dismiss Because the Indictment is Duplicitous, And Motion for Disclosure of the Grand Jury Minutes," is Meritless and Should Be Denied.**

Defendant Krop next moves to dismiss because "the Indictment is Duplicitous" and for "disclosure of the grand jury minutes."  ECF 20-1 at 52.  This motion is meritless and should be denied.

Like in the previous motion, the latter request for relief is obviously repetitive of his previous baseless claim for grand jury minutes and should be denied for the reasons articulated above.

The Defendant claims that the indictment is "duplicitous" because, he argues, Count One "joins five separate offenses."  A count is duplicitous if it charges multiple offenses within a single count.  *United States v. Robinson*, 627 F.3d 941, 957 (4th Cir. 2010).  "Duplicitous indictments present the risk that a jury divided on two different offenses could nonetheless convict for the improperly fused double count."  *Id*.  *See, e.g.*, *United States v. Spencer*, 592 F.3d 866, 874–75 (8th Cir. 2010).

As the Fourth Circuit has noted, the Supreme Court has expressly rejected the contention that a count containing allegations of a single conspiracy to commit two or more separate crimes, is duplicitous. *United States v. Marshall*, 332 F.3d 254, 262 (4th Cir. 2003). The Court reasoned, "[t]he allegation in a single count of conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime, and that is one, however diverse its objects." *Id*. (*quoting Braverman v. United States*, 317 U.S. 49, 54 (1942) (internal quotation marks and citation omitted)). Thus, Count One, a multi-object conspiracy count charging violations of a number of federal statutes, is not duplicitious.

**F.**   **Defendant Krop's Motion for a Bill of Particulars is Meritless and Should Be Denied.**

Defendant Krop moves for a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f).  ECF 20-1 at 53.  He then spends seven (7) pages asking for a variety of evidence, that has already been produced to him in discovery, as well as the work product of Government attorneys.  That is not what the Rule 7(f) requires.  Therefore, this motion is meritless and should be denied.

The Federal Rules of Criminal Procedure require that the "indictment . . . be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  The Indictment in this case satisfies that requirement.  "The purpose of a bill of particulars is to enable a defendant to obtain sufficient information on the nature of the charge against him so that he may prepare for trial, minimize the danger of surprise at trial, and enable him to plead his acquittal or conviction in bar of another prosecution for the same offense." *United States v. Schembari*, 484 F.2d 931, 935 (4th Cir. 1973). The present Indictment accomplishes all of those goals.  "An indictment meets the guarantees of the Fifth and Sixth Amendments if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against

27

which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Smith*, 441 F.3d 254, 261 (4th Cir. 2006) (quotation marks and citation omitted). As described above and as is plain from the Indictment itself, that is the case here. "A bill of particulars is not to be used to provide detailed disclosure of the government's evidence in advance of trial." *United States v. Automated Medical Labs., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985). That is precisely what Defendant Krop is asking for. For example, the very first item he demands is "each and every document that the government will rely upon to prove the commission of this/these offenses." ECF 20-1 at 53.

### G. <u>Defendant Krop's "Motion for Discovery Pursuant to Rule 16; Notice of Intent Pursuant to Rule 12(B)(4)" is Meritless and Should Be Denied.</u>

Defendant Krop has moved to "request[] that the government provide discovery, to the extent that they have not already done so. Defendant Krop's motion is moot and should be denied.

As stated above, the Government has provided all of the discovery in its possession that it is required to produce pursuant to Federal Rule of Criminal Procedure 16.

The Defendant asks that "Jencks material (18 U.S.C. § 3500)" be provided to him "at least 30 days in advance of trial." ECF 20-1 at 65. But Defendant Krop's counsel signed a discovery agreement with the United States where he agreed that such material would be provided one week prior to trial. *See* Exhibit 1 (signed discovery agreement). Furthermore, the Government has already made an early, voluntary disclosure of *Jencks* material to both defendants and any outstanding *Jencks* will be produced pursuant to the discovery agreement no later than one week before trial.

Defendant Krop also moves pursuant to Federal Rule of Criminal Procedure 12(b)(4) for "an immediate notice setting forth the evidence which the defendant may be entitled to under Rule 16 that the government intends to utilize at trial." ECF 20-1 at 61. Rule 12(b)(4)(B) provides that:

> At the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

Fed.R.Crim.P. 12(b)(4)(B).  The Advisory Committee's Note accompanying the Rule makes clear that, consistent with its text, the Rule's core purpose is to ensure that a defendant "can make his motion to suppress prior to trial " by "request[ing] the government to give notice of its intention to use specified evidence which the defendant is entitled to discover under rule 16." Rule 12, Fed.R.Crim.P. Advisory Committee's note.  As described in *United States v. Ishak*,

> Rule 12(b)(4)(B) is therefore limited in two important respects. The first limitation operates as a restriction on the purpose for which a Rule 12(b)(4)(B) request may be made. The Rule entitles defendants to notice of evidence that the government intends to use only insofar as that notice would "provide the defendant with sufficient information to file the necessary suppression motions." *United States v. Lujan*, 530 F.Supp.2d 1224, 1246 (D.N.M. 2008); *accord United States v. Lanier*, 578 F.2d 1246, 1254 (8th Cir. 1978) (emphasizing that the predecessor to Rule 12(b)(4)(B) "contemplates motions filed in preparation for actual or potential motions to suppress evidence"). Requiring the government at the pretrial stage to notice its intent to offer certain evidence, as Rule 12(b)(4)(B) does upon a proper request, "preserves the integrity of a trial by not interrupting it with suppression motions." *United States v. de la Cruz–Paulino*, 61 F.3d 986, 994 (1st Cir.1995); accord 1A Charles A. Wright & Andrew D. Leipold, Federal Practice & Procedure: Criminal § 195, at 451 (4th ed. 2008) (stating that Rule 12(b)(4)(B) is "intended to facilitate the making of a pretrial motion for the suppression of evidence").

277 F.R.D. 156, 158 (E.D. Va. 2011).  As further explained in *Ishak:*

> Thus, the government's obligation under Rule 12(b)(4)(B) ends when it has made disclosures that sufficiently allow the defendants to make informed decisions whether to file one or more motions to suppress. In this respect, the Rule "was not designed to aid the defendant in ascertaining the government's trial strategy, but only in effectively bringing suppression motions before trial, as required by Rule 12(b)(3)." *de la Cruz–Paulino*, 61 F.3d at 994; *accord Lujan*, 530 F.Supp.2d at 1246 (stating that the Rule's purpose is "not to reveal the government's trial strategy"). Put differently, defendants cannot invoke Rule 12(b)(4)(B) *159 "to force the government to decide precisely which documents provided in discovery it will offer at trial and to prevent it from using any that it does not so designate as a matter of trial tactics." *United States v. El–Silimy*, 228 F.R.D. 52, 57 (D.Me.2005). In sum, the Rule does not require the government to disclose its exhibit and witness list at this time. *See Lujan*, 530 F.Supp.2d at 1246.

*Id.* As is apparent from the fact that Defendant Krop has moved to suppress evidence obtained during a search of The Machine Gun Nest and a voluntary statement he made to law enforcement, the Government has fully complied with Rule 12(B)(4).

### H. Defendant Krop's "Motion for the Pretrial Disclosure of all *Brady* Material" is Meritless and Should Be Denied.

The Defendant moves for "immediate disclosure of any and all exculpatory material and any and all material impeaching any witness or defendant." ECF 20-1 at 65. The Government has complied with all its *Brady* obligations and will continue to do so. Therefore, the Defendant's motion is meritless and should be denied.

### I. Defendant Krop's "Motion for Revelation of Identity of Informants" is Meritless and Should Be Denied.

Defendant Krop has moved for the disclosure of "any and all informants." ECF 20-1 at 71. There are no informants. Therefore, there is nothing for the Government to disclose and Defendant Krop's motion should be denied.

### J. Defendant Krop's "Motion for Pre-Trial Disclosure of Evidence Proffered Under Rule 404(b) and the Exclusion of Any Such Evidence Found to Be Inadmissible" is Meritless and Should Be Denied.

Defendant Krop has moved for disclosure of "any evidence the government seeks to proffer at trial and for the exclusion of evidence found inadmissible pursuant to F.R.E. 403 and 404(b). ECF 20-1 at 73. The Government assumes the Court would exclude inadmissible evidence, without Defendant Krop moving to compel it to do so. In any event, the Government does not intend to offer any evidence against Defendant Krop pursuant to Federal Rule of Evidence 404(b) at this time or it would have already disclosed an intent to do so, as outlined in the discovery agreement Defendant Krop's counsel signed on his behalf. The Government also notes that the discovery agreement that counsel for Defendant Krop entered into with the United States expressly

provides that:

> The Government acknowledges its continuing duty to disclose Rule 404(b) evidence as it is recognized as such after the time period in which the Government has provided Rule 16 material. Therefore, the Government reserves its right to provide notice of its intent to introduce Rule 404(b) evidence after it has provided Rule 16 materials to you.

Exhibit 1 at 1. Thus, in the event that the Government comes into possession of evidence that it intends to offer pursuant to Rule 404(b), it will timely disclose it.

### K. Defendant Krop's "Motion for Search of Personnel Files of Government Agent Witnesses And/Or Witness Informant" is Meritless and Should Be Denied.

Defendant Krop has moved for "an order requiring the Government" to "search the government agent witness personnel files, including ATF, FBI, IRS employees, or any other government employees who are potential witnesses, to determine if *Brady* or *Giglio* material exists. ECF 201-1 at 73. As stated above, the Government has fully complied with its *Brady* obligations and will make *Giglio* disclosures when it determines what law enforcement witnesses it intends to call at trial, in the event there are any disclosures to make for those witnesses.

### L. Defendant Krop's "Motion to Preserve Evidence" is Meritless and Should Be Denied

Defendant Krop has moved for an order "directing the government to preserve … evidence." ECF 20-1 at 74. The Government has not and will not destroy any evidence in this case. The motion is meritless and should be denied.

### M. Defendant Krop's "Motion for Government Disclosure of Rule 807 'Residual Exception' Statements" is Meritless and Should Be Denied

Defendant Krop has moved for the "disclosure of residual statements pursuant to F.R.E. 807." ECF 20-1 at 76. The Government does not intend to introduce any hearsay statements pursuant to Federal Rule of Evidence 807 at trial. Therefore, the Defendant's motion is meritless

and should be denied.

### N. Defendant Krop's "Motion to Suppress all Evidence Seized from TMGN 7910 Reichs Ford Road, Frederick, Maryland 21704" is Meritless and Should Be Denied

Defendant Krop has moved to suppress any evidence seized pursuant to a search warrant authorized by Chief United States Magistrate Judge Beth P. Gesner of The Machine Gun Nest on the grounds that "the affidavit is a fraud and illegality, there existing no probable cause and only made-up political viewpoints of [the affiant]." ECF 20-1 at 95. The Defendant's motion is meritless and should be denied.

The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. amend. IV. When law enforcement undertakes a search for evidence of criminal activity, the Fourth Amendment generally requires a judicial warrant supported by probable cause. *Riley v. California*, 134 S. Ct. 2473, 2484 (2014). To determine whether there was probable cause to support a search warrant, the courts apply the totality-of-the-circumstances test set forth in *Illinois v. Gates*, 462 U.S. 213, 233 (1983). As the Supreme Court stated,

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Id.* at 238 (citation omitted). The Court further stated that "the term 'probable cause,' according to its usual acceptation, means less than evidence which would justify condemnation. . . . It imports a seizure made under circumstances which warrant suspicion." *Id.* at 235 (quoting *Locke v. United States*, 3 L.Ed. 364 (1813)). "Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. . . . [I]t is clear that 'only the probability, and not a prima facie showing, of criminal

activity is the standard for probable cause.'" *Id.* (citations omitted).

"In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993) (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 & n. 6 (1978)). "[T]he nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *United States v. Richardson*, 607 F.3d 357, 371 (4th Cir. 2010) (quoting *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir.1988)).

A reviewing court is to show great deference to the magistrate's conclusion in considering whether the magistrate had a substantial basis for finding probable cause. *Id.* at 236. "[C]ourts should not invalidate warrants by interpreting affidavits in a hyper technical, rather than a common-sense manner." *Id.*; *see also United States v. Hodge*, 354 F.3d 305, 309 (4th Cir. 2004).

1. *The Warrant Affidavit Contained Ample Probable Cause*

Chief United States Magistrate Judge Gesner had a substantial basis to find probable cause to believe that evidence of:

> a. Knowingly making a false statement while applying for an exemption to import or otherwise facilitate the transfer and acquisition of regulated firearms, in violation of 18 U.S.C. § 924(a)(1)(A);
> b. Conspiring to illegally cause the import of a firearm into the United States in violation of 18 U.S.C. § 371 and 18 U.S.C. § 922(l), and in so doing knowingly made a false statement while applying for an exemption to import regulated firearms, in violation of 18 U.S.C. § 924(a)(1)(A)

would be found at The Machine Gun Nest. *See* Exhibit 2 (search warrant) (filed under seal). Specifically, the search warrant affidavit contains the following as to The Machine Gun Nest:

*RK86 LLC (TMGN)*

23. Investigators learned that [The Machine Gun Nest or TMGN] submitted four law enforcement demonstration request letters for FCSO between 2015 and 2018. All of the letters utilized [Frederick County Sheriff's Office or FCSO] letterhead and were signed by Sheriff Charles Jenkins. The letters also listed KROP as the FFL contact and included the **SUBJECT PREMISES** address [7910 Reichs Ford Road, Frederick, Maryland 21704]. Out of the 9 different types of firearms requested, TMGN obtained three machineguns domestically. One of which was a belt-fed machinegun: the FN M249SAW requested through a 2018 law enforcement demonstration letter. Additionally, TMGN imported four other machineguns utilizing the law enforcement demonstration request letters. The imported machineguns included: FN SCAR-16 CQC, FN SCAR-16, FN SCAR-17 and FN P90.

24. I know that a licensed importer can import a firearm that would otherwise be impermissible for import into the United States under certain conditions: The importer must have a written request from the entity wishing to test or purchase the firearm; the firearm is only for demonstration or sale to a law enforcement entity once it enters the United States; and the firearm cannot be sold or transferred to personal buyers or other FFLs who do not have a similar law enforcement exemption letter for that exact make and model of firearm.

25. Investigators began conducting a close examination into TMGN and KROP. Investigators learned that the TMGN website (https://themachinegunnest.com) offered viewers and customers the opportunity to see their inventory for machinegun rentals. Investigators noticed that most of the make and models from the law enforcement demonstration request letters were available for rentals. Furthermore, investigators viewed open-source information to include TMGN's social media pages. Based on their training and experience, investigators observed multiple employees of TMGN to include the owner, KROP, in possession of firearms similar in appearance to those from the law enforcement demonstration request letters, to include FN M249 SAW and SCAR 17. Based on training and experience, investigators believed those photographs were used as advertisement for TMGN's business. Accordingly, investigators sought to confirm whether TMGN used the machineguns obtained through the law enforcement demonstration letters as rentals at the **SUBJECT PREMISES.**

26. In late February 2022, ATF investigators acting in an undercover capacity entered the **SUBJECT PREMISES** and rented six (6) machineguns from TMGN to shoot at their firing range. Each machine gun cost between $100-$200 to rent. Out of the six (6) machineguns, investigators confirmed the serial numbers of the FN M249SAW (#C14326) and FN SCAR 16 (#L011975) that were both obtained using the law enforcement demonstration letters and are currently being used as rentals for profit by TMGN. Additionally, agents rented a Remington ACR 5.56 and KRISS SMG .45 caliber that were also submitted through the law enforcement demonstration request letters; however, the agents were unable to confirm the serial numbers on those firearms.

27. Investigators were aware that TMGN also imported a FN P90 through the law enforcement demonstration request letter seeking the FN M249 SAW.  Prior to the undercover operation, investigators observed the TMGN website listed a FN P90 machinegun as a rental.  During the prior in-person undercover operation, TMGN told the undercover investigators that they were out of the 5.7X28mm ammunition. On March 16, 2022, ATF investigator placed a recorded telephone call to inquire if TMGN's advertised P90 machine gun was available for rental.  During the call, TMGN employee Isaac Burral stated, in sum, that TMGN has been out of the ammunition for approximately two years, and they did not expect to have it in stock in the near future.  I know from training and experience that ammunition for P90 is difficult to find and is expensive, further illustrating that most police departments would not be able to afford it as a department issued weapon.

## THE SUBJECT PREMISES

28. Investigators know that Robert KROP utilizes the **SUBJECT PREMISES** as his business location.   KROP lists the **SUBJECT PREMISES** on documents submitted to the ATF.  Currently in the Federal Licensing System (FLS), which is maintained by the ATF, the **SUBJECT PREMISES** is listed as the business location for RK86 LLC d/b/a TMGN with Robert KROP as the owner.  Your affiant believes, based on ATF record-keeping requirements and industry practices, that FFLs maintain their inventories and transaction records at their businesses and in their homes.   Additionally, the company's publicly accessible website list its location as the **SUBJECT PREMISES** and, furthermore, a search of the company's publicly available social media accounts shows numerous photos of KROP at the **SUBJECT PREMISES.**

Exhibit 2 at 14-16 (filed under seal).  The warrant also contains a detailed description of the

affiant's education, training and experience.  *Id*. at 7-9 (filed under seal).

2.  *The Warrant Was Executed In Good Faith Reliance On The Judgment Of The Magistrate Judge.*

Even if the Court determines that the showing of probable cause in the search warrant

affidavit was not sufficient, the seized evidence and any derivative evidence remain admissible

pursuant to the good faith exception enunciated in *United States v. Leon*, 468 U.S. 897 (1984).

Under *Leon*, "a court should not suppress the fruits of a search conducted under the authority of a

warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would

have known that the search was illegal despite the magistrate's authorization.'"  *United States v.*

*Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) (quoting *Leon,* 468 U.S. at 922 n.23).  The good faith exception applies "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope."  *Leon*, 468 U.S. at 920; *see also United States v. Perez*, 393 F.3d 457 (4th Cir. 2004) (reversing district court's decision granting motion to suppress and finding that good faith exception cured the problems raised regarding the search warrant).

Here, SA Vavilin obtained a search warrant from Chief United States Magistrate Gesner and acted with objective good faith and within the scope of the warrant.  The search warrant application and affidavit were reviewed by an experienced magistrate judge, who ultimately made a finding of probable cause for the search.  Any reasonably well trained officer in SA Vavilin's position would have believed that the search authorized by the warrant was lawful.

It is clear from the foregoing discussion of the facts set forth in the affidavit that they were not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Bynum*, 293 F.3d at 195 (quoting *Leon*, 468 U.S. at 923).  The warrant is not "facially deficient" in any way.  *Id.*  The warrant identifies the exact location that was to be searched and, in Attachment A, identifies the items to be seized, and the search was conducted in accordance with the protocol outlined in Attachment B.  Therefore, the Court should deny Defendant Krop's motion to suppress evidence recovered during execution of the warrant.

3. *Defendant Is Not Entitled To A Franks Hearing Because He Fails To Identify Any Material Misrepresentations Or Omissions That Would Have Affected The Finding Of Probable Cause*

Ordinarily, a defendant is not entitled to an evidentiary hearing to challenge the contents of a search warrant affidavit.  *See United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011).  A narrow exception to that rule exists where a defendant makes the showing required by *Franks v.*

*Delaware*, 438 U.S. 154, 155-56 (1978).  That exception does not apply here.

The Supreme Court, in *Franks v. Delaware*, recognized a strong presumption of validity with respect to an affidavit supporting a search warrant.  *Id.* at 171-72.  This presumption is derived from the fact that the Supreme Court "desire[s] to encourage use of the warrant process by police officers."  *United States v. Clenney*, 631 F.3d 658, 665 (4th Cir. 2011) (citing *Illinois v. Gates*, 462 U.S. 213, 237 n.10 (1983)).  As the Fourth Circuit recognized in *Clenney*, if the goal is to encourage the use of the warrant process, "the worst course of action would be to pick apart warrant affidavits from the pristine perch of hindsight or to penalize officers for securing what the law requires."  *Id.*

Accordingly, to avoid this result and to encourage law enforcement officers to apply for warrants, the Supreme Court in *Franks* deliberately established a high bar that must be overcome before a hearing on the veracity of a search warrant affidavit would be permitted.  Specifically, a defendant must make a "substantial preliminary showing" on a two-prong test: (1) he must show that allegations in the affidavit constitute deliberate falsehoods (or a reckless disregard for the truth); and (2) he must show that when these false statements are excised from the search warrant, the remaining allegations are not sufficient to sustain the required finding of probable cause.  *Franks*, 438 U.S. at 171-72.  A defendant is entitled to a *Franks* hearing on the integrity of an affidavit supporting a warrant only if he makes a substantial showing on both prongs—a "dual showing . . . which incorporates both a subjective and an objective threshold component."  *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990).

With regard to the first prong, "[a]llegations of negligence or innocent mistake are insufficient."  *Franks*, 438 U.S. at 171.  Moreover, conclusory statements about the affiant's bad intent are insufficient to warrant a hearing, as are requests for a hearing simply to have an opportunity to cross-examine the affiant.  *See United States v. Akinkoye*, 185 F.3d 192, 199 (4th

Cir. 1999).  Furthermore, a defendant seeking a *Franks* hearing need not only show that a statement was literally false; he also must show that the affiant knew it was false and included it in the affidavit anyway.  *Id*.  Thus, the focus of prong one of the *Franks* test "is not whether the challenged information in the affidavit supporting the warrant is ultimately found to be truthful, but whether 'the information … [was] believed or appropriately accepted by the affiant as true.'" *United States v. Furr*, 548 Fed. Appx. 920, 923 (4th Cir. 2013) (unpublished) (quoting *Franks*, 438 U.S. at 165).

The first-prong burden "is even higher for defendants making claims of omissions rather [than] affirmative false statements."  *Clenney*, 631 F.3d at 664.  To make a case for a *Franks* hearing on information omitted from an affidavit, "the defendant must show that the omissions were 'designed to mislead, or … made in reckless disregard of whether they would mislead' the magistrate judge."  *Id*.

The reason the bar is higher when a defendant claims deliberate omissions is because an affiant need not include every fact known to him from the investigation; rather, he must simply convey those facts that establish probable cause and not omit facts that might themselves defeat probable cause.  *See United States v. McKenzie-Gude*, 671 F.3d 452, 462 (4th Cir. 2011) (holding that no *Franks* hearing was required simply because affiant omitted contradictory statement by witness who was less credible); *Colkley*, 899 F.2d at 301 (failure to include that a witness did not identify defendant in photo lineup was not sufficient to merit *Franks* hearing).

The second prong of the *Franks* test is focused on the remainder of the statements in the affidavit, not challenged by the defendant.  If these statements are analyzed and there is still probable cause for the warrant to have issued, no *Franks* hearing is necessary.  438 U.S. at 172; *see also McKenzie-Gude*, 671 F.3d at 462; *United States v. Allen*, 631 F.3d 164, 172 (4th Cir.

38

2011) (holding that even where affiant made facially contradicted statement about whether the gun was seen in plain view or not, no *Franks* hearing was necessary because the information without that statement was still sufficient for probable cause).

Against these rigorous standards, the Fourth Circuit has recognized that a *Franks* hearing is a grave undertaking and is reserved for "flagrant police action" that is material and dispositive of the magistrate's decision to issue a warrant. *Colkley*, 899 F.2d at 301. For these reasons, because of the substantial showing required on both prongs and the requirement for evidentiary proofs, "[t]he defendant's burden is a heavy one" to merit a *Franks* hearing. *United States v. Jeffus*, 22 F.3d 554, 558 (4th Cir. 1994).

Defendant Krop has failed to carry his burden. Therefore, no *Franks* hearing is warranted in this case. The issues that Defendant Krop raises with the search warrant affidavit do not establish either of the two-prongs recognized in *Franks*.

## O. **Defendant Krop's "Motion to Suppress Statements" is Meritless and Should Be Denied**

Defendant Krop moves to suppress a statement he gave to law enforcement on May 25, 2022, when a search warrant affidavit was executed at The Machine Gun Nest because he wasn't given Miranda warnings. ECF 20-1 at 95. The Defendant's motion is meritless and should be denied.

"The familiar Miranda warnings are required for the '*in-custody interrogation* of persons suspected or accused of crime.' " *United States v. Leggette*, 57 F.4th 406, 410 (4th Cir. 2023) *quoting Miranda v. Arizona*, 384 U.S. 436, 467 (1966) (emphasis added). But so long as a defendant is not "in custody," then statements made during an interrogation remain admissible, even if the defendant were not given Miranda warnings. *Leggette*, 57 F.4th at 410. As the Fourth Circuit explained in *Leggette*:

"An individual is in custody for Miranda purposes when, under the totality of the circumstances, 'a suspect's freedom of action is curtailed to a degree associated with formal arrest.' " *United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001) (*quoting Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). This is an objective inquiry. *J. D. B. v. North Carolina*, 564 U.S. 261, 270–71, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011); *see also Parker*, 262 F.3d at 419 ("Custody determinations do not depend on the subjective views of either the interrogating law enforcement officers or of the person being questioned, but depend instead [on] the objective circumstances of the interrogation.").

A court asks two questions when determining whether a suspect's "freedom of action is curtailed to a degree associated with a formal arrest." *See Parker*, 262 F.3d at 419. "[T]he initial step," *Howes v. Fields*, 565 U.S. 499, 509, 132 S.Ct. 1181, 182 L.Ed.2d 17 (2012), is to ask "whether a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *United States v. Pressley*, 990 F.3d 383, 388 (4th Cir. 2021) (*quoting United States v. Hashime*, 734 F.3d 278, 282–83 (4th Cir. 2013)); *Keohane*, 516 U.S. at 112, 116 S.Ct. 457 (describing as "essential" to a custody determination the question of "would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave"). But this is just the first step. *See Maryland v. Shatzer*, 559 U.S. 98, 112, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010) ("Our cases make clear ... that the freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody."). If a reasonable person would not have felt at liberty to leave, then a court must still ask "the additional question [of] whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Howes*, 565 U.S. at 509, 132 S.Ct. 1181; *see also United States v. Gardner*, 823 F.3d 793, 801 (4th Cir. 2016) (rejecting custody because the questioning was not "the functional equivalent of a 'stationhouse interrogation' ").

57 F.4th at 410. In this case, the answer to both questions is no. The interview of Defendant Krop was audio recorded. A copy of the recording can be provided to the Court, if the Court wishes to review it. In addition, a summary of the interview was prepared by the ATF and is attached as Exhibit 3. As the summary plainly makes clear, Krop voluntarily agreed to be interviewed on May 25, 2022 after law enforcement requested such an interview. The interview occurred at a conference room at his real estate business. He ultimately terminated the interview when he concluded he wanted to consult with a lawyer. Nothing about the facts of the interview support the conclusion that his freedom of action was curtailed in any way, let alone "to a degree associated

with formal arrest." *Parker*, 262 F.3d at 419. Nor was the interview of Krop in a conference

room at his real estate business, which he ultimately ended, an "environment [that] present[ed] the

same inherently coercive pressures as the type of station house questioning at issue in Miranda.

*Howes*, 565 U.S. at 509.

**P.  Defendant Krop's "Motion for Deposition Duces Tecum of Agent Adriy [sic.] Vavilin " is Meritless and Should Be Denied**

Defendant Krop moves pursuant to Federal Rule of Criminal Procedure 15 to depose

Special Agent Vavilin. ECF 20-1 at 99. Krop's motion is meritless and should be denied.

Rule 15 provides that:

> A party may move that a prospective witness be deposed in order to preserve
> testimony for trial. The court may grant the motion because of exceptional
> circumstances and in the interest of justice. If the court orders the deposition to be
> taken, it may also require the deponent to produce at the deposition any designated
> material that is not privileged, including any book, paper, document, record,
> recording, or data.

Fed. R. Crim. P. 15. Defendant Krop fails to address the requirements of the rule. He offers

nothing that amounts to "exceptional circumstances" nor does he demonstrate how the "interests

of justice" require a deposition. Instead, the whole purpose of the deposition appears to be to test

whether in fact Special Agent Vavilin is an American citizen and not a foreign national. This is

not a proper basis for a Rule 15 deposition. *Id*. at 99-100. Nor do the exceptions that Defendant

Krop takes to the manner in which the search warrant was executed, to the extent any of them are

accurate, satisfy Rule 15's requirement of exceptional circumstances and the interests of justice.

*Id*. at 100-102.

**Q.  Defendant Krop's Motion to Transfer Venue is Meritless and Should Be Denied**

Defendant Krop has moved to change venue pursuant to Federal Rule of Criminal

Procedure 21. The Defendant's citation-free motion is meritless and should be denied.

"The Sixth Amendment secures to criminal defendants the right to trial by an impartial jury." *Skilling v. United States*, 561 U.S. 358, 377 (2010). In criminal cases, "[b]oth the Constitution and the statutes implementing it require that criminal trials be conducted where the crime was 'committed.'" *United States v. Umaña*, 750 F.3d 320, 334 (4th Cir. 2014) (citing U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; 18 U.S.C. §§ 3235–3237; Fed.R.Crim.P. 18). "There is no constitutional right to trial within a division." *United States v. Florence,* 456 F.2d 46, 50 (4th Cir. 1972); *see United States v. Anderson*, 328 U.S. 699, 704, 705 (1946); *Barrett v. United States*, 169 U.S. 218 (1898); *Lafoon v. United States*, 250 F.2d 958 (5th Cir. 1958); *Carrillo v. Squier*, 137 F.2d 648 (9th Cir. 1943); *McNealey v. Johnston*, 100 F.2d 280, 282 (9th Cir. 1938); *cf. Platt v. Minnesota Mining and Manufacturing Co.*, 376 U.S. 240 (1964). Federal Rule of Criminal Procedure 18 provides:

> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice.

Fed.R.Crim.P. 18. Federal Rule of Criminal Procedure 21 allows for transfer of venue:

> (a)  **For Prejudice.** Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.

Fed.R.Crim.P. 21(a).  The Defendant fails to satisfies the rule's requirements.  While he makes the bald assertion that a change in venue is necessary "[b]ecause of the great prejudice and abuse to Defendant by the false pleadings of the prosecution, and because of so great a prejudice that exists in the District of Maryland …" he fails to articulate what that prejudice is.  And there is none.

**R.** **Defendant Krop's "Fed. R. Crim. P. 14(a) Motion to Sever Trial and For Speedy Trial" is Meritless and Should Be Denied.**

Finally, Defendant Krop moves to sever his trial from his co-defendant and for a speedy trial. Neither motion has any merit and, therefore, they should be denied.

Defendant Krop's motion to sever should be denied for the same reasons that Defendant Jenkins' motion to sever should be denied. *See Supra* § II.

As to his motion for a Speedy Trial, Defendant Krop made an initial appearance on April 13, 2023. That means, pursuant to the Speedy Trial Act, he is entitled to a trial on this matter on or before June 22, 2023. *See* 18 U.S.C. § 3161. However, the filing of pretrial motions excludes time under the Speedy Trial Act. Specifically, Section 3162(h)(1)(D) provides that, "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," is excluded from the calculation of the 70 days. Defendant Krop filed his omnibus pretrial motions, ECF 20, on May 31, 2023. Thus, only 48 days has elapsed in the 70 day calculation. Further, Defendant Krop does not appear to be asking for a trial within 70 days of his initial appearance but rather, "after the trial of the Sheriff is completed." ECF 20-1 at 106.

## IV.  CONCLUSION

For the foregoing reasons, the Defendants' pretrial motions should be denied.

Respectfully submitted,

Erek L. Barron
United States Attorney

By: _____/s/_____
    Leo J. Wise
    Christine Goo
    Assistant United States Attorney

43

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this filing was served on defense counsel via ECF electronic filing.

By:____/s/_____
     Leo J. Wise
     Assistant United States Attorney