U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Report of Investigation

| Title of Investigation: <br> KROP, Robert dba "The Machine Gun Nest" | Investigation Number: <br> 761055-22-0028 | Report Number: <br> 6 |
|---|---|---|

## SUMMARY OF EVENT:

<u>INTERVIEW OF ROBERT KROP:</u> On May 25, 2022, ATF Special Agent (SA) Andriy Vavilin, SA Jessica Woodin and SA Tim Moore interviewed Robert KROP at 203 Broadway Street, Suite 310, Frederick, Maryland 21701.

## NARRATIVE:

1. On May 25, 2022, at approximately, 1210 hours, SA Vavilin, SA Woodin, and SA Moore interviewed Robert KROP at his place of business (Rob Krop Team) located at 203 Broadway Street, Suite 310, Frederick, Maryland 21701. The interview was audio recorded. This report is intended to provide a brief summary of the substance of the interview. In accordance with Federal Rules of Evidence 1001 and 1002, an examination of the original recording of this interview is the best evidence of its content. SA Vavilin entered the audio recording into ATF evidence as item #000016 which was stored in ATF Baltimore Field Division Group VII vault.

2. As previously mentioned during this investigation, KROP is the owner of RK86 LLC, which is doing business as The Machine Gun Nest (hereinafter TMGN) located at 7910 Reichs Ford Road, Frederick Maryland 21704. It is to be noted that at the time of KROP's interview, another group of ATF investigators were at the premises of TMGN to execute a U.S. District Court search warrant (Case No. 22-1618 BPG).

3. Upon arrival to the Rob Krop Team office, SA Vavilin, SA Woodin and SA Moore were greeted by a white male, believed to be Chris KLEIN. Agents asked if KROP was present, to which he responded in a positive. KLEIN asked if the agents were with the ATF. KLEIN then told the agents that he notified KROP that a group of ATF agents were at the "range." Agents asked KLEIN if they could speak with KROP to which he responded to in a positive.

4. After a short period of time, KROP appeared and agreed to speak with the agents in private. Agents were escorted to a private conference room and once inside introduced themselves to KROP with their issued ATF credentials. At that time KROP asked "do I need to have an attorney here?" To which agents responded to in the negative.

5. SA Vavilin asked KROP if he knew why the agents were there to speak with him. KROP stated "no, I

| Prepared by: <br> Andriy I. Vavilin | Title: <br> Special Agent, Baltimore VII Field Office | Signature: | Date: |
|---|---|---|---|
| Authorized by: <br> Troy A. Dannenfelser | Title: <br> Group Supervisor, Baltimore VII Field Office | Signature: | Date: |
| Second level reviewer (optional): <br> Toni M. Crosby | Title: <br> Special Agent in Charge, Baltimore Field Division | Signature: | Date: |

ATF EF 3120.2 (10-2004)
For Official Use Only

| Title of Investigation: <br> KROP, Robert dba "The Machine Gun Nest" | Investigation Number: <br> 761055-22-0028 | Report Number: <br> 6 |

Case 1:23-cr-00123-SAG   Document 22-3   Filed 06/14/23   Page 2 of 3

have no clue why you are here." KROP stated "my other manager at the shop just called me and stated there are 15 ATF vehicles at the shop or whatever, that's all I know right now." KROP stated the manager who called him was Isaac. According to ATF records, Isaac Burrall is a Responsible Person for TMGN LLC and RK86 LLC both d/b/a as TMGN.

6. Following, SA Vavilin notified KROP that ATF agents have obtained a search warrant for TMGN to which KROP responded "what are you searching?" In sum, SA Vavilin explained that agents are searching for specific machine guns obtained through law enforcement demonstration request letters as well as certain documents. Following, SA Vavilin and SA Woodin asked KROP about the law enforcement demonstration request letters.

7. KROP stated the following

    a. KROP stated they have obtained machine guns through law enforcement demonstration request letters and that is something that they legally can do.
    b. KROP stated they have obtained some machine guns through their manufacturing license.
    c. KROP stated they obtained post-1986 machine guns through the Sheriff's office who wrote the letters to have the demonstrations available.
    d. KROP estimated he obtained approximately (ten) 10 machine guns through the "law letters" during the seven (7) years the business has been open.
    e. KROP stated he doesn't work directly with police officers and is not at the business on the day-to-day basis.
    f. KROP stated that in the past, law enforcement would coordinate with his old partner "Matt". KROP stated he is no longer there. Otherwise, it would be Isaac or their training director.

8. During the questioning, KROP indicated that he didn't think some of the questions asked by the agents were direct and forthcoming. Subsequently, SA Moore asked KROP specifically, if he demonstrated the guns that he acquired through law enforcement demonstration letters. KROP stated the following:
    a. KROP stated that to his understanding, they ordered "guns" that police have come and "demonstrated and tried out" but he did not have information on that matter.
    b. KROP stated that the Sheriff "generally" has written the letters.
    c. KROP stated he has nothing to do with those "things."

9. Following, in sum, SA Moore presented a scenario to KROP where there were no law enforcement demonstrations for the machine guns obtained and now those machine guns were being used as rentals at TMGN. At that time, KROP requested an attorney present for further questioning.

10. Agents acknowledged KROP's request and told him they were willing to work with him and his staff to execute the search warrant in the way that would not impact his daily operations. At that time, KROP began questioning the agents regarding what they were seizing and if there was a reason TMGN was being investigated. Agents explained that they were searching for specific machine guns and that it was a part of a broader ongoing investigation.

11. Upon departure, agents provided KROP with contact information for U.S. Attorney's Office. KROP asked the investigators what kind of proof was required to show if any demonstration was given to the police. SA Moore explained that through other interviews and agent's knowledge, there was no demonstrations done by TMGN. KROP further asked if a specific complaint was filed and that he knows

| Title of Investigation: KROP, Robert dba "The Machine Gun Nest" | Investigation Number: 761055-22-0028 | Report Number: 6 |
|---|---|---|

Case 1:23-cr-00123-SAG   Document 22-3   Filed 06/14/23   Page 3 of 3

"they" (meaning TMGN) have demonstrated "stuff "before. To which SA Moore responded, that to the agent's knowledge at this date and time there hasn't been any demonstrations.

12. The interview concluded at approximately 1225 hours. As agents were departing from KROP's office, KROP made a comment towards the agents: "Glad to see the Biden administration at work."