# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| | * | Criminal Case No.: SAG-23-00123 |
| v. | * | |
| | * | |
| CHARLES AUSTIN JENKINS | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| | * | |
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| | * | Criminal Case No.: SAG-24-00174 |
| v. | * | |
| | * | |
| ROBERT JUSTIN KROP | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Following the acquittal of Robert Justin Krop and the dismissal of charges against Charles Austin Jenkins, Mr. Krop and Mr. Jenkins each filed a motion for attorneys' fees and expenses pursuant to the Hyde Amendment. SAG-23-00123, ECF 143; SAG-24-00174, ECF 91. The government opposed both motions. SAG-23-00123, ECF 146; SAG-24-00174, ECF 106. Mr. Krop and Mr. Jenkins each then filed replies. SAG-23-00123, ECF 154; SAG-24-00174, ECF 116. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, the motions will be denied.

## I.   BACKGROUND

During the period relevant to this case, Mr. Jenkins served as the Sheriff of Frederick County, and Mr. Krop owned and operated a shooting range and firearms sales business in Frederick County called The Machine Gun Nest ("TMGN"). Mr. Krop was also a qualified Federal Firearms Licensee ("FFL").

Federal law prohibits the possession or transfer of machineguns under most circumstances. 18 U.S.C. § 922(o). But federal law permits transfers of machineguns to a qualified FFL if a government customer supplies a letter expressing an interest in seeing a demonstration of the particular machinegun. 27 C.F.R. § 479.105(d). The letter from the government customer is often described as a "law letter." The prosecution of Mr. Jenkins and Mr. Krop was based on several law letters signed by Mr. Jenkins and filed by Mr. Krop.

Mr. Jenkins first signed a law letter to Mr. Krop dated August 25, 2015. ECF 146-4 at 8.[1] The law letter stated that the Frederick County Sheriff's Office ("FCSO") would like a demonstration of several SCAR machineguns and that the firearms were particularly suitable for law enforcement use. *Id.* Mr. Jenkins signed another law letter to Mr. Krop dated October 8, 2015. *Id.* at 15. That law letter stated that the FCSO would like a demonstration of several KRISS Vectors. *Id.* Mr. Jenkins signed another law letter to Mr. Krop dated August 19, 2016. *Id.* at 18. That law letter stated that the FCSO would like a demonstration of a Remington ACR. *Id.* Mr. Jenkins signed another law letter to Mr. Krop dated April 10, 2018. *Id.* at 21. That law letter stated that the FCSO would like a demonstration of a P-90 Tactical and M-249 SAW and that the firearms were particularly suitable for law enforcement use. *Id.* Finally, Mr. Jenkins signed a law letter to

---

[1] Throughout the remainder of this Opinion, ECF references are to SAG-23-00123 unless otherwise indicated.

TMGN dated March 29, 2022. *Id.* at 33. That law letter stated that several Sig Sauers would be transferred to TMGN for demonstration purposes. *Id.*

During a meeting with investigators, Mr. Jenkins acknowledged that Mr. Krop never demonstrated any firearms for him. ECF 146-2 at 6. He also acknowledged that he probably should not have signed the 2018 law letter that stated that the P-90 and M-249 SAW were particularly suitable for law enforcement use. *Id.* at 2–4. Subsequently, before the grand jury, three TMGN employees testified that no demonstrations for the FSCO ever occurred. ECF 143-11 at 3; ECF 143-8 at 17; ECF 143-13 at 27–28. The case agent also testified before the grand jury that the M-249 SAW referenced in the 2018 law letter is a belt-fed machinegun generally used for military combat and not suitable for law enforcement use. ECF 143-5 at 18. One of the TMGN employees further testified that Mr. Krop began making the requests for law letters to Mr. Jenkins and later instructed employees to continue doing so. ECF 143-11 at 20.

The government also possessed an email chain between Mr. Krop and an FSCO employee discussing some of the law letters. *See* ECF 146-3. Mr. Krop provided the employee with some law letters and requested Mr. Jenkins's signature on them. *Id.* The employee then forwarded that email chain to Mr. Jenkins and asked whether he had had a chance to "call Mr Krop back." *Id.* at 2. Mr. Jenkins responded, "I will thanks." *Id.*

The grand jury indicted Mr. Jenkins and Mr. Krop on several counts. Specifically, they were charged with conspiracy to violate the federal laws regulating machineguns pursuant to 18 U.S.C. § 371; the making of false statements during the acquisition of a firearm pursuant to 18 U.S.C. § 922(a)(6); the making of false statements in records maintained by an FFL pursuant to 18 U.S.C. § 924(a)(1)(A); and the making of false statements to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") pursuant to 18 U.S.C. § 1001. ECF 115; SAG-24-00174, ECF

1. Mr. Krop was also charged with unlawful possession of a machinegun pursuant to § 922(o). SAG-24-00174, ECF 1.

This Court eventually severed the two cases. ECF 70. The government elected to bring Mr. Krop's case to trial first, opining that "the case against Mr. Krop is the stronger of the two and in the event that Mr. Krop was acquitted of the charges, there is a distinct possibility that the Government would consider dismissing the indictment against Mr. Jenkins." ECF 99.

At Mr. Krop's trial, the government presented the testimony of several witnesses in addition to the law letters and email chain. One of the TMGN employees testified that as far as she knew, a demonstration of the P-90 and M-249 SAW had never occurred, and she would have known if one had occurred given her role at TMGN. ECF 146-7 at 14–15. She further testified that as far as she knew, no demonstrations were conducted of, and no one had reached out to the FCSO regarding, the SCARs, KRISS Vectors, or ACR. *Id.* at 20, 22–24. Both of the FSCO SWAT team commanders during the relevant period also testified. These witnesses testified that the SWAT team, the only division of the FCSO that used machineguns, had no need for machineguns after new ones were purchased in 2014. ECF 146-8 at 3–4, 7. One testified that, other than the 2014 purchase, the FSCO made no other attempts to acquire machineguns during his tenure and that Mr. Jenkins never spoke with him about acquiring machineguns through TMGN. *Id.* at 5. The other commander, who held that position in 2018, testified that no one spoke with him about purchasing a P-90 or M-249 SAW. *Id.* at 8. He further testified that the M-249 SAW would not have been appropriate for use by the FSCO SWAT team. *Id.*

During Mr. Krop's trial, this Court denied his motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. In so ruling, this Court concluded that the conspiracy charge was "the closest call of the bunch" but that the email chain was sufficient to suggest the

existence of an agreement between the Mr. Krop and Mr. Jenkins. ECF 146-9 at 10–11. This Court

further concluded as to the false statement charges that the mens rea element was "a quintessential

jury question" *Id.* at 11. The unlawful possession charge rested on this same question. *Id.* at 11–

12.

At the conclusion of Mr. Krop's trial, the jury acquitted him on all counts. SAG-24-00174,

ECF 86. Shortly thereafter, the government filed a motion to dismiss with prejudice the charges

against Mr. Jenkins, ECF 141, which this Court granted. ECF 142.

## II.    DISCUSSION

The Hyde Amendment provides, in pertinent part:

> During fiscal year 1998 and in any fiscal year thereafter, the court, in any criminal
> case (other than a case in which the defendant is represented by assigned counsel
> paid for by the public) pending on or after the date of the enactment of this Act,
> may award to a prevailing party, other than the United States, a reasonable
> attorney's fee and other litigation expenses, where the court finds that the position
> of the United States was vexatious, frivolous, or in bad faith, unless the court finds
> that special circumstances make such an award unjust.

Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997) (codified at 18 U.S.C. § 3006A note).

Accordingly, to obtain an award under the Hyde Amendment, a defendant must show that

the government's position was "vexatious, frivolous, or in bad faith." *In re 1997 Grand Jury*, 215

F.3d 430, 436 (4th Cir. 2000). The defendant bears the burden of establishing at least one of

vexatiousness, frivolousness, or bad faith, a burden that the Fourth Circuit has described as a

"'daunting obstacle' because 'a lot more is required . . . than a showing that the defendant

prevailed' in h[is] criminal case." *United States v. Drake*, 64 F.4th 220, 226 (4th Cir. 2023)

(omission in original) (quoting *In re 1997 Grand Jury*, 215 F.3d at 436). The government's

dismissal of a case does not itself render the earlier decision to prosecute vexatious, frivolous, or

in bad faith. *See In re 1997 Grand Jury*, 215 F.3d at 432 (denying Hyde Amendment motion

following government's dismissal of case); *see also United States v. Brvenik*, 487 F. Supp. 2d 625, 627 (D. Md. 2007) (same). The court must assess the government's position given the evidence that it possessed when it decided to prosecute. *Drake*, 64 F.4th at 227.

## A. Vexatiousness

The government's position is vexatious if it lacks "reasonable or probable cause or excuse." *In re 1997 Grand Jury*, 215 F.3d at 436 (quoting *United States v. Gilbert*, 198 F.3d 1293, 1298 (11th Cir. 1999)). A prosecution is not vexatious merely because it involves the presentation of more circumstantial than direct evidence. *United States v. Gugnani*, 178 F. Supp. 2d 538, 544 (D. Md. 2002). Specifically, "[m]ens rea requirements such as knowingly, willfully, and intentionally in many instances are difficult to prove beyond a reasonable doubt, and often must be established by way of circumstantial evidence focusing on facts, circumstances, course of conduct, and statements which infer the requisite state of mind." *Id.*; *see also Drake*, 64 F.4th at 226 ("Fraudulent intent may be established by circumstantial evidence and by inferences deduced from facts and situations.") (quoting *United States v. Bales*, 813 F.2d 1289, 1294 (4th Cir. 1987)).

## 1. Mr. Jenkins

Mr. Jenkins argues that the case against him was vexatious because the government lacked evidence of agreement, necessary to prove the conspiracy charge, and of knowledge, necessary to prove the false statement charges. Although, as the government itself acknowledged, its case against Mr. Jenkins was weaker than its case against Mr. Krop, this Court concludes that the case against Mr. Jenkins was based on probable cause. The government had evidence from three TMGN employees and Mr. Jenkins himself that no demonstrations of the firearms for which demonstrations were requested had ever occurred. Additionally, the fact that Mr. Krop provided the FSCO with law letters and requested only Mr. Jenkins's signature while the law letters

purported to reflect the position of the FSCO suggested that the FSCO in fact had no interest in receiving demonstrations of the firearms. As to the statement regarding suitability, the government had evidence that the M-249 SAW, generally used for military combat, was not suitable for law enforcement use, and Mr. Jenkins himself acknowledged that he probably should not have signed that law letter that stated that the M-249 SAW was particularly suitable for law enforcement use. Furthermore, as to the conspiracy charge, the government had evidence of communication regarding the law letters between Mr. Jenkins and Mr. Krop in the form of the email chain about law letters that referenced a call between the two men. All of this evidence supplied at least probable cause to believe that the law letter statements that the FCSO sought demonstrations of the listed firearms and that the M-249 SAW was particularly suitable for law enforcement use were false, that Mr. Jenkins, as the leader of the FCSO, knew that those statements were false, and that he and Mr. Krop had reached some sort of agreement to make those false statements.

This Court agrees with the government that Mr. Jenkins's argument is not that there existed no evidence of agreement or knowledge, but rather that there existed no *direct* evidence of agreement or knowledge. But as the aforementioned cases recognize, state of mind may, and often must, be proved circumstantially. The evidence here closely resembles that in *Brvenik*, another case involving charges voluntarily dismissed before trial. In that case, the government alleged that the defendant had completed false appraisals that a codefendant then used to defraud mortgage lenders and insurers. *Brvenik*, 487 F. Supp. 2d at 630. The court acknowledged that although there may have been a dispute about whether the defendant knew that he had been involved in a fraudulent scheme, there did not exist a dispute that the appraisals bore the defendant's signature and contained false statements. *Id.* The court concluded that this evidence supplied probable cause and that the prosecution against the defendant was "far from groundless." *Id.*

Here, Mr. Jenkins similarly argues that he did not know that he was involved in a fraudulent scheme, but he does not appear to dispute that the law letters bore his signature, stated that he sought a demonstration of the requested firearms, and stated that the firearms were particularly suitable for law enforcement use. At the same time, Mr. Jenkins acknowledged that he should not have signed the letter that stated that the M-249 SAW was particularly suitable for law enforcement use and that he had never received a demonstration. Had Mr. Jenkins's case proceeded to trial, he would have had ample ground to argue that the jury should not draw the inferences from this evidence that he knew that the statements were false when he made them and that he and Mr. Krop had reached an agreement, but the jury might reasonably have done so. Accordingly, the government's case was based on probable cause.

### 2. Mr. Krop

This Court reaches the same conclusion with regard to Mr. Krop. Aside from Mr. Jenkins's own statement regarding the lack of demonstrations, which three TMGN employees corroborated, all of the evidence against Mr. Jenkins was also admissible against Mr. Krop. Indeed, as the government acknowledged, its case against Mr. Krop was stronger than its case against Mr. Jenkins. The email chain shows that Mr. Krop provided some of the law letters to the FSCO for Mr. Jenkins's signature himself, and TMGN employee testimony established that he directed his employees to provide the FSCO with other law letters. The government therefore had evidence that Mr. Krop provided the FSCO with law letters purporting to state an interest of that agency in demonstrations that never occurred. For the reasons explained above regarding Mr. Jenkins, this evidence sufficed to provide probable cause.

Mr. Krop makes two additional arguments that he believes demonstrate vexatiousness. First, he argues that the ATF case agent relied on false information to obtain the warrant to seize

the machineguns in this case. This Court has previously concluded that this claim lacks merit. *See* ECF 20 at 2; SAG-24-00174, ECF 100 at 37–39. Second, Mr. Krop contends that he was prosecuted in violation of the ex post facto clause because he was prosecuted pursuant to an ATF policy that did not exist at the time of the charged conduct. Specifically, he notes that an ATF policy issued in 2023 states that law letters should indicate how a requested machinegun is particularly suitable for use by the government customer, *see* ECF 20-6 at 4, whereas the previous ATF policy, in force at the time of the charged conduct, did not reference suitability, *see* ECF 20-5. But the government did not prosecute Mr. Krop for failing to include an averment of suitability in a law letter in violation of the 2023 policy. Rather, it prosecuted him, in part, for filing a law letter that contained an averment of suitability that was allegedly false in violation of several statutes. Thus, the government did not prosecute him pursuant to an ex post facto application of the 2023 policy.

### B. Frivolousness

The government's position is frivolous if it is "groundless . . . with little prospect of success; often brought to embarrass or annoy the defendant." *In re 1997 Grand Jury*, 215 F.3d at 436 (omission in original) (quoting *Gilbert*, 198 F.3d at 1298). A prosecution is not frivolous as a matter of law if the court denies a motion for acquittal on all counts because the court has determined that the evidence, although not necessarily sufficient to convict, is sufficient to allow the case to proceed to a jury. *United States v. Pritt*, 77 F. Supp. 2d 743, 747–48 (S.D.W. Va. 1999); *see also Gugnani*, 178 F. Supp. 2d at 543 (concluding that prosecution was not frivolous in part because "[i]n determining at the conclusion of its case-in-chief that the Government had produced sufficient evidence to survive a Rule 29 Motion, the Court believed, and continues to believe, that the Government had sufficient grounds to present the case to the jury").

### 1. Mr. Jenkins

Although Mr. Jenkins's case did not proceed to trial, and he therefore did not make a Rule 29 motion, this Court denied the Rule 29 motion that Mr. Krop made at his trial, and that decision's reasoning applies with equal force to the case against Mr. Jenkins. This Court concluded that Mr. Jenkins's and Mr. Krop's involvement in the email exchange was sufficient to suggest the existence of an agreement between them and that the mens rea element was "a quintessential jury question." ECF 146-9 at 10–11. Although the jury could, and did with regard to Mr. Krop, decline to draw inferences of agreement and knowledge, the government's position that the jury could draw such inferences was not frivolous.

### 2. Mr. Krop

For the reasons described above regarding Mr. Jenkins's case, the case against Mr. Krop was not frivolous. This Court is not persuaded otherwise by several additional arguments made by Mr. Krop.

Mr. Krop argues that the government's position was frivolous because the federal machinegun ban violates the Second Amendment. At the time that the government prosecuted Mr. Krop, however, the machinegun ban was, and remains today, in force. *See District of Columbia v. Heller*, 554 U.S. 570, 624 (2008) (stating that it would be a "startling reading" of precedent to suggest that restrictions on machineguns are unconstitutional). The Hyde Amendment inquiry does not require this Court to decide the constitutionality of the federal machinegun ban in the first instance; rather, its constitutional status at the time of Mr. Krop's prosecution forecloses a claim of frivolousness on this basis.

Mr. Krop also argues that his prosecution violated the First Amendment because the government introduced at trial a TMGN social media post about an event celebrating the Second

Amendment, the indictment referenced a TMGN employee's political support of Mr. Jenkins, and a report from Mr. Krop's interview with ATF agents included a statement that he had made about then-President Biden's administration. Mr. Krop was not prosecuted under any statutes that criminalized any of this speech. Furthermore, he has cited no law suggesting that the introduction of relevant evidence that also constitutes protected speech violates the First Amendment.

Finally, Mr. Krop argues that the government's conduct in refiling the charges against him rendered the case frivolous. After concluding that the government had violated Mr. Krop's statutory, but not constitutional, speedy trial right, this Court dismissed the indictment without prejudice and ordered the government to either refile charges or advise that it did not intend to do so within three weeks. ECF 120. A few days after three weeks had elapsed, the government refiled the charges. SAG-24-00174, ECF 1. This Court then denied Mr. Krop's motion to dismiss the new indictment, stating that although it was "not happy about the fact that its order was not complied with in totality," it concluded that it lacked authority to dismiss the new indictment because the government had refiled the charges in the time afforded by the speedy trial statute. SAG-24-00174, ECF 27 at 35–36, 38. This Court further found that the government had not refiled the charges after three weeks for an improper purpose. *Id.* at 37. Although this Court does not condone the government's conduct in this regard, that conduct did not violate Mr. Krop's speedy trial right and therefore did not render the prosecution frivolous.

### C. Bad Faith

Bad faith in the context of the Hyde Amendment "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." *In re 1997 Grand Jury*, 215 F.3d at 436 (omission in original) (quoting *Gilbert*, 198 F.3d

11

at 1298); *see also Brvenik*, 487 F. Supp. 2d at 631 ("Brvenik has not convinced the Court that the Government's decision to prosecute him after securing an indictment based upon probable cause was in anyway motivated by an evil purpose or ill will. Absent such a showing, Brvenik cannot establish that the prosecution was in bad faith.").

### 1. Mr. Jenkins

Although Mr. Jenkins does not argue at this point that the prosecution was in bad faith, he contends that he has made a sufficient showing of bad faith to warrant discovery on that issue. Whether to permit discovery under the Hyde Amendment is within the district court's discretion. *Drake*, 64 F.4th at 229–30; *see also Gugnani*, 178 F. Supp. 2d at 546 (denying request for discovery when the record was "devoid of any evidence suggesting that the Government pursued the charges for an improper purpose").

Mr. Jenkins alleges that there existed disagreement in the United States Attorney's Office regarding whether to prosecute this case. The fact that not all prosecutors agreed about the decision to prosecute him does not indicate that the prosecution was brought for a "dishonest purpose" or because of ill will; rather, his argument suggests that he believes that the decision to prosecute him reflected "bad judgment." *See In re 1997 Grand Jury*, 215 F.3d at 436. Without opining on the merits of that judgment, this Court emphasizes that a "bad judgment" does not establish bad faith. *See id.*

Mr. Jenkins also attributes bad faith to the decision to offer him a plea to a misdemeanor before Mr. Krop's trial and then dismiss the charges against him after Mr. Krop's acquittal. He further attributes "spite" to the decision to produce several hundred pages of discovery shortly before dismissing the charges. *See* ECF 143-1 at 26. The change in the government's position as this case proceeded does not establish bad faith. "Prosecutors are allowed to evaluate and

reevaluate the evidence and strength of that evidence in making their decisions to charge a defendant and whether or not to continue a prosecution." *Brvenik*, 487 F. Supp. 2d at 630–31 (declining to find bad faith when the government made continually decreasing plea offers before deciding to dismiss charges). The government informed both defense counsel and this Court before Mr. Krop's trial that because it viewed its case against Mr. Krop as the stronger of the two, if a jury acquitted Mr. Krop, it might dismiss the case against Mr. Jenkins. This Court discerns nothing suggesting ill will from this course of events. Nor can this Court discern ill will from the continued production of discovery before the government reached its final decision to move to dismiss this case.

Additionally, in Mr. Jenkins's reply, he argues for the first time that the government engaged in misconduct in presenting this case to the grand jury and thereby evinced bad faith.

First, he alleges that the ATF case agent testified in summation before the grand jury that there were meetings scheduled between Mr. Jenkins and TMGN employees that involved Mr. Jenkins going to TMGN. Mr. Jenkins avers that this testimony was false because there was no other evidence of such scheduled meetings, and his calendar, which the government had subpoenaed, showed no such meetings. Mr. Jenkins further argues that through this testimony, "the Government purposely left the grand jury with the impression of scheduled, intentional meetings – more than one – at TMGN, attended personally by Sheriff Jenkins for an illegal purpose." ECF 154 at 11.

Although this Court does not have access to all of the evidence possessed by the case agent at the time of his grand jury testimony, and the government did not have an opportunity to identify any specific evidence responsive to this argument because Mr. Jenkins did not raise it until his reply, this Court notes that a TMGN employee's grand jury testimony suggested at least one

meeting in which Mr. Jenkins came to TMGN. *See* ECF 143-13 at 19–20 (stating that he met with Mr. Jenkins at TMGN to discuss a law letter)

Moreover, the case agent's testimony arose in the context of whether any demonstrations had ever occurred, rather than in the context of any relationship or coordination between Mr. Jenkins and Mr. Krop or TMGN employees:

Q. And in your review of those emails, was there any indication that a demonstration by Sheriff Jenkins or anybody from the County Sheriff's Office – I'm sorry, from the Frederick County Sheriff's Office -- did any of them complete a demonstration?

A. Not -- Machine Gun Nest, no.

Q. Was there any type of indication that there was a request to be made to have a demonstration done at the Machine Gun Nest?

A. No.

Q. Was there any attempt to schedule a demonstration?

A. No.

Q. Were there other meetings scheduled between Sheriff Jenkins and individuals at the Machine Gun Nest where the sheriff himself went to the Machine Gun Nest?

A. Yes.

Q. But were any of those for the purposes of conducting anything related to a demonstration?

A. No.

ECF 143-5 at 14. This Court does not construe this testimony as impressing upon the grand jury the occurrence of "scheduled, intentional meetings – more than one – at TMGN, attended personally by Sheriff Jenkins for an illegal purpose." Rather, the context of the testimony emphasizes the fact that Mr. Jenkins never attended a demonstration at TMGN.

In light of the facts that Mr. Jenkins did not raise this issue until his reply, it is not clear that the testimony was in fact false, and the testimony was given in a context not likely to impress upon the grand jury the existence of any relationship or coordination between Mr. Jenkins and Mr. Krop, this Court declines to exercise its discretion to order discovery on this basis.

Finally, Mr. Jenkins alleges that the prosecutor "shut down" grand jury questioning (Mr. Krop also makes this argument pertaining to the same questioning). ECF 154 at 12. On several occasions, the prosecutor responded to a juror question of a witness from the ATF whose testimony described the regulatory scheme at issue by stating that the question did not constitute an appropriate question for that witness. *See* ECF 154-2 at 23 (in response to a juror question regarding whether there is a way to prove whether a demonstration has occurred), 24 (in response to a juror question regarding why government customers would choose to procure machineguns through private dealers), 27 (in response to a juror question regarding what law had been violated in this case), 28 (in response to a juror question regarding the purpose of part of the regulatory scheme).

This Court perceives nothing improper about the prosecutor's conclusions that these questions were not appropriate for this witness. The prosecutor might fairly have surmised that the questions exceeded the scope of the witness' basis of knowledge. Moreover, in response to two of these questions, the prosecutor rephrased the questions, and the witness then answered them.

15

*Id.* at 24–25, 28. Thus, the government's conduct does not evince an attempt to "shut down" questioning that challenged its theory of the case. Accordingly, this Court will not exercise its discretion to order discovery on this basis.

### 2. Mr. Krop

Unlike Mr. Jenkins, Mr. Krop does argue that he was prosecuted in bad faith. Specifically, he argues that the government's offer of a plea to a misdemeanor and its request that the Court conduct a *Lafler* hearing when he rejected that offer constituted per se bad faith. He cites no law supporting this contention, and this Court fails to discern how this ordinary use of plea bargaining or the holding of a hearing designed to protect Mr. Krop's right to be informed of any plea offers evinces bad faith. Mr. Krop's argument as to bad faith fails.

### D. Mr. Krop's Additional Arguments

Mr. Krop makes several additional arguments that he does not identify as pertaining to any of vexatiousness, frivolousness, or bad faith in particular. This Court will briefly address each of those arguments now.

Mr. Krop appears to argue that discovery will show that the government represented at a motions hearing in this case that it had "no statements" of an ATF agent to disclose pursuant to the Jencks Act but then disclosed that agent's handwritten notes shortly before trial. SAG-24-00174, ECF 92 at 5. The transcript from that hearing shows that the government had, in fact, represented that it had produced all discovery *other than* Jencks material. SAG-24-00174, ECF 27 at 32. The government further stated, however, that it had disclosed all of the agent's statements before she had testified at a motions hearing the prior year. *Id.* at 33. It appears, then, that the representation that all of the agent's statements had already been disclosed was inaccurate.

16

Although it appears that the government failed to produce all of a witness' prior statements before her testimony at a hearing and, approximately one year later, represented that it had done so, Mr. Krop has failed to show that that conduct entitles him to an award under the Hyde Amendment. The conduct had no impact on whether the prosecution was supported by probable cause or sufficient legal grounds or was vexatious or frivolous. Furthermore, as to bad faith, because Mr. Krop does not attach the handwritten notes, this Court cannot assess whether the government may have had some motivation to withhold them before the motions hearing but then produce them before trial. This Court therefore cannot conclude that the government's conduct evinced "furtive design or ill will" as opposed to mere "negligence," which cannot establish bad faith under the Hyde Amendment. *In re 1997 Grand Jury*, 215 F.3d at 436 (quoting *Gilbert*, 198 F.3d at 1298); *see also United States v. Shaygan*, 652 F.3d 1297, 1315 (11th Cir. 2011) (rejecting contention that discovery violations alone could support award under Hyde Amendment).

Mr. Krop next alleges that shortly after his attorney made a second demand for return of items seized during the search at TMGN, an ATF agent emailed prosecutors certain statements made by a TMGN employee and Mr. Krop's wife. According to Mr. Krop, the ATF agent began targeting him in the investigation in retaliation for his second demand for return of property. Mr. Krop does not explain how the sending to prosecutors of statements made by others indicated the targeting of him in particular or why the agent would choose to target him only after the second demand for return of his property, a demand not even made to that agent. Mr. Krop has failed to establish that this allegation entitles him to an award.

Similarly, Mr. Krop alleges that he was "added to the Grand Jury indictment" approximately one month after he made another demand for return of his seized property to an individual employed in the ATF's legal division. SAG-24-00174, ECF 92 at 7. Again, Mr. Krop

17

has failed to establish any causal link between these two events that might suggest that he was prosecuted for an improper purpose.

Mr. Krop further alleges that when a former TMGN employee appearing before the grand jury referenced that he had retained an attorney as he was leaving that employment, the government should have clarified that he had done so in connection with an embezzlement investigation and not in connection with the investigation before the grand jury. According to Mr. Krop, the government's failure to do so constituted the withholding of exculpatory evidence from the grand jury. But there exists no obligation that the government present exculpatory evidence to a grand jury. *See United States v. Williams*, 504 U.S. 36, 45–46 (1992). This allegation therefore does not entitle Mr. Krop to an award.

Mr. Krop also alleges that the prosecutor interfered with grand juror questioning of a TMGN employee witness when she stated that certain questions regarding the regulatory scheme at issue could be better answered by other witnesses. Particularly in light of the fact that the government presented a witness to testify about the regulatory scheme specifically, as described above, this Court discerns nothing improper in the prosecutor's conclusion that that witness could better answer such questions than a TMGN employee.

Finally, Mr. Krop contends that the machinegun ban violates the Commerce Clause but supplies no argument in support of this claim. This Court will therefore reject it.

Accordingly, both Mr. Jenkins and Mr. Krop have failed to establish that the government's position in prosecuting them was vexatious, frivolous, or in bad faith. This Court therefore must deny their motions for awards pursuant to the Hyde Amendment.

## III.   CONCLUSION

For the reasons stated above, the motions for attorneys' fees and expenses pursuant to the Hyde Amendment, ECF 143; SAG-24-00174, ECF 91, are DENIED. A separate Order in each case follows.


Dated: July 20, 2026                                          _____/s/_____
                                                              Stephanie A. Gallagher
                                                              United States District Judge